UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GENERAL HOSPITAL CORPORATION and DANA-FARBER CANCER INSTITUTE, INC., <br><br> Plaintiffs, <br> v. <br><br> ESOTERIX GENETIC LABORATORIES, LLC and LABORATORY CORPORATION OF AMERICA, <br><br> Defendants. | C.A. No. 1:18-cv-11360-IT |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

 Defendants Esoterix Genetic Laboratories, LLC ("EGL") and Laboratory Corporation of America Holdings, incorrectly identified in the Complaint as Laboratory Corporation of America ("LabCorp") (collectively "Defendants"), by their undersigned counsel, respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint filed by The General Hospital Corporation ("MGH") and Dana-Farber Cancer Institute, Inc. ("DFCI") (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

 This simple breach of contract case arises out of a June 27, 2017 Settlement Agreement, which resolved a dispute over an underlying Master License Agreement between EGL and Plaintiffs. █████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

**STATEMENT OF FACTS**

**A.**      **Plaintiffs License the Patent Rights to EGL**

Plaintiffs own or control, by virtue of assignment, the rights to certain patents, including

U.S. Patent Nos. 7,294,468; 7,964,349; 8,105,769; 8,465,916; and 9,035,036 (collectively, the "Patents").  (Compl. ¶ 9; Compl. Ex. B at 1.)  The Patents provide for a method of detecting the presence of epidermal growth factor receptor ("EGFR") mutation which, when present, is predictive of the efficacy of certain chemotherapeutic treatments for lung cancer.  (Compl. Ex. A §§ 1.24, 1.9; Howe Decl.[1] Ex. A ¶ 19.)[2]

In 2005, Plaintiffs entered into an Exclusive License Agreement granting to EGL "an exclusive, royalty-bearing license . . . to make, have made, use, have used, offer to sell and sell" products and services utilizing the Patents (the "Master License Agreement").  (Compl. ¶ 10; Compl. Ex. A § 2.1.)[3]

---

[1] References to the "Howe Decl." are to the declaration of Christopher R. Howe submitted herewith.
[2] When ruling on a motion to dismiss, a district court may consider "matters of public record, and other matters susceptible to judicial notice."  *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008).
[3] The original Master License Agreement was entered into between MGH, DFCI and Genzyme Corporation ("Genzyme").  In 2010, LabCorp purchased most of Genzyme's genetic testing business, including its rights under the Master License Agreement, and created EGL to manage the purchased assets.  EGL is Genzyme's successor-in-interest to the Master License Agreement.  (Compl. ¶ 10; Compl. Ex. B at 1; Howe Decl. Ex. A ¶¶ 21, 23.)



LabCorp is not a party to the Master License Agreement.

**B.**     **The Sublicense**

In 2008, EGL (then-Genzyme) entered into a sublicense agreement with non-party DxS, Ltd. ("DxS"), which allowed DxS to manufacture and sell certain products utilizing the Patents (the "Sublicense").  (Compl. Ex. B at 1; Howe Decl. Ex. A ¶ 18.)  In 2009, non-party QIAGEN Manchester, Ltd. ("QIAGEN") became DxS's successor-in-interest under the Sublicense. (Compl. Ex. B at 1; Howe Decl. Ex. A ¶ 20.)  LabCorp is not a party to the Sublicense.

**C.**     **The Prior Litigation and Settlement Agreement**

In 2014, EGL filed a complaint against QIAGEN alleging breach of the Sublicense, infringement of the Patents, and other related claims (the "Prior Litigation").  (Compl. Ex. B at 1;

Howe Decl. Ex. A.)  QIAGEN filed counterclaims against EGL and third-party claims against

LabCorp.  (Howe Decl. Ex. B.)

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████
██████████████████████████████  This Settlement Agreement is the only relevant contract

to which LabCorp is a party.

    **D.**    <u>**The Instant Dispute**</u>

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

Plaintiffs subsequently filed this action in the Superior Court for the Commonwealth of Massachusetts, and EGL and LabCorp removed to this Court on June 28, 2018.  (ECF No. 1.)[4] Plaintiffs' Complaint alleges six causes of action against EGL and LabCorp:  breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, accounting, corporate veil-piercing, and a violation of Massachusetts General Laws ("M.G.L.") Chapter 93A.

## ARGUMENT

Rule 12(b)(6) requires the dismissal of a complaint if it fails to allege "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

---

[4] ███████████████████████████████████████████████

██████████████████████████████████████████

(2007)).  A claim is "plausible" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010); *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013) ("threadbare" allegations that "omit any meaningful factual content" are insufficient).  Where a complaint "strains the language of the [contract] beyond recognition," it must be dismissed.  *Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168, 174-75 (D. Mass. 2012).

## I.   THE BROAD RELEASE EXECUTED BY PLAINTIFFS PRECLUDES THEIR BREACH OF CONTRACT CLAIM AS A MATTER OF LAW

Under Massachusetts law,[5] where the language of a written contract is "plain and unambiguous," it must be "construed in accordance with the 'fair and reasonable meaning of its words.'"  *Sherman*, 889 F. Supp. 2d at 174.  Moreover, the interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law for the court.  *See HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 574 (1st Cir. 2014) (citation omitted)).  ████████████████████████████████████████████████████

████████████████████████████████████████████████

**A.**  ████████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Indeed, "[i]t is beyond debate that general releases [like the one executed in the Settlement Agreement] are enforceable under Massachusetts law." *EveryScape, Inc. v. Adobe Sys. Inc.*, No. CIV.A. 10-11597-RGS, 2013 WL 5550901, at \*3 (D. Mass. Oct. 7, 2013); *Craft v. Regions Mortg., Inc.*, 769 F. Supp. 2d 7, 10 (D. Mass. 2011) ("Massachusetts law . . . favors the enforcement of releases").  "Moreover, a general release will settle all matters covered by its language," and "[i]t is well-settled that, if a party intends to limit the scope of a release, she should say so explicitly."  *Craft*, 769 F. Supp. 2d at 10-11; *see also Eck v. Godbout*, 444 Mass. 724, 726, 831 N.E.2d 296, 299 (2005).

█████████████████████████████████████████████████████████This

argument fails under both Massachusetts law and the Master License Agreement itself.

Under Massachusetts law, a claim "arises at the time of the 'underlying incident' giving

rise to the claim." *See Eck*, 444 Mass. at 302.  Indeed, the term "arise" is defined in Black's Law

Dictionary 23 (9th ed. 2009) as "'[t]o originate; to stem (from).'"  *John Doe No. 4 v. Levine*, 77

Mass. App. Ct. 117, 119 (2010). ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

**B.**   ████████████████████████████████████████
         ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ This claim is precluded by the plain language of the Master License Agreement.

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

## II.     PLAINTIFFS' CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW

### A.     Plaintiffs' Allegations Are Insufficient to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because it is entirely duplicative of their breach of contract claim, and devoid of any allegations of deceit or maliciousness.

"[N]ot every breach of contract is a breach of the implied covenant of good faith and fair dealing." *Christensen v. Kingston School Committee*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005); *see also Nagel v. Provident Mut. Life Ins. Co.*, 51 Mass. App. Ct. 763, 768, 749 N.E.2d 710 (2001). Rather, recovery for breach of the implied covenant "requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." *Christensen,* 360 F. Supp. 2d at 226. Harms suffered as a result of a breach of the implied covenant "generally involve deceit or 'unfair subterfuge' and usually are 'compounded by deceptive or unfair behavior that prevented—or at a minimum diverted—the injured parties from seeking immediate redress." *Id.*

Accordingly, "[c]laims for breach of the implied covenant . . . require additional factual allegations" beyond those required to state a claim for breach of contract. *Brand Grp. Int'l, LLC v. Established Brands Int'l, Inc.*, No. CIV.A. 10-11783-JLT, 2011 WL 3236078, at *3 (D. Mass. July 26, 2011). "[U]nless a plaintiff can establish that a defendant willfully and maliciously

refused to perform an express obligation of the underlying contract, the covenant does not provide an independent basis of recovery." *Edlow v. RBW, LLC*, No. CIV A 09-12133-RGS, 2010 WL 2034772, at \*5 (D. Mass. May 21, 2010).

Plaintiffs' allegations do not even state a claim for breach of contract, much less meet this heightened standard for breach of the implied covenant.  Indeed, Plaintiffs' implied covenant claim is based *exclusively* on the same allegations that form the basis of their breach of contract claim— ████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████ Even if those allegations were sufficient to state a claim for breach of contract, which they are not, they are insufficient to state a claim for breach of the implied covenant because they do not raise a plausible inference that Defendants acted with "deceit," "unfair subterfuge" or any other conduct that would suggest an absence of good faith. *See Rosa v. PNC Mortg.*, No. 16-10739-GAO, 2017 WL 4176971, at \*2 (D. Mass. Sept. 21, 2017) (dismissing implied covenant claim because "the plaintiff's assertion of bad faith [was] not supported by any particular factual allegation"); *Burbank v. Town of Hubbardston*, 146 F. Supp. 3d 402, 406 (D. Mass. 2015) (dismissing implied covenant claim where the plaintiff failed to plead facts suggesting that the defendant acted in bad faith.)  Plaintiffs' threadbare allegations

████████████████████████████████████████████

████████████████████████████████████████████

███████ are "too meager, vague, [and] conclusory" to warrant the presumption of truth or state a plausible claim for relief.  *Tambone*, 597 F.3d at 442.

**B.**    **Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing is Refuted By the Terms of the Master License Agreement and Settlement Agreement**

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing

likewise fails because it seeks to impose on Defendants obligations that conflict with the parties' agreements.  "The scope of the covenant is only as broad as the contract that governs the particular relationship."  *Karter v. Pleasant View Gardens, Inc.*, 248 F. Supp. 3d 299, 308 (D. Mass. 2017).  Thus, while a covenant of good faith is implied in every contract, it may not "be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties."  *Shealey v. Fed. Ins. Co.*, 946 F. Supp. 2d 193, 199 (D. Mass. 2012) (citing *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004)); *see also Ford v. Lehman Capital*, No. 10-40092-FDS, 2012 WL 1343977, at *5 (D. Mass. Apr. 17, 2012) (covenant cannot "undermine the express terms of the contract").

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████  Because Plaintiffs "cannot use the implied covenant to impose an obligation on defendants . . . [that] otherwise does not exist," *Karter*, 248 F. Supp. 3d at 308, their claim for breach of the implied covenant fails as a matter of law.

## III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW

### A.     Plaintiffs Cannot Recover On A Theory of Unjust Enrichment Because They Have an Adequate Remedy at Law

"[U]njust enrichment is a theory of equitable recovery, not an independent cause of action."  *Flores v. OneWest Bank, F.S.B.*, 172 F. Supp. 3d 391, 396 (D. Mass. 2016).  Moreover, "an unjust enrichment claim is permissible only where there is no express agreement between the

parties," *Mitchell v. U.S. Airways, Inc.*, 858 F. Supp. 2d 137, 158-59 (D. Mass. 2012), because the purpose of unjust enrichment is to provide "an equitable stopgap for occasional inadequacies in contractual remedies at law." *Watkins v. Omni Life Sci., Inc*., 692 F. Supp. 2d 170, 179 (D. Mass. 2010). Thus, "where a binding contract governs the parties' relationship, the contract provides the measure of the [aggrieved party's] right and no action for unjust enrichment lies." *Flores*, 172 F. Supp. 3d at 396.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████Accordingly, Plaintiffs have an adequate "contractual remed[y] at law" and may not avail themselves of unjust enrichment. *See Watkins*, 692 F. Supp. 2d at 179. Indeed, even if Plaintiffs' contract claim is dismissed, the unjust enrichment claim would still fail because "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis v. Nordstrom, Inc*., 865 F.3d 1, 16 (1st Cir. 2017).

### B.     Plaintiffs' Unjust Enrichment Claim Is Refuted By the Terms of the Settlement Agreement

Plaintiffs' unjust enrichment claim also fails for the additional reason that, like their claims for breach of contract and breach of the implied covenant, it is refuted by the terms of the Settlement Agreement. "In an unjust enrichment action, a court can infer an implied contract where none would otherwise exist," but "[w]here there is an express contract, . . . the terms therein are controlling." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 115 (D. Mass. 2010). "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment." *Id.*; *see also Shaulis*, 865 F.3d at 16. ████████████████████████

██████████████████████████████████████████████████████

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER M.G.L. CHAPTER 93A

Plaintiffs' attempt to transform their breach of contract claim into a claim for "unfair and deceptive" trade practices in violation of M.G.L. Chapter 93A should also be rejected.  "A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury." *Gallagher v. Amedisys, Inc.*, No. 17-CV-11390-ADB, 2018 WL 2223673, at *7 (D. Mass. May 15, 2018); *see also* M.G.L. c. 93A, § 2(a).  "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." *Id.*

"In the context of disputes among businesses, where both parties are sophisticated commercial players, the 'objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce.'" *Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240, 244 (D. Mass. 2011).  Thus, to prove a violation of Chapter 93A, Plaintiffs must show that Defendants' conduct "fell within the penumbra of some established concept of unfairness or was immoral, unethical, oppressive or unscrupulous." *Id.* (internal citations and quotations omitted).

"It is well settled that the mere breach of a contract, without more, does not amount to a [Chapter] 93A violation." *Id.*  Indeed, even an "intentional[] breach [of contract] is insufficient . . ." *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *9 (D. Mass. July 20, 2015).  Rather, the breach must be "so egregious as to possess an *extortionate quality* that gives it the *rancid flavor of unfairness*." *Zurich*, 796 F. Supp. 2d at 244 (emphasis added)*; see also Killian Corp. v. Murphy*, No. 063453, 2010 WL 4244829, at *4 (Mass. Super. Aug. 6, 2010) (listing cases rejecting Chapter 93A claims based on

breach of contract). "In cases in which Chapter 93A claims relating to a contract dispute have been found to have been adequately alleged, courts have often cited additional damages incurred by the plaintiff or third parties, or additional unfair benefits sought by the defendants, as a basis for finding the necessary 'extortionate' conduct." *Formulatrix, Inc. v. Rigaku Automation, Inc.*, No. CV 15-12725-MLW, 2016 WL 8710448, at *3 (D. Mass. Apr. 1, 2016). "[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a [Chapter] 93A claim is made." *Zurich*, 796 F. Supp. 2d at 244-45.

In *Whitman v. Longview*, for example, the plaintiff alleged that the defendants improperly withheld payment under an agreement. 2015 WL 4467064, at *6. In an effort to satisfy Chapter 93A, the plaintiff alleged that the defendants "acted in concert with one another in an unfair and deceptive effort to coerce [plaintiff] into unfairly compromising or otherwise abandoning its rights to receive the amounts due to it under the Agreement"; "ignored [plaintiff's] efforts to collect the amounts owed to it"; and "engaged in conduct in disregard of known contractual arrangements with the intention of securing an unbargained-for-benefit for themselves." *Id.* at *9. The court dismissed the plaintiff's claim, holding that the alleged facts "suggest[ed] nothing more than a mere breach of contract, even if it [wa]s a knowing or intentional breach." *Id.*

Likewise, in *Formulatrix v. Rigaku Automation*, 2016 WL 8710448, at *3, the court dismissed a Chapter 93A claim where the plaintiff failed to allege that the defendant's breach "was motivated by a desire to extort some extra-contractual benefit," or that "it suffered any damages beyond those resulting from the breach of contract." *See also Zurich*, 796 F. Supp. 2d at 245 ("the fact that [defendant], in good faith, plausibly contends that [plaintiff] has no contractual right to th[e] information [it seeks] is sufficient" dismiss a Ch. 93A claim).



 Accordingly, Plaintiffs' Chapter 93A claim is clearly based on an ordinary contract dispute between sophisticated commercial players and, as such, should be dismissed.

## V.     PLAINTIFFS' CLAIM FOR AN ACCOUNTING FAILS AS A MATTER OF LAW

### A.     Plaintiffs' Accounting Claim Fails Because They Do Not Allege the Existence of a Fiduciary Relationship

"[A]n equitable accounting is available only if there exists a fiduciary or trust relationship between the parties[.]" *Chedd-Angier Prod. Co. v. Omni Publications Int'l, Ltd.*, 756 F.2d 930, 937 (1st Cir. 1985); *see also Beram v. Ceaco, Inc.*, 219 F. Supp. 3d 274, 282 (D. Mass. 2016) (dismissing accounting claim where no fiduciary relationship existed); *Boston Light Source, Inc. v. Axis Lighting, Inc.*, No. 17-CV-10996-NMG, 2017 WL 6543868, at *5 (D. Mass. Nov. 13, 2017) (dismissing accounting claim because plaintiff did not allege a fiduciary relationship). Here, Plaintiffs do not even allege the existence of a fiduciary relationship between the parties, let alone plead sufficient facts to establish such a relationship.  The claim should be dismissed.

### B.     Plaintiffs' Accounting Claim Is, in Any Event, Refuted by the Terms of the Master License Agreement and Settlement Agreement

Even if Plaintiffs could establish the existence of a fiduciary relationship, their accounting claim would still fail because, like their other claims, it is refuted by the unambiguous terms of the relevant agreements.

17



Accordingly, Plaintiffs' accounting claim should be dismissed as a matter of law.

## VI.   DEFENDANT LABCORP SHOULD BE DISMISSED

Plaintiffs admit that LabCorp is not a party to the Master License Agreement.  Thus, it cannot be held liable for breach of the Master License Agreement or other contractual remedies.

The only alleged bases for liability against LabCorp is that "[EGL] is a wholly-owned subsidiary of [LabCorp]," that the companies share the same principal place of business and legal department, and LabCorp exercises control over EGL.  (Compl. ¶¶ 3, 5.)  But, absent more, a parent-subsidiary relationship is not enough to hold a parent liable for the actions of its subsidiary.  *See TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353, 356 (D. Mass. 2010) ("Control in and of itself is not sufficient to disregard the corporate entity"); *Lothrop v. N. Am. Air Charter, Inc.*, 95 F. Supp. 3d 90, 103 (D. Mass. 2015) "([C]ommon ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another").

Rather, Massachusetts courts will pierce the corporate veil only in two situations: (1) "when the parent exercises 'some form of pervasive control' of the activities of the subsidiary 'and there is some fraudulent or injurious consequence of the intercorporate relationship'"; or (2) "when there is a confused intermingling of activity of two or more corporations engaged in

common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *TechTarget*, 746 F. Supp. 2d at 356.  In applying this veil-piercing analysis, courts consider the following twelve factors:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

*Id*.  In order to pierce the corporate veil, a court must conclude *both* that the parent corporation directed and controlled the subsidiary *and* used it for an improper purpose."  *See id.*

Plaintiffs have not made any allegations regarding EGL's capitalization, the observance of corporate formalities, corporate records, the payment of dividends, EGL's insolvency, the siphoning of corporate funds, the nonfunctioning of EGL's officers or directors, or the use of EGL for the dominant shareholders' transactions.  They have also failed to allege that LabCorp used EGL to promote a fraud or for some other improper purposes.  Thus, Plaintiffs' attempt to pierce the corporate veil fails as a matter of law.

Moreover, "[t]he doctrine of corporate disregard or 'veil-piercing' is not a cause of action, but instead is an equitable remedy that may be applied where it is necessary 'to provide a meaningful remedy for injuries and to avoid injustice.'"  *Hisert on behalf of H2H Assocs., LLC v. Blue Waters Dredging LLC*, No. CV 16-11960-FDS, 2017 WL 2662470, at *4 (D. Mass. June 20, 2017); *see also Specialty Mktg. Grp., Inc. v. Katz*, No. CIV.A. 13-12636-LTS, 2014 WL 2453105, at *7 (D. Mass. May 30, 2014) ("piercing does not state a separate cause of action"*); Madico, Inc. v. GMX Performance Films, Pte, Ltd*, No. 2006-CV-10953-JLT, 2009 WL

10692742, at *1 (D. Mass. Feb. 19, 2009) (same).

Thus, to the extent Plaintiffs assert veil-piercing as a stand-alone cause of action, their claim should be dismissed with prejudice. Moreover, because Plaintiffs' substantive claims fail, there is no need to invoke this doctrine to provide Plaintiffs with a meaningful remedy at law.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted in its entirety, along with such other and further relief as the Court deems just and proper.

Dated: July 5, 2018
      Boston, MA

Respectfully submitted,

ESOTERIX GENETIC LABORATORIES, LLC and LABORATORY CORPORATION OF AMERICA HOLDINGS

By their attorneys,

CAMPBELL EDWARDS & CONROY, P.C.

*/s/ Christopher R. Howe*
James M. Campbell (BBO # 541882)
Christopher R. Howe (BBO #652445)
One Constitution Center
Boston, MA  02129
Tel: (617) 241-3041
Fax: (617) 241-5115
jmcampbell@campbell-trial-lawyers.com
chowe@campbell-trial-lawyers.com

KELLEY DRYE & WARREN LLP
Robert I. Steiner (*pro hac vice* to be filed)
Jaclyn M. Metzinger (*pro hac vice* to be filed)
101 Park Avenue
New York, NY 10178
Tel:  (212) 808-7800
Fax:  (212) 808-7897
rsteiner@kelleydrye.com
jmetzinger@kelleydrye.com

*Attorneys for Defendants Esoterix Genetic Laboratories, LLC and Laboratory Corporation of America Holdings*

## <u>CERTIFICATE OF SERVICE</u>

       I, Christopher R. Howe, counsel for defendants Esoterix Genetic Laboratories, LLC and Laboratory Corporation of America Holdings, hereby certify that on July 5, 2018, I electronically filed the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.  I also served a true copy of the above Memorandum by first class mail, postage pre-paid, on all parties of record.

                                 */s/ Christopher R. Howe*       
                                 Christopher R. Howe