UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

THE GENERAL HOSPITAL
CORPORATION and
DANA-FARBER CANCER
INSTITUTE, INC.,

   Plaintiffs,

  v.

ESOTERIX GENETIC
LABORATORIES, LLC and
LABORATORY CORPORATION
OF AMERICA,

   Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 1:18-cv-11360-IT


(JURY TRIAL DEMANDED)

## <u>AMENDED COMPLAINT</u>

   The General Hospital Corporation ("MGH") and Dana-Farber Cancer Institute, Inc. ("DFCI") (collectively, the "plaintiffs") bring this Amended Complaint against the defendants Esoterix Genetic Laboratories, LLC ("Esoterix") and Laboratory Corporation of America Holdings (a/k/a Laboratory Corporation of America) ("LabCorp") (collectively, the "defendants") for breach of contract, and other claims, arising from the defendants' knowing and willful breach of an Exclusive License Agreement dated May 2, 2005, and amendments thereto (the "License Agreement"). The plaintiffs seek to recover money that is due to them from the defendants under the License Agreement. In addition, the plaintiffs seek to recover, under Massachusetts General Laws Chapter 93A ("Chapter 93A"), for the defendants' knowing and willful breach of the License Agreement, which was intended to secure for the defendants un-bargained for benefits to the detriment of the plaintiffs.

## THE PARTIES

1.      The General Hospital Corporation is a not-for-profit Massachusetts corporation, which owns and operates Massachusetts General Hospital, and has its principal place of business at 55 Fruit Street, Boston, Massachusetts.

2.      Dana-Farber Cancer Institute, Inc. is a Massachusetts company with its principal place of business at 450 Brookline Avenue, Boston, Massachusetts.

3.      The plaintiffs are world-renowned centers for patient care, research and education.  They utilize ███████████████████████████████████████ to help fund innovative research and treatment for cancer and other patients who have sought treatment in their hospitals and other facilities.

4.      LabCorp is a Delaware corporation with its principal place of business at 358 South Main Street, Burlington, North Carolina

5.      Esoterix is a Delaware limited liability company with its principal place of business at 358 South Main Street, Burlington, North Carolina.

6.      LabCorp is the sole member of Esoterix, and both share the same principal place of business.  There is a confused intermingling of activity between LabCorp and Esoterix, both of whom are engaged in a common enterprise with disregard of the separate nature of the two entities, and there is serious ambiguity about the manner and capacity in which they and their representatives are acting.

7.      While Esoterix is the licensee under the License Agreement, the general release the defendants attempt to use to justify their breach of the License Agreement was the result of negotiation with LabCorp and LabCorp employees, not Esoterix or its employees.  Moreover, █ █████████████████ and other performance provided in accordance with the License Agreement

are provided by LabCorp, not Esoterix.  (*See* Ex. A.)  Similarly, correspondence concerning the defendants' breach of the License Agreement was sent by Kellie Watson, who identifies herself as LabCorp's "Head of Licensing, Corporate Development," and who asserted in a sworn declaration to this Court that in her capacity on behalf of LabCorp she is responsible for managing the License Agreement, and maintains supervision and control over business records of both Esoterix and LabCorp.  (*See* Ex. B; Ex. C.)  Moreover, in the context of this dispute, Ms. Watson sent an email from her "labcorp.com" email address to a representative of the plaintiffs in which she identified Esoterix as "EGL (LabCorp)," driving home the point to the plaintiffs that the control and authority rests with LabCorp, not Esoterix, which appears to be little more than a shell company designed to serve LabCorp's interests at its sole direction and control.  (*See* Ex. D.)  Indeed, other correspondence from the defendants concerning their breach of the License Agreement was sent by Kathryn Kyle, LabCorp's Vice President and General Counsel. (*See* Ex. E.)  Notably, it does not appear that any of the correspondence from the defendants concerning their breach of the License Agreement was sent by an employee of Esoterix.  Further, and entirely consistent with the fact that LabCorp has directed and controlled the response to the plaintiffs' allegations, the defendants have admitted that Esoterix was created simply to manage LabCorp assets.  (*See* Dkt. 10, p. 3, fn. 3.)  To that end, the only officer identified in Esoterix's filings with the Massachusetts Secretary of State is its manager, F. Samuel Eberts III.  (*See* Ex. F.)  Mr. Eberts is LabCorp's corporate secretary.  (*See* Ex. G.)  The only other person identified in Esoterix's filings with the Massachusetts Secretary of State is Glenn A. Eisenberg, LabCorp's Chief Financial Officer.  (*See* Ex. F; Ex. G.)

8.     As a result, and also upon information and belief, LabCorp exercises pervasive control over Esoterix, has intermingled business assets with Esoterix, has failed to observe

corporate formalities, has improperly used Esoterix as a conduit for its own transaction, operates Esoterix as its alter ego, and has directed and controlled the misconduct of Esoterix for an improper and injurious purpose, *e.g.*, engaging in bad-faith negotiations with the plaintiffs and knowingly and willfully breaching the License Agreement as alleged herein, thereby causing significant injury to the plaintiffs.  The plaintiffs also have a reasonable expectation that discovery in this case will show, among other things, that Esoterix is thinly capitalized, does not maintain corporate records separate and distinct from that of LabCorp, has had its funds siphoned away by LabCorp, and does not have properly functioning mangers, officers and/or directors.

9.     To provide a meaningful remedy to the plaintiffs for their injuries, and to avoid injustice, LabCorp should be held liable for the defendants' breach of their contractual, common law and statutory obligations as alleged herein.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over the asserted claims pursuant to 28 U.S.C. § 1332.  As set forth by the defendants in their Notice of Removal (*see* Dkt. 1), the amount in controversy "well" exceeds $75,000, and the parties are citizens of different states. The plaintiffs are both citizens of Massachusetts in that they are Massachusetts corporations and maintain their principal place of business in Massachusetts.  The defendants are both citizens of Delaware and North Carolina in that LabCorp is a Delaware corporation that maintains its principal place of business in North Carolina, and Esoterix is a Delaware limited liability company whose sole member is LabCorp.  Esoterix also maintains its principal place of business in North Carolina.

11.     This Court has personal jurisdiction over the defendants.  Both defendants are licensed to do business in Massachusetts, both have offices here, both regularly engage in

4

extensive business transactions and solicitations here, and both have contracted to supply goods and services here.  More importantly, both defendants have consented to the jurisdiction of this Court for any disputes or matters arising out of one or more of the agreements that are at issue in this case.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Massachusetts.

## **BACKGROUND**

13.     The plaintiffs own a number of patents directed to detecting the presence of the epidermal growth factor receptor ("EGFR") mutation which, when present, is predictive of the efficacy of certain chemotherapeutic treatments for lung cancer.   This groundbreaking technology was developed by the plaintiffs as part of their multi-million investment in research and development directed to improving patient care and saving lives.

14.     In 2005, .  Years later, in 2010, LabCorp purchased most of Genzyme's genetic testing business, .  LabCorp created Esoterix to manage those assets for the benefit of LabCorp and thus had the License Agreement assigned to Esoterix who, at least nominally, would be the licensee going forward.

15.     .  This is consistent with the plaintiffs' mission, which is to ensure that its groundbreaking and life-saving technology is widely available.

16.     One such sub-license was granted in two different agreements to a company called DxS, Ltd., whose rights under the sub-license were later assumed by another company called QIAGEN Manchester Ltd. ("QIAGEN").

17.     In 2014, Esoterix sued QIAGEN for infringement of certain of the plaintiffs' patents, breach of the sublicense, and related claims.  Notably, Esoterix did not name the plaintiffs as a party to that lawsuit (even though the plaintiffs owned the patents), nor did the defendants even tell the plaintiffs that Esoterix was going to file the lawsuit.  The defendants just filed the lawsuit, which, ███████████████████████, had the practical effect of putting the validity of the plaintiffs' patents at issue without their knowledge, consultation or consent to do so.

18.     When the defendants disclosed the QIAGEN lawsuit to the plaintiffs, the defendants mischaracterized it as being primarily a breach of contract action. Thereafter, despite being asked to do so, the defendants failed to keep the plaintiffs apprised of developments in the case.  In fact, the defendants did not tell the plaintiffs that the court had ruled in favor of QIAGEN on a dispositive motion challenging the validity of the plaintiffs' patents put in suit by defendants, nor did the defendants tell the plaintiffs that QIAGEN had asserted counterclaims challenging the validity of other of plaintiffs' patents and had successfully obtained a ruling invalidating those patents as well.

19.     It was in this context that the defendants and QIAGEN explored settlement of their case.  As that was occurring, it became clear to the plaintiffs that the defendants were seemingly unwilling to protect plaintiffs' rights to defend the validity of the plaintiffs' patents, whether in further proceedings before this Court or on appeal, causing plaintiffs concern that the defendants' interests were actually served by the finding of invalidity by the Court given that, at

the very least, that ruling would have given the defendants an opening to attempt to renegotiate the terms of the license.  In any event, the plaintiffs were prepared to seek to intervene in the QIAGEN litigation to defend the validity of their patents.  At about the time the plaintiffs' intervention was to occur, the defendants notified the plaintiffs that the defendants and QIAGEN had agreed on settlement terms.  ███████████████████████████████████ ███████████████████████████████.

20.    From the start, the defendants put significant pressure on the plaintiffs to review the terms of settlement and approve them quickly.  The defendants' counsel, Robert Steiner (who also is trial counsel to the defendants in this case), even went so far as to send threating letters to the plaintiffs accusing them of acting in bad faith ██████████████████ simply by taking the time they needed to review the terms of settlement.  The defendants had failed to keep the plaintiffs apprised of the developments in the case, and the defendants and QIAGEN had been negotiating settlement terms for months.  It was unreasonable for the defendants to demand that the plaintiffs approve the terms in a matter of days, and to threaten them when they needed more time.  ███████████████████████████████████ █████████.

21.    ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████.

22.     As reflected in the e-mail exchange attached hereto as Exhibit I, ████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ (*See* Ex. I, p. 1 (emphasis added).)

23.     At defendants' request, on May 31, 2017, the parties met in person in Boston. Mr. Steiner was in attendance at that meeting. ██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████.

24.     ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

8

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████. This was reflected in a settlement agreement effective June 27, 2017 ("Settlement Agreement"), attached hereto as Exhibit J.

25.     Neither at the May 31, 2017 meeting, nor during the subsequent negotiation of the Settlement Agreement did anyone for any party ever state, suggest or even imply that one of the terms of settlement would be that the defendants would forgo a substantial portion of █ ████████████████████ due to the plaintiffs under the License Agreement.  █████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████.

26.     ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████.

27.     ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████.

9

28. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████      ███████████████████

████████.

29.     This was never discussed by the parties and was not their objective intent in

entering into the Settlement Agreement. █████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████, the defendants are acting in bad faith and improperly

attempting to secure an un-bargained for benefit to the detriment of the plaintiffs.

30. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████.

31.    The defendants' own actions confirm this. ████████████████████████

██████████████████████████████████████████████████

██████████████████████████

32.    ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████.

33.    Despite repeated requests, the defendants have failed and refused to pay the amount due under the License Agreement.

34.     In addition, the defendants have refused to allow the plaintiffs to audit their records during the relevant time period, ███████████████████████████████████ ████████████████████████████.

35.     ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████.

36.     By letter dated November 3, 2017 (attached hereto as Exhibit K), the plaintiffs demanded that the defendants immediately provide ███████████████████████

████████████████████████████████████████████████

████████████████████████████████. The defendants failed to do so.

37.     The plaintiffs further demanded that the defendants remit payment, plus interest

████████████████████████████████████████████████

████████████████████████████████. After notice and demand, the defendants have failed to pay the amount due.

38.     ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████.

39.     ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████, the defendants failed and refused to allow MGH's auditor to

review such records.

## COUNT I
### (Breach of Contract)

40.     The plaintiffs restate and incorporate by reference the allegations set forth above

as if fully set forth herein.

41.     The plaintiffs and defendants (as successors-in-interest) entered into the License

Agreement, and the License Agreement is a valid and enforceable contract between the plaintiffs

and the defendants.

42.     As described more fully above, the defendants, who upon information and belief

have been unhappy with the terms of the License Agreement, knowingly, intentionally and with

malice breached the License Agreement ████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████.

43.     The defendants also breached the License Agreement ██████████████

███████████████████████████████████████████████████████████████

█████████████.

44.     The defendants further breached the License Agreement █████████████████

███████████████████████████████████████████████████████████████

████████████████████████████.

45.     The defendants still further breached the License Agreement ████████████

███████████████████████████████████████████████████████████████

█████████████████.

13

46.     As a result of the defendants' intentional and willful misconduct, the plaintiffs have suffered damages in an amount to be determined at trial.

**COUNT II**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

47.     The plaintiffs restate and incorporate by reference the allegations set forth above as if fully set forth herein.

48.     There is a covenant of good faith and fair dealing inherent in every contract.

49.     ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████, have engaged in an unfair, knowing, deceptive, malicious and bad faith scheme to deprive the plaintiffs of ████████████████████████████████

██████████████████████.

50.     The defendants' misconduct serves to prevent the objectives of the License Agreement from being realized – █████████████████████████████████

█████████████████████████████████████. Upon information and belief, the defendants realized economic and/or other gain on their use of the plaintiffs' patents and technology, ████████████████████████████████████████

██████████████████████████████████.

51.     This misconduct violates the covenant of good faith and fair dealing inherent in the License Agreement, and the plaintiffs have suffered damages in an amount to be determined at trial.

<u>**COUNT III**</u>
**(Violation of M.G.L. Chapter 93A, §§ 2 and 11)**

52.     The plaintiffs restate and incorporate by reference the allegations set forth above as if fully set forth herein.

53.     At all times relevant hereto, the plaintiffs and defendants have been engaged in trade or commerce.

54.     The defendants' failure and refusal to pay the plaintiffs amount owed under the License Agreement was done knowingly and willfully.

55.     The defendants' failure to pay the plaintiffs the amount owed in breach of the License Agreement, notwithstanding the defendants' known contractual obligations under the License Agreement, was done for the improper purpose of unfairly and inequitably securing un-bargained for benefits to the detriment of the plaintiffs.   In other words, the defendants' misconduct, █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████, has been unscrupulous and motivated by a desire to extort an extra-contractual benefit at the expense of the plaintiffs and their patients.

56.     Indeed, the defendants' unfair, deceptive and unscrupulous conduct has had the effect of depriving the plaintiffs of more than ████████, which is money the plaintiffs use to help fund innovative research and treatment for cancer and other patients who have sought treatment in their hospitals and other facilities.

57.     This unfair, deceptive and unscrupulous misconduct constitutes an unfair and deceptive act or practice in violation of M.G.L. Chapter 93A.

58.     The defendants' unfair, deceptive and unscrupulous practices occurred primarily and substantially in Massachusetts.

59.     The plaintiffs have suffered monetary damages as a result of the defendants' unfair, deceptive and unscrupulous practices.

## COUNT IV
### (Accounting/Injunctive Relief)

60.     The plaintiffs restate and incorporate by reference the allegations set forth above as if fully set forth herein.

61.     As set forth more fully above, ███████████████████████████████ ████████████████████████████████████.

62.     The plaintiffs' relationship with the defendants was one of trust and confidence. For example, the plaintiffs trusted and relied on the defendants to accurately report the underlying information and data concerning ███████████████████████████. Such information and data is the defendants' specialized knowledge.  Indeed, it is information over which the defendants have exclusive control.  The defendants were aware that the plaintiffs were relying on the defendants' specialized knowledge.

63.     The defendants, for their own benefit, abused the plaintiffs' trust and confidence as a result of the conduct alleged herein, and the plaintiffs are being harmed as a result, including without limitation the defendants' refusal ██████████████████████████ ████████████████████████████████. Thus, the plaintiffs seek a full audit and accounting from the defendants of the relevant records ██████████ ███████████████████.

## COUNT V
### (Reformation of Contract – Mistake)

64.     The plaintiffs restate and incorporate by reference the allegations set forth above as if fully set forth herein.

16

65. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████, should the Court determine otherwise, and as an alternative

form of relief, the Court should, based on mistake, ████████████████████████

████████████████████.

66. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████. Thus, in

the event the Court determines ████████████████████████████████, the

plaintiffs' basic assumption and understanding was a mistake.

67. Such a mistake, ████████████████████████████████████

████████████, would have a material effect on the agreed upon exchange of performances under

the Settlement Agreement that is adverse to the plaintiffs.

68. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

69.     After numerous calls, letters, emails and even a seven hour all hands meeting between the parties, ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████.

70.     Such a mistake, therefore, would have a material effect on the agreed upon exchange of performances under the Settlement Agreement that was adverse to the plaintiffs, and favorable to the defendants.

71.     The plaintiffs do not bear the risk of the mistake.  The Settlement Agreement did not allocate the risk to the plaintiffs.  Moreover, the plaintiffs were not operating with only

18

limited knowledge with respect to the facts to which the mistake relates, and thus could not have

treated, and did not treat, such limited knowledge as being sufficient.

72.    The defendants had reason to know of the mistake. ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████.

73.    Alternatively, the defendants did not know of the mistake, ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████.

74.    Therefore, whether based on unilateral mistake or mutual mistake, the Court

should reform ████████████████████████████████████████████

██████████████████████.

## <u>COUNT VI</u>
### (Piercing the Corporate Veil)

75.    The plaintiffs restate and incorporate by reference the allegations set forth above

as if fully set forth herein.

76.     LabCorp is the sole member of Esoterix, and both share the same principal place of business.  There is a confused intermingling of activity between LabCorp and Esoterix, both of whom are engaged in a common enterprise with disregard of the separate nature of the two entities, and there is serious ambiguity about the manner and capacity in which they and their representatives are acting.

77.     While Esoterix is the licensee under the License Agreement, the release the defendants attempt to use to justify their breach of the License Agreement was the result of negotiation with LabCorp and LabCorp employees, not Esoterix or its employees.  Moreover, ███ ████████████████ and other performance provided in accordance with the License Agreement are provided by LabCorp, not Esoterix.  (*See* Ex. A.)  Similarly, correspondence concerning the defendants' breach of the License Agreement was sent by Kellie Watson, who identifies herself as LabCorp's "Head of Licensing, Corporate Development," and who asserted in a sworn declaration to this Court that in her capacity on behalf of LabCorp she is responsible for managing the License Agreement, and maintains supervision and control over business records of both Esoterix and LabCorp.  (*See* Ex. B; Ex. C.)  Moreover, in the context of this dispute, Ms. Watson sent an email from her "labcorp.com" email address to a representative of the plaintiffs in which she identified Esoterix as "EGL (LabCorp)," driving home the point to the plaintiffs that the control and authority rests with LabCorp, not Esoterix, which appears to be little more than a shell company designed to serve LabCorp's interests at its sole direction and control.  (*See* Ex. D.)  Indeed, other correspondence from the defendants concerning their breach of the License Agreement was sent by Kathryn Kyle, LabCorp's Vice President and General Counsel. (*See* Ex. E.)  Notably, it does not appear that any of the correspondence from the defendants concerning their breach of the License Agreement was sent by an employee of Esoterix.

78.     Further, and entirely consistent with the fact that LabCorp has directed and controlled the response to the plaintiffs' allegations, the defendants have admitted that Esoterix was created simply to manage LabCorp assets.  (*See* Dkt. 10, p. 3, fn. 3.)  To that end, the only officer identified in Esoterix's filings with the Massachusetts Secretary of State is its manager, F. Samuel Eberts III.  (*See* Ex. F.)  Mr. Eberts is LabCorp's corporate secretary.  (*See* Ex. G.) The only other person identified in Esoterix's filings is Glenn A. Eisenberg, LabCorp's Chief Financial Officer.  (*See* Ex. F; Ex. G.)

79.     As a result, and also upon information and belief, LabCorp exercises pervasive control over Esoterix, has intermingled business assets with Esoterix, has failed to observe corporate formalities, has improperly used Esoterix as a conduit for its own transaction, operates Esoterix as its alter ego, and has directed and controlled the misconduct of Esoterix for an improper and injurious purpose, *e.g.*, engaging in bad-faith negotiations with the plaintiffs and knowingly and willfully breaching the License Agreement as alleged herein, thereby causing significant injury to the plaintiffs.  The plaintiffs also have a reasonable expectation that discovery in this case will show, among other things, that Esoterix is thinly capitalized, does not maintain corporate records separate and distinct from that of LabCorp, has had its funds siphoned away by LabCorp, and does not have properly functioning mangers, officers and/or directors.

80.     The corporate form should not bar the plaintiffs from seeking the full relief to which they are entitled.

81.     To provide a meaningful remedy to the plaintiffs for their injuries, and to avoid injustice, LabCorp should be held liable for the defendants breach of their contractual and common law obligations as alleged herein.

## COUNT VII
### (Unjust Enrichment Against LabCorp)

82.     The plaintiffs restate and incorporate by reference the allegations set forth above as if fully set forth herein.

83.     The plaintiffs provided a license to patent rights to the defendants, which greatly benefitted the defendants.

84.     In good conscience and equity the plaintiffs should be fully paid for the defendants' use of those patent rights.

85.     LabCorp asserts in this case that it is not a party to the License Agreement, and, for that reason, further asserts that the plaintiffs do not have a valid breach of contract cause of action against LabCorp.

86.     As set forth above, the defendants' misconduct in this case has occurred at the direction and control of LabCorp and for the express benefit of LabCorp.  Indeed, the defendants have already told the Court that Esoterix was created simply to manage LabCorp assets, including the License Agreement.

87.     Given that the defendants' breach was done at LabCorp's direction and for LabCorp's benefit, it would unjustly enrich LabCorp if LabCorp was allowed to retain such ill-gotten gains simply because LabCorp is not a party to the License Agreement.

88.     The plaintiffs have suffered damages in an amount to be determined at trial, and LabCorp has been unjustly enriched in excess of ████████ as a consequence of █████████ ███████████████████████████████████████████████.

89.     If LabCorp is correct, and the plaintiffs do not have a valid breach of contract cause of action against LabCorp, and if the Court declines to pierce the corporate veil, there is an absence of a remedy at law against LabCorp.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, The General Hospital Corporation and Dana-Farber Cancer Institute, Inc., respectfully request that the Court enter the following relief:

1.      grant the plaintiffs judgment on all counts in the Complaint;

2.      award the plaintiffs their damages, with interest;

3.      order injunctive relief and/or an accounting;

4.      order the defendants to pay the plaintiffs the amounts by which the defendants were unjustly enriched;

5.      award the plaintiffs double or treble damages in accordance with M.G.L. c. 93A;

6.      award the plaintiffs' their attorneys' fees and costs; and

7.      award the plaintiffs such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

THE GENERAL HOSPITAL CORPORATION AND DANA-FARBER CANCER INSTITUTE, INC.

By their attorneys,


*/s/ Carolyn Marcotte*
Douglas J. Nash (BBO# 633050)
Carolyn A. Marcotte (BBO# 663616)
Barclay Damon LLP
One Financial Center, Suite 1701
Boston, Massachusetts 02111
(617) 274-2900
dnash@barclaydamon.com
cmarcotte@barclaydamon.com

Dated: July 18, 2018

23

## <u>CERTIFICATE OF SERVICE</u>

I, Carolyn A. Marcotte, certify that on July 18, 2018, Plaintiffs' Amended Complaint filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to the non-registered participants.


*/s/ Carolyn A. Marcotte* _____
Carolyn A. Marcotte