UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GENERAL HOSPITAL CORPORATION and DANA-FARBER CANCER INSTITUTE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ESOTERIX GENETIC LABORATORIES, LLC and LABORATORY CORPORATION OF AMERICA HOLDINGS, <br><br> Defendants. | C.A. NO. 1:18-cv-11360-IT |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Esoterix Genetic Laboratories, LLC ("EGL") and Laboratory Corporation of America Holdings ("LabCorp") (collectively "Defendants"), by their undersigned counsel, respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint filed by The General Hospital Corporation and Dana-Farber Cancer Institute, Inc. (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

This simple breach of contract case arises out of a June 27, 2017 Settlement Agreement, which resolved a dispute over an underlying Master License Agreement between EGL and Plaintiffs. █████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████

██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

Plaintiffs' position ignores both the text of the Settlement Agreement and governing Massachusetts law. ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

EGL explained all of this in its original motion to dismiss (ECF Nos. 9-11).  In response, Plaintiffs amended their Complaint to include two new, Hail Mary theories.  First, Plaintiffs include in their Amended Complaint two confidential settlement communications that took place a month before a final agreement was reached. ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

Second, Plaintiffs now argue that the Settlement Agreement was based on a "mistake," and should be equitably reformed.  But Plaintiffs are sophisticated parties that were represented by counsel.  ████████████████████████████████████████████████ ██████████████████████████████████  Under these circumstances, the conclusory allegation of mistake is insufficient to survive a motion to dismiss.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████  The Amended Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

### A.     Plaintiffs License the Patent Rights to EGL

Plaintiffs own or control the rights to certain patents (the "Patents") providing for a method of detecting the presence of epidermal growth factor receptor ("EGFR") mutations which, when present, are predictive of the efficacy of certain chemotherapeutic treatments for lung cancer.  (Am. Compl. ¶ 13, Ex. H §§ 1.24, 1.9.)

In 2005, Plaintiffs entered into an Exclusive License Agreement granting to EGL an exclusive, royalty-bearing license to sell products and services utilizing the Patents (the "Master License Agreement").  (Am. Compl. ¶ 14, Ex. H § 2.1.)[1] ████████████████████████████████

---

[1]  The original Master License Agreement was entered into between Plaintiffs and Genzyme Corporation ("Genzyme").  In 2010, LabCorp purchased most of Genzyme's genetic testing business, including its rights under

3

LabCorp is not a party to the Master License Agreement.

---

the Master License Agreement, and created EGL to manage the purchased assets.  EGL is Genzyme's successor-in-interest to the Master License Agreement.  (Am. Compl. ¶ 14, Ex. J at 1; Howe Decl. Ex. A ¶¶ 21, 23.)

### B.      The Sublicense

In 2008, EGL (then-Genzyme) entered into a sublicense agreement with non-party DxS, Ltd. (the "Sublicense"), which subsequently assigned its rights to the Sublicense to QIAGEN Manchester, Ltd. ("QIAGEN").   (Am. Compl. ¶ 16, Ex. J at 1; Howe Decl.[2] Ex. A ¶ 18.)[3] LabCorp is not a party to the Sublicense.

### C.      The Prior Litigation and Settlement Agreement

In 2014, EGL filed a complaint against QIAGEN alleging breach of the Sublicense, infringement of the Patents, and other related claims (the "Prior Litigation").   (Am. Compl. ¶ 16, Ex. J at 1; Howe Decl. Ex. A.)   The Court granted QIAGEN's motion to dismiss EGL's patent infringement claim, but denied QIAGEN's motion as to the remaining three claims.   (Howe Decl. Ex. C.)   QIAGEN subsequently filed counterclaims against EGL and third-party claims against LabCorp.   (Howe Decl. Ex. B.)   During the Prior Litigation, the Plaintiffs here made numerous accusations that EGL's commencement and prosecution of its claims against QIAGEN violated the terms of the Master License Agreement.   (Am. Compl. ¶¶ 17-18.)

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████      █  ███████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

---

[2] References to the "Howe Decl." are to the declaration of Christopher R. Howe submitted herewith.
[3] When ruling on a motion to dismiss, a district court may consider "matters of public record, and other matters susceptible to judicial notice."  *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008).
[4] ████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

██████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

Plaintiffs were represented by sophisticated counsel from two law firms in these negotiations—Ron Eisenstein of Nixon Peabody LLP and Joshua Barlow of Haug Partners—████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

**D.**     **The Instant Dispute**

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████

7

Plaintiffs subsequently filed this action in the Superior Court for the Commonwealth of Massachusetts, which Defendants removed to this Court on June 28, 2018.   (ECF No. 1.) Defendants, thereafter, moved to dismiss the Complaint in its entirety, in response to which Plaintiffs filed the Amended Complaint.   The Amended Complaint adds a claim to reform the Settlement Agreement based on "mistake," and includes allegations and references to settlement discussions between the parties that occurred prior to entering into the Settlement Agreement, ██████████████████████████

## ARGUMENT

Rule 12(b)(6) requires the dismissal of a complaint if it fails to allege "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is "plausible" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010); *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013) ("threadbare" allegations that "omit any meaningful factual content" are insufficient).   Where a complaint "strains the language of the [contract] beyond recognition," it must be dismissed.   *Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168, 174-75 (D. Mass. 2012).

**I.** ████████████████████████████████████
████████████████████████████

Where the language of a written contract is "plain and unambiguous," it must be "construed in accordance with the 'fair and reasonable meaning of its words.'"   *Sherman*, 889 F. Supp. 2d at 174.   Moreover, the interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law for the court.   *See HSBC Realty Credit*

*Corp. (USA) v. O'Neill*, 745 F.3d 564, 574 (1st Cir. 2014).  Here, the unambiguous text of the Settlement Agreement and the Master License Agreement defeats Plaintiffs' claims as a matter of law, and the Court should therefore disregard Plaintiffs' allegations concerning the parties' supposed intent in entering into the Settlement Agreement.

**A.**  

"It is beyond debate that general releases are enforceable under Massachusetts law." *EveryScape, Inc. v. Adobe Sys. Inc.*, No. CIV.A. 10-11597-RGS, 2013 WL 5550901, at *3 (D. Mass. Oct. 7, 2013); *see also Craft v. Regions Mortg., Inc.*, 769 F. Supp. 2d 7, 10 (D. Mass. 2011) ("Massachusetts law . . . favors the enforcement of releases").  "Moreover, a general release will settle all matters covered by its language"; "if a party intends to limit the scope of a release, she should say so explicitly."  *Craft*, 769 F. Supp. 2d at 10-11; *see also Eck v. Godbout*, 444 Mass. 724, 726, 831 N.E.2d 296, 299 (2005).

██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████  *See Bean's Glass Serv., Inc. v.*

*Speedy Auto Glass, Inc.*, No. CIV.A. 00-30115-MAP, 2002 WL 974675, at *6 (D. Mass. May 10, 2002) (holding breach of contract action barred by the parties' settlement and release agreement).

Plaintiffs' citation to various provisions in the Master License Agreement does not mandate a different result and, in fact, supports *Defendants'* position ███████████████

███████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████

████████████████████████████████

██████████████████ This argument is contradicted by the text of the Master License Agreement as well as Massachusetts case law.

In Massachusetts, a claim "arises at the time of the 'underlying incident' giving rise to the claim." *See Eck*, 831 N.E.2d at 302.  The term "arise" is defined in Black's Law Dictionary 23 (9th ed. 2009) as "'[t]o originate; to stem (from).'"  *John Doe No. 4 v. Levine*, 77 Mass. App. Ct. 117, 119 (2010). ████████████████████████

███████████████████████████████

████████████████████████████████

████████████████████████████

████████████████████████

███████████████████████████

████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Plaintiffs' position has no basis in the text of the Master License Agreement.

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

      ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

There is also a fundamental difference between a royalty payment and an annual license fee.  As discussed above, in Massachusetts, a claim "arises at the time of the 'underlying incident' giving rise to the claim."  *See Eck*, 831 N.E.2d at 302.  ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████[5]

---

[5] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

**B.**  ████████████████████████████████████████
████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

**C.**  **The Court Should Disregard Plaintiffs' Allegations Concerning the Parties' Intent in Entering into the Settlement Agreement**

Plaintiffs have failed to identify a single ambiguity in the text of the Settlement Agreement. Instead, they ask this Court to *create* an ambiguity based on Plaintiffs' mischaracterization of confidential settlement negotiations, as well as Plaintiffs' own claimed "assumption and understanding" in entering into the Settlement Agreement. (Am. Compl. ¶¶ 19-29, 66.) These allegations fail as a matter of law.

First, the email attached as Exhibit I to the Amended Complaint states, on its face, that it is a "CONFIDENTIAL SETTLEMENT COMMUNICATION" and that it is "INADMISSIBLE FOR ANY PURPOSE." (Am. Compl. Ex. I.) While settlement negotiations may be admissible to aid the Court in interpreting an ambiguous settlement agreement,[6] such negotiations are not admissible where, as here, the settlement agreement is clear and unambiguous.

████████████████████████████████████████████

████████████████████████████████████████████

---

[6] Defendants reserve all rights to challenge the admissibility of these negotiations on summary judgment or at trial.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████ *See*

*Gravelle v. Hudson Lock LLC*, No. 16-CV-12548-LTS, 2018 WL 627373, at *7 (D. Mass. Jan. 30, 2018) (holding that integration clause foreclosed a breach of contract claim); *Burke v. Altisource Sols., Inc*., No. CV 17-11867-IT, 2018 WL 3118434, at *6 (D. Mass. June 7, 2018) (same).[7]

"It is well-settled that 'where an agreement is unambiguous and contains an integration clause, a court must give effect to its obvious meaning.'" *Duckworth v. R3 Educ., Inc*., No. CV 17-11169-FDS, 2017 WL 5196384, at *6 (D. Mass. Nov. 9, 2017); *see also Agri–Mark, Inc. v. Niro, Inc*., 233 F. Supp. 2d 200, 208 (D. Mass. 2002) ("integration clauses are well recognized and enforceable in this district"). "That means, of course, that an inquiring court should construe the written documents within its four corners, unfestooned with covenants the parties did not see fit to mention." *Duckworth*, 2017 WL 5196384, at *6.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ Thus, "where the language of an integrated release agreement is unambiguous as applied to the question at hand and the intent of the parties is clear solely on the basis of that language, the

---

[7] ███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████

parol evidence rule bars the use of extrinsic evidence to contradict that plain language." *Hermes Automation Tech., Inc. v. Hyundai Elecs. Indus.* Co., 915 F.2d 739, 747 (1st Cir. 1990); *see also White Construction Co., Inc. v. Commonwealth*, 11 Mass. App. 640, 418 N.E.2d 357, 360 (1981) ("A release . . . which is unequivocal in its terms cannot be explained by parol evidence"). This is particularly true where the parties "had the benefit of sophisticated corporate management and competent counsel for creation of the superseding final settlement document." *Warner Co. v. Liberty Mut. Ins. Co.*, 80 Mass. App. Ct. 1104, 951 N.E.2d 1013 (2011).

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████ *See Warner Co. v. Liberty Mut. Ins. Co.*, 80 Mass. App. Ct. 1104, 2011 WL 3611396, at *4 (2011) (refusing to consider a term sheet that preceded an integrated settlement agreement, holding that "no injustice would result from literal enforcement of the chosen language"); *NJR Const. Co. v. Saunders*, No. CA936407F, 1994 WL 879942, at *1 (Mass. Super. May 18, 1994) (refusing to consider an attorney affidavit "for the purpose of altering the unambiguous terms of the [integrated] Settlement Agreement and the release").

**D.**   ████████████████████████████████
████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

## II.   PLAINTIFFS' CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW

### A.   Plaintiffs' Allegations Are Insufficient to State a Claim for Breach of the Implied Covenant

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is entirely duplicative of their breach of contract claim, and devoid of any allegations of deceit or maliciousness.  It should be dismissed.

 "[N]ot every breach of contract is a breach of the implied covenant of good faith and fair dealing." *Christensen v. Kingston School Committee*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005); *see also Nagel v. Provident Mut. Life Ins. Co.*, 51 Mass. App. Ct. 763, 768, 749 N.E.2d 710 (2001).  Rather, breach of the implied covenant "requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage."  *Christensen,* 360 F. Supp. 2d at 226. Harms suffered as a result of a breach of the implied covenant "generally involve deceit or 'unfair subterfuge' and usually are 'compounded by deceptive or unfair behavior that prevented—or at a minimum diverted—the injured parties from seeking immediate redress." *Id.*

Accordingly, "[c]laims for breach of the implied covenant . . . require additional factual allegations" beyond those required to state a claim for breach of contract. *Brand Grp. Int'l, LLC v. Established Brands Int'l, Inc.*, No. CIV.A. 10-11783-JLT, 2011 WL 3236078, at *3 (D. Mass.

July 26, 2011). "[U]nless a plaintiff can establish that a defendant willfully and maliciously refused to perform an express obligation of the underlying contract, the covenant does not provide an independent basis of recovery." *Edlow v. RBW, LLC*, No. CIV A 09-12133-RGS, 2010 WL 2034772, at *5 (D. Mass. May 21, 2010).

Plaintiffs' allegations do not even state a claim for breach of contract, much less meet this heightened standard for breach of the implied covenant. Indeed, Plaintiffs' implied covenant claim is based *exclusively* on the same allegations that form the basis of their breach of contract claim— ███████████████████████████████████████████████

███████████████████████████████

Plaintiffs' Amended Complaint makes no new factual allegations, but instead alleges that this conduct constitutes "an unfair, knowing, deceptive, malicious and bad faith scheme." (Am. Compl. ¶ 49.) Absent any additional *factual* allegations, tacking on these adjectives to Plaintiffs' breach of contract allegations does not give rise to a plausible inference of bad faith. *See Rosa v. PNC Mortg.*, No. 16-10739-GAO, 2017 WL 4176971, at *2 (D. Mass. Sept. 21, 2017) (dismissing implied covenant claim because "the plaintiff's assertion of bad faith [was] not supported by any particular factual allegation"); *Burbank v. Town of Hubbardston*, 146 F. Supp. 3d 402, 406 (D. Mass. 2015) (dismissing implied covenant claim where the plaintiff failed to plead facts suggesting that the defendant acted in bad faith). Moreover, Plaintiffs' threadbare allegation that Defendants' "misconduct serves to prevent the objectives of the License Agreement" (Am. Compl. ¶ 50) is "too meager, vague, [and] conclusory" to warrant the presumption of truth or state a plausible claim for relief. *Tambone*, 597 F.3d at 442.

### B. Plaintiffs' Claim for Breach of the Implied Covenant is Refuted By the Terms of the Master License Agreement and Settlement Agreement

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing

likewise fails because it seeks to impose on Defendants obligations that conflict with the parties' agreements. "The scope of the covenant is only as broad as the contract that governs the particular relationship." *Karter v. Pleasant View Gardens, Inc.*, 248 F. Supp. 3d 299, 308 (D. Mass. 2017). Thus, while a covenant of good faith is implied in every contract, it may not "be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Shealey v. Fed. Ins. Co.*, 946 F. Supp. 2d 193, 199 (D. Mass. 2012) (citing *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004)); *see also Ford v. Lehman Capital*, No. 10-40092-FDS, 2012 WL 1343977, at *5 (D. Mass. Apr. 17, 2012) (the implied covenant cannot "undermine the express terms of the contract").

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ Because Plaintiffs "cannot use the implied covenant to impose an obligation on defendants . . . [that] otherwise does not exist," *Karter*, 248 F. Supp. 3d at 308, their claim for breach of the implied covenant fails as a matter of law.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER M.G.L. CHAPTER 93A

Plaintiffs' attempt to transform their breach of contract claim into a claim for "unfair and deceptive" trade practices should also be rejected. "A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury." *Gallagher v. Amedisys, Inc.*, No. 17-CV-11390-ADB, 2018 WL 2223673, at *7 (D. Mass. May 15, 2018). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter 93A] violation is a question of law." *Id.*

"In the context of disputes among businesses, where both parties are sophisticated commercial players, the 'objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce.'" *Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240, 244 (D. Mass. 2011). Thus, to prove a violation of Chapter 93A, Plaintiffs must show that Defendants' conduct "fell within the penumbra of some established concept of unfairness or was immoral, unethical, oppressive or unscrupulous." *Id.* (internal citations and quotations omitted). Plaintiffs' allegations are woefully insufficient.

"It is well settled that the mere breach of a contract, without more, does not amount to a [Chapter] 93A violation." *Id.* Indeed, even an "intentional[] breach [of contract] is insufficient[.]" *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *9 (D. Mass. July 20, 2015). Rather, the breach must be "so egregious as to possess an extortionate quality that gives it the rancid flavor of unfairness." *Zurich*, 796 F. Supp. 2d at 244; *see also Killian Corp. v. Murphy*, No. 063453, 2010 WL 4244829, at *4 (Mass. Super. Aug. 6, 2010). "In cases in which Chapter 93A claims relating to a contract dispute have been found to have been adequately alleged, courts have often cited additional damages incurred by the plaintiff or third parties, or additional unfair benefits sought by the defendants, as a basis for finding the necessary 'extortionate' conduct." *Formulatrix, Inc. v. Rigaku Automation, Inc.*, No. CV 15-12725-MLW, 2016 WL 8710448, at *3 (D. Mass. Apr. 1, 2016). "[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a [Chapter] 93A claim is made." *Zurich*, 796 F. Supp. 2d at 244-45.

In *Whitman v. Longview*, for example, the plaintiff alleged that the defendants improperly withheld payment under an agreement. 2015 WL 4467064, at *6. In an effort to satisfy Chapter

93A, the plaintiff alleged that the defendants "acted in concert with one another in an unfair and deceptive effort to coerce [plaintiff] into unfairly compromising or otherwise abandoning its rights to receive the amounts due to it under the Agreement"; "ignored [plaintiff's] efforts to collect the amounts owed to it"; and "engaged in conduct in disregard of known contractual arrangements with the intention of securing an unbargained-for-benefit for themselves." *Id.* at *9. The court dismissed the plaintiff's claim, holding that the alleged facts "suggest[ed] nothing more than a mere breach of contract, even if it [wa]s a knowing or intentional breach." *Id.*; *see also Formulatrix v. Rigaku Automation*, 2016 WL 8710448, at *3 (dismissing Chapter 93A claim where plaintiff failed to allege that the breach "was motivated by a desire to extort some extra-contractual benefit," or that "it suffered any damages beyond those resulting from the breach.").

In their attempt to satisfy Chapter 93A, Plaintiffs similarly characterize Defendants' alleged breach of the Master License Agreement as "knowing[]," "willful[]," "improper," "unfair[]," "inequitabl[e]," "unscrupulous," "extort[ionate], and "deceptive." (Am. Compl. ¶¶ 54-57.)  This is simply not enough. ██████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ Plaintiffs' claim that Defendants breached (or even willfully or unscrupulously breached) the Master License Agreement is insufficient under Chapter 93A and their claim should be dismissed accordingly.

## IV.   PLAINTIFFS' CLAIM FOR AN ACCOUNTING FAILS AS A MATTER OF LAW

### A.   Plaintiffs' Accounting Claim Fails Because They Do Not Allege the Existence of a Fiduciary Relationship

"[A]n equitable accounting is available only if there exists a fiduciary or trust relationship between the parties[.]"  *Chedd-Angier Prod. Co. v. Omni Publications Int'l, Ltd.*, 756 F.2d 930, 937 (1st Cir. 1985); *see also Beram v. Ceaco, Inc.*, 219 F. Supp. 3d 274, 282 (D. Mass. 2016)

(dismissing accounting claim where no fiduciary relationship existed); *Boston Light Source, Inc. v. Axis Lighting, Inc.*, No. 17-CV-10996-NMG, 2017 WL 6543868, at *5 (D. Mass. Nov. 13, 2017) (same).  As was true with their original Complaint, Plaintiffs allege no *facts* to support the existence of a fiduciary relationship, and their conclusory allegation that "[t]he plaintiffs' relationship with the defendants was one of trust and confidence" (Am. Compl. ¶¶ 62-63) is not enough.  There is nothing in the Amended Complaint or in the Master License Agreement to suggest that the relationship between Plaintiffs and Defendants is anything more than an arms' length commercial relationship.  The claim should be dismissed.

**B.**     **Plaintiffs' Accounting Claim Is Refuted by the Terms of the Master License Agreement and Settlement Agreement**

Even if Plaintiffs could establish the existence of a fiduciary relationship, their accounting claim would still fail because, like their other claims, it is refuted by the unambiguous terms of the relevant agreements.  ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Accordingly, Plaintiffs' accounting claim should be dismissed as a matter of law.

**V.     "PIERCING THE CORPORATE VEIL" IS NOT A VALID CLAIM UNDER MASSACHUSETTS LAW**

Plaintiffs admit that LabCorp is not a party to the Master License Agreement.  Thus, it cannot be held liable for breach of the Master License Agreement or other contractual remedies unless Plaintiffs are able to pierce the corporate veil, which should be rejected in this case.

First, "[t]he doctrine of corporate disregard or 'veil-piercing' is not a cause of action, but instead is an equitable remedy that may be applied where it is necessary 'to provide a meaningful

remedy for injuries and to avoid injustice.'" *Hisert on behalf of H2H Assocs., LLC v. Blue Waters Dredging LLC*, No. CV 16-11960-FDS, 2017 WL 2662470, at *4 (D. Mass. June 20, 2017); *see also Specialty Mktg. Grp., Inc. v. Katz*, No. CIV.A. 13-12636-LTS, 2014 WL 2453105, at *7 (D. Mass. May 30, 2014) ("piercing does not state a separate cause of action"*)*; *Madico, Inc. v. GMX Performance Films, Pte, Ltd*, No. 2006-CV-10953-JLT, 2009 WL 10692742, at *1 (D. Mass. Feb. 19, 2009).  The claim should be dismissed for this reason alone.

Second, Plaintiffs allege no facts requiring the veil to be pierced.  EGL is a wholly-owned subsidiary of LabCorp.  (Howe Decl. Ex. A ¶ 2.)  It is not surprising, therefore, that LabCorp is "the sole member of [EGL]" and that the companies "share the same principal place of business."  (Am. Compl. ¶ 76.)  However, a parent-subsidiary relationship is not enough to hold a parent liable for the actions of its subsidiary.  *See TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353, 356 (D. Mass. 2010) ("Control in and of itself is not sufficient to disregard the corporate entity"); *Lothrop v. N. Am. Air Charter, Inc.*, 95 F. Supp. 3d 90, 103 (D. Mass. 2015) ("[C]ommon ownership . . . together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another").

Indeed, Massachusetts courts pierce the corporate veil in only two situations: (1) "when the parent exercises 'some form of pervasive control' of the activities of the subsidiary 'and there is some fraudulent or injurious consequence of the intercorporate relationship'"; or (2) "when there is a confused intermingling of activity of two or more corporations engaged in common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting."  *TechTarget*, 746 F. Supp. 2d at 356.  In applying this veil-piercing analysis, courts consider the following twelve factors:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of
> business assets; (4) thin capitalization; (5) nonobservance of corporate
> formalities; (6) absence of corporate records; (7) no payment of dividends; (8)
> insolvency at the time of the litigated transaction; (9) siphoning away of
> corporation's funds by dominant shareholder; (10) nonfunctioning of officers and
> directors; (11) use of the corporation for transactions of the dominant
> shareholders; and (12) use of the corporation in promoting fraud.

*Id.* "[T]o pierce the corporate veil, a court must conclude *both* that the parent corporation directed and controlled the subsidiary *and* used it for an improper purpose." *Id.* (emphasis added).

Plaintiffs allege that both of these scenarios are present (Am. Compl. ¶¶ 76, 79), but fail to make any supporting factual allegations. Instead, they recite a litany of innocuous facts regarding the connection between LabCorp and EGL, such as correspondence sent from LabCorp employees using a LabCorp email address, or shared officers between the two companies. (*Id.* ¶¶ 77-78.) There is nothing improper about these actions and, in fact, they are common among members of a large corporate family.

Nor do Plaintiffs allege any facts to show how LabCorp's alleged control of EGL or lack of corporate formalities were used for an improper purpose. *See TechTarget*, 746 F. Supp. 2d at 356. They simply repeat what has already been alleged—that Defendants "engag[ed] in bad faith negotiations" and "knowingly and willfully breach[ed] the [Master] License Agreement." (Am. Compl. ¶ 79.) These allegations fail to state a claim for breach of contract and they likewise fail to support the requested veil-piercing.

## VI.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST LABCORP FAILS AS A MATTER OF LAW

The purpose of unjust enrichment is to provide "an equitable stopgap for occasional inadequacies in contractual remedies at law." *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 179 (D. Mass. 2010). Thus, "where a binding contract governs the parties' relationship, the

contract provides the measure of the [aggrieved party's] right and no action for unjust enrichment lies." *Flores v. OneWest Bank, F.S.B.*, 172 F. Supp. 3d 391, 396 (D. Mass. 2016); *see also Mitchell v. U.S. Airways, Inc.*, 858 F. Supp. 2d 137, 158-59 (D. Mass. 2012) ("an unjust enrichment claim is permissible only where there is no express agreement").  To the extent Plaintiffs have a cause of action for breach of the Master License Agreement, they have a remedy against EGL as the party to that agreement.  Accordingly, Plaintiffs have an adequate "contractual remed[y] at law" and may not avail themselves of unjust enrichment.  *See Watkins*, 692 F. Supp. 2d at 179.

Plaintiffs' unjust enrichment claim also fails because, like their other claims, it is refuted by the terms of the Settlement Agreement.  "In an unjust enrichment action, a court can infer an implied contract where none would otherwise exist," but "[w]here there is an express contract, . . . the terms therein are controlling." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 115 (D. Mass. 2010).  "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment." *Id.*; *see also Shaulis*, 865 F.3d at 16.  ███████████████████

██████████████████████████████████████████████████████

## VII.   **PLAINTIFFS' REFORMATION CLAIM FAILS AS A MATTER OF LAW**

Recognizing that the Settlement Agreement's unambiguous terms plainly refute their claims, Plaintiffs contend that provision was a mistake, and should be reformed ██████████ ████████████████████  (Am. Compl. ¶ 65.)  This claim fails because Plaintiffs have not alleged—and cannot allege—sufficient facts to raise a plausible inference of mistake.

Under Massachusetts law, reformation of a contract may be warranted by mutual mistake in order "to effectuate the agreement intended by the parties to a contract where the contract language fails to capture that agreement." *First Am. Title Ins. Co. v. Lane Powell PC*, 764 F.3d 114, 119 (1st Cir. 2014). "Central to [the mutual mistake] doctrine is the fundamental

underpinning that the parties had reached an agreement on a point which they intended to enshrine in the written contract but which, for some reason, was mistakenly omitted from that written contract." *Id.* Thus, "[a] court will not grant reformation unless the movant has shown 'that the parties expressed agreement and an intention to be bound in accordance with the terms that [it is] asked to establish and enforce." *Id.*

To state a claim for mutual mistake, the plaintiff must allege that *both* parties made a mistake about the same subject matter, and that the mistake relates to an essential element of the agreement. *See Finamore v. Garcia*, No. CV 06-11855-RBC, 2011 WL 13244945, at *7 (D. Mass. Dec. 8, 2011). In addition, the mistake must "involve a fact capable of ascertainment at the time the contract was entered into, and not a mere expectation or opinion about future events." *Id.* Accordingly, "the mere fact that a release as worded extends to matters that the parties did not specifically have in mind at the time of execution does not operate to exclude those matters from the scope of the release." *Eck*, 831 N.E.2d at 303.

A party may also seek reformation of a contract based on unilateral mistake, but only in "limited circumstances"—namely, where "the mistake formed a basis on which [the plaintiff] entered into the contract, and . . . the defendant knew or had reason to know of the mistake." *Poley-Abrams Corp. v. Chaney & James Const. Co.*, 220 F. Supp. 401, 404 (D. Mass. 1963).

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████ These
allegations misrepresent the parties' communications, but, in any event, are insufficient to state a
claim for either mutual or unilateral mistake.

████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████

████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

*Caron v. Horace Mann Ins. Co.*, 466 Mass. 218, 225, 993 N.E.2d 708, 713 (2013).

Third, Plaintiffs were represented in these settlement negotiations by two sophisticated law firms—Nixon Peabody LLP and Haug Partners—as well as their own in-house counsel. (Am. Compl. Ex. I.) ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

Plaintiffs do not have a claim for reformation against Defendants if their own counsel failed to explain the consequences of the general release they were executing.

"[T]o the extent that there was a mistake made here, it was a unilateral mistake by [Plaintiffs] based upon [their] own negligence" in negotiating and drafting the contract terms. *Finamore*, 2011 WL 13244945, at *9; *see also Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc.*, 759 F. Supp. 2d 110, 123 (D. Mass. 2010) (holding that "even if the defendant knew that the plaintiff was mistaken, the claim for reformation based on mistake still failed because" the mistake "was apparent on a cursory examination" of the contract.)  Under such circumstances, no claim for reformation is present.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted in its entirety, along with such other and further relief as the Court deems just and proper.

Dated: August 1, 2018
     Boston, MA

Respectfully submitted,

ESOTERIX GENETIC LABORATORIES, LLC and LABORATORY CORPORATION OF AMERICA HOLDINGS

27

By their attorneys,

CAMPBELL EDWARDS & CONROY, P.C.

*/s/ Christopher R. Howe*
James M. Campbell (BBO # 541882)
jmcampbell@campbell-trial-lawyers.com
Christopher R. Howe (BBO #652445)
chowe@campbell-trial-lawyers.com
One Constitution Center
Boston, MA  02129
Tel: (617) 241-3041
Fax: (617) 241-5115

KELLEY DRYE & WARREN LLP
Robert I. Steiner (admitted *pro hac vice*)
rsteiner@kelleydrye.com
Jaclyn M. Metzinger (admitted *pro hac vice*)
jmetzinger@kelleydrye.com
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

## CERTIFICATE OF SERVICE

I, Christopher R. Howe, counsel for defendants Esoterix Genetic Laboratories, LLC and Laboratory Corporation of America Holdings, hereby certify that on August 1, 2018, I electronically filed the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.  I also served a true copy of the above Memorandum by first class mail, postage pre-paid, on all parties of record.

*/s/ Christopher R. Howe*
Christopher R. Howe