# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ESOTERIX GENETIC LABORATORIES LLC,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>and LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>    Counterclaim-Defendant<br><br>           v.<br><br>QIAGEN INC. and QIAGEN MANCHESTER, LTD.,<br><br>    Defendants/Counterclaim-Plaintiffs. | CASE No. 14-CV-13228-ADB |

## QIAGEN MANCHESTER LTD. AND QIAGEN INC.'S ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT

Defendants and Counterclaim-Plaintiffs QIAGEN Manchester, Ltd. and QIAGEN Inc. (collectively, "QIAGEN") submit their Answer, Affirmative Defenses, and Counterclaims in response to the Amended Complaint of Plaintiff Esoterix Genetic Laboratories LLC ("EGL").

## ANSWER

## NATURE OF THE ACTION

1.     QIAGEN admits only that this action was styled as one for patent infringement, violation of the Massachusetts Unfair and Deceptive Trade Practices Act, breach of contract, and breach of the covenant of good faith and fair dealing.  QIAGEN denies all remaining allegations.

## THE PARTIES

2.     QIAGEN is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Amended Complaint, and therefore denies

such allegations, except it is admitted upon information and belief that EGL's alleged parent, Laboratory Corporation of America Holdings, has offices at 358 South Main Street, Burlington, North Carolina.

      3.     QIAGEN N.V. is no longer a party to this action, (Dkt. No. 25), so there is no obligation to answer this allegation.

      4.     QIAGEN GmbH is no longer a party to this action, (Dkt. No. 25), so there is no obligation to answer this allegation.

      5.     QIAGEN GmbH is no longer a party to this action, (Dkt. No. 25), so there is no obligation to answer this allegation.

      6.     QIAGEN North American Holdings, Inc. is no longer a party to this action, (Dkt. No. 25), so there is no obligation to answer this allegation.

      7.     QIAGEN North American Holdings, Inc. is no longer a party to this action, (Dkt. No. 25), so therefore there is no obligation to answer this allegation.

      8.     QIAGEN North American Holdings, Inc. is no longer a party to this action, (Dkt. No. 25), so therefore there is no obligation to answer this allegation.

      9.     Admitted.

      10.     Admitted.

      11.     Denied.

      12.     Admitted.

      13.     Denied.

      14.     Denied.

## JURISDICTION, VENUE AND GOVERNING LAW

15.     QIAGEN admits only that the quote is in paragraph 10(g) of the 2008

license agreement currently between EGL and QIAGEN Manchester (the "License Agreement").

To the extent there are other allegations, they are denied.

16.     Admitted.

17.     Plaintiff's conclusions regarding venue and jurisdiction are legal

conclusions to which no response is required. Defendants deny the remaining averments.

## THE FACTS

18.     QIAGEN admits that there is a document titled "License Agreement"

between non-party Genzyme Corporation and non-party DxS from 2008.  QIAGEN refers to that

document and denies all remaining allegations.

19.     QIAGEN admits that certain EGFR mutations are predictive of the

efficacy of certain chemotherapeutic treatments for lung cancer and other diseases.

20.     QIAGEN admits only that to the extent there are any rights or obligations

under the License Agreement, they were assumed by QIAGEN Manchester, and denies all

remaining allegations.

21.     QIAGEN is without knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 21 of the Amended Complaint, and therefore denies

such allegations.

22.     QIAGEN is without knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 22 of the Amended Complaint, and therefore denies

such allegations.

23. QIAGEN is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Amended Complaint, and therefore denies such allegations.

24. These allegations contain legal conclusions to which no response is required. To the extent the allegations purport to be factual, QIAGEN is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies such allegations.

25. QIAGEN admits only that the License Agreement purports to grant a non-exclusive sublicense to the Patent Rights, and denies all remaining allegations.

26. Denied.

27. QIAGEN admits only that the quoted language appears in the License Agreement, but QIAGEN refers to the document itself and denies any averment about it.

28. QIAGEN admits only that the quoted language appears in the License Agreement, but QIAGEN refers to the document itself and denies any averment about it.

29. QIAGEN denies the allegation and refers to Section 1.9 of the License Agreement.

30. Denied.

31. QIAGEN denies the allegation and edited quotation, and refers to Section 2.1 of the License Agreement.

32. Denied.

33. Denied.

34. QIAGEN admits only that QIAGEN paid royalties to EGL and its predecessors during the term of the License Agreement, and denies all remaining allegations.

35.     Denied.

36.     Denied.

37.     QIAGEN admits only that it obtained a regulatory approval for its EGFR
test kit in July 2013, and denies all remaining allegations.

38.     Denied.

39.     Denied.

40.     QIAGEN admits only that a very small percentage of its Test Kits were
sold to third parties located in Massachusetts, and denies all remaining allegations.

41.     QIAGEN admits only that QIAGEN has communicated with EGL and
LabCorp regarding the License Agreement, and denies all remaining allegations.

42.     Admitted.

43.     Denied.

44.     Denied.

## COUNT I

## PATENT INFRINGEMENT

45.     QIAGEN incorporates by reference its responses to paragraphs 1 through
44 as if fully set forth herein.

46.     In light of the Court's September 25, 2015 Memorandum and Order
dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

47.     In light of the Court's September 25, 2015 Memorandum and Order
dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

48.     In light of the Court's September 25, 2015 Memorandum and Order
dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

49. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

50. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

51. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

52. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

53. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

54. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

55. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

56. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

57. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

58. In light of the Court's September 25, 2015 Memorandum and Order dismissing EGL's claims for patent infringement, QIAGEN need not respond to this allegation.

## COUNT II

## <u>VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A</u>

59. QIAGEN incorporates by reference its responses to paragraphs 1 through 58 as if fully set forth herein.

60.     Admitted.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

## COUNT III

## BREACH OF CONTRACT

73.     QIAGEN incorporates by reference its responses to paragraphs 1 through

72 as if fully set forth herein.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

## COUNT IV

## **BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

79.     QIAGEN incorporates by reference its responses to paragraphs 1 through 78 as if fully set forth herein.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

QIAGEN denies that EGL is entitled to any of the relief requested, and/or any other relief.

## GENERAL DENIAL

Pursuant to Rule 8(b)(3) of the Federal Rules of Civil Procedure, QIAGEN denies each and every allegation in the Complaint that it has not expressly admitted, specifically answered, or responded to herein.

## AFFIRMATIVE DEFENSES

Without conceding the burden of proof, Defendants raise the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

EGL's Amended Complaint fails to state a claim on which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

EGL's claims are barred in whole or in part by estoppel or laches.

### THIRD AFFIRMATIVE DEFENSE

EGL's claims are barred in whole or in part by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

EGL's claims and claims for damages are barred in whole or in part by Section 10.1(c) of the License Agreement.

### FIFTH AFFIRMATIVE DEFENSE

EGL's claims are barred in whole or in part for patent misuse.

### SIXTH AFFIRMATIVE DEFENSE

EGL's claims are barred because they seek to enforce, or rely on, contract provisions that, without a valid patent, improperly restrain commerce or otherwise provide EGL with greater rights that it is entitled to under the federal patent laws.

### SEVENTH AFFIRMATIVE DEFENSE

EGL's claim under MGL chapter 93A is barred because the conduct alleged to

violate the statute did not occur "primarily and substantially" in the Commonwealth of Massachusetts.

## EIGHTH AFFIRMATIVE DEFENSE

EGL's claims are barred in whole or in part because there is no liability as alleged by EGL because QIAGEN's EGFR test kits do not, but for the License Agreement, infringe a valid claim of a licensed patent.

## QIAGEN MANCHESTER, LTD. AND QIAGEN INC.'S COUNTERCLAIMS

QIAGEN, for its counterclaims against EGL and Counterclaim-Defendant Laboratory Corporation of America Holdings ("LabCorp"), states and alleges as follows:

## NATURE OF THE ACTION

1. QIAGEN seeks a declaratory judgment of invalidity and non-infringement for U.S. Patent Nos. 7,964,349 ("the '349 patent"), 8,105,769 ("the '769 patent"), 8,465,916 ("the '916 patent"), and 9,035,036 ("the '036 patent").

2. In addition, QIAGEN is due restitution for the royalties it paid under protest since QIAGEN first notified EGL that the '468 patent and the other licensed U.S. patents are not valid under U.S. patent law.

3. Finally, QIAGEN seeks relief from LabCorp and EGL for their improper communications with QIAGEN's customers, which intentionally and improperly interfered with QIAGEN's existing and prospective relations with its customers.

## PARTIES

4. QIAGEN Manchester Ltd. is an English company having its principal place of business at Skelton House, Lloyd Street North, Manchester, United Kingdom.

5.      QIAGEN Inc. is organized under the laws of California with its principal place of business in Germantown, Maryland.

6.      Upon information and belief, EGL is organized under the laws of Delaware, with its principal place of business at 3400 Computer Drive, Westborough, MA 01581.

7.      In its complaint against QIAGEN, EGL alleges, and therefore QIAGEN alleges herein upon information and belief, that EGL is a wholly-owned subsidiary of LabCorp, a corporation organized under the laws of the State of Delaware with its principal place of business at 358 South Main Street, Burlington, North Carolina. (EGL and LabCorp are collectively referred to as the "Counterclaim Defendants.")

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over QIAGEN's counterclaims pursuant to 28 U.S.C. §§ 1331, 1332(a), 1338(a), and 1367, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  The amount in controversy for QIAGEN's counterclaims exceeds $75,000, exclusive of interest and costs.

9.      Personal jurisdiction exists over the Counterclaim Defendants, and venue is proper and convenient.

## GENERAL ALLEGATIONS

10.      Upon information and belief, the General Hospital Corporation ("GHC") and the Dana-Farber Cancer Institute, Inc. ("DFCI") are co-owners by assignment of the '468, '349, '769, '916, and '036 patents.

11.      Upon information and belief, GHC and DFCI granted an exclusive license to EGL's predecessor Genzyme that includes rights to the '468, '349, '769, '916, and '036 patents.

Case 1:14-cv-13220-ADB   Document 72   Filed 10/25/18   Page 13 of 26

12.     EGL has alleged and represented to the Court that it has "all right, title and interest" in the '468 patent and its "related" patents, including upon information and belief, the '349, '769, '916, and '036 patents that are "related" because they claim priority to the application that issued as the '468 patent.  Thus, upon information and belief and based on EGL's allegations and representations, EGL has "all right, title and interest" to the '349, '769, '916, and '036 patents.

13.     In 2008, EGL's predecessor entered into the License Agreement with QIAGEN's predecessor.  The License Agreement purports to grant rights to QIAGEN in the '468, '349, '769, '916, and '036 patents (collectively "the licensed patents") to manufacture and sell Epidermal Growth Factor Receptor mutation testing kits ("EGFR test kits") that were covered by the licensed patents.

14.     Under the License Agreement, QIAGEN is only required to pay royalties for sales of its EGFR test kits that but for the License Agreement "cannot be manufactured, used, offered for sale or sold, in whole or in part, without infringing" a valid patent claim under one of the licensed patents.

15.     QIAGEN has provided notice to EGL that it believes that the '468, '349, '769, '916, and '036 patents are invalid.

16.     Although QIAGEN believes the licensed patents are invalid, QIAGEN has continued to make royalty payments under the License Agreement under protest with the right to recoup such royalty payments if and when a court agrees that the licensed patents are invalid.

17.     In this action, EGL has alleged that QIAGEN has infringed the '468 patent.

18.     In addition to the '468 patent, EGL and LabCorp threatened QIAGEN's customers with patent infringement of at least the '349 and '769 patents.

19.     There is an actual and justiciable case or controversy that exists between QIAGEN and EGL regarding whether making, using, and selling QIAGEN's EGFR test kits infringe a valid claim of the '349, '769, '916, and '036 patents, and thus whether QIAGEN is obligated to pay royalties on the sales of its EGFR test kits in the U.S.

### The Court Has Effectively Invalidated the '349, '769, and '916 Patents

20.     In a September 25, 2015 Memorandum and Order, this Court held that the '468 patent is invalid as claiming an unpatentable natural law.

21.     The issues of invalidity are legally identical as between the '468 patent and the '349, '769, and '916 patents.

22.     The issues determinative of the invalidity of the '349, '769, and '916 patents were actually litigated in this action by the same parties and were decided by this Court's September 25, 2015 Memorandum and Order.

23.     All such issues were necessary to the Court's decision in this matter.

24.     Because the issues of invalidity are identical, the Court's September 25, 2015 Memorandum and Order, effectively invalidated not only the '468 patent, but also the '349, '769, and '916 patents.

### EGL and LabCorp Interfered with QIAGEN's Customer Relations

25.     In the License Agreement, EGL authorized QIAGEN to sell to customers EGFR test kits that were covered by the licensed patents.  EGL gave QIAGEN a license to sell them for both clinical diagnostic purposes and research purposes.

26.     The License Agreement covers only QIAGEN's EGFR test kits that, but for the License Agreement, would infringe any valid claim of any of the licensed patents.

Neither EGL nor its predecessors provided any know-how, teachings or materials to QIAGEN or its predecessors to help it build its kits. Rather, EGL simply provided a license to the licensed patents—patents that QIAGEN herein alleges are patent ineligible under Section 101 of the U.S. Patent Act.

27.     During the course of the parties' performance under the License Agreement through 2013, LabCorp requested, and QIAGEN sold its EGFR test kits to LabCorp.

28.     Upon information and belief, there came a time when EGL and LabCorp viewed QIAGEN as a business threat.

29.     Thus, Counterclaim Defendants EGL and LabCorp used improper means to injure QIAGEN by, among other things, improperly threatening QIAGEN's customers with patent infringement of the licensed patents, to injure QIAGEN's existing and prospective contractual relations with its customers.

30.     Specifically, upon information and belief, Counterclaim Defendants sent letters ("Interference Letters") to third parties that it knew had purchased EGFR test kits from QIAGEN.

31.     The Interference Letters listed the licensed patents, and stated that "LabCorp has license rights to these patents as well as other pending U.S. patent applications. Currently, LabCorp provides laboratory testing services under these patent rights, including testing for clinical diagnostic use." The Interference Letters told the recipient to review the enclosed patents and to discuss with LabCorp. The Interference Letters intentionally and improperly failed to mention that LabCorp knew that the recipient of the Interference Letter had purchased its EGFR test kits from QIAGEN, or that LabCorp's subsidiary EGL has licensed such patents to QIAGEN.

32.     The Counterclaim Defendants continued to send such letters even after the date of the FDA's first approval of QIAGEN's kits in July 2013, after which even EGL concedes in its Amended Complaint that QIAGEN had full rights to sell the kits to customers for all licensed uses. (QIAGEN contends that all of its sales before and after July 2013 were permitted under the License Agreement.)

33.     The Interference Letters were improper in motive or means in that they did not mention QIAGEN's license, and in that they were designed to deter third parties from doing business with QIAGEN, in order to injure QIAGEN.

34.     On information and belief, the Interference Letters interfered with QIAGEN's existing and prospective contracts for sales of EGFR test kits by inducing customers to breach existing contracts with QIAGEN to purchase EGFR test kits or by causing such customers not to make new purchases with QIAGEN in the future.

## COUNT I
## DECLARATORY JUDGMENT ON CONTRACTUAL RIGHTS AND OBLIGATIONS
### (QIAGEN Manchester against EGL)

35.     QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

36.     There is an actual and justiciable case or controversy that exists between QIAGEN Manchester and EGL concerning the rights and obligations of QIAGEN under the terms of the License Agreement.

37.     QIAGEN Manchester has provided notice to EGL that it believes that it does not owe any royalties for any U.S. sales because the U.S. licensed patents (the '468, '349, '769, '916, and '036 patents) are invalid.

38.     In a September 25, 2015 Memorandum and Order, this Court held that the '468 patent is invalid as claiming an unpatentable natural law.

39.     As per Counts II-V of QIAGEN's counterclaims, QIAGEN Manchester is seeking a declaratory judgment that the remaining U.S. licensed patents (the '349, '769, '916, and '036 patents) are invalid.

40.     As per Count VI of QIAGEN's counterclaims, QIAGEN Manchester is also seeking a declaratory judgment that QIAGEN's EGFR test kits do not infringe the remaining U.S. licensed patents (the '349, '769, '916, and '036 patents).

41.     Thus, QIAGEN Manchester hereby seeks a declaratory judgment that it owes no royalties on U.S. sales under the License Agreement.

## COUNT II
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '349 PATENT
### (QIAGEN Manchester against EGL)

42.     QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

43.     An actual, substantial and continuing controversy exists between QIAGEN Manchester and EGL as to whether the '349 patent is invalid.

44.     The '349 patent is invalid for failing to comply with one or more of the provisions of the United States Patent Action, 35 U.S.C. § 1 et seq., including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

45.     The issues determinative of whether the '349 patent is invalid under 35 U.S.C. § 101 as claiming an unpatentable natural law were actually litigated in this action and were effectively decided by this Court's September 25, 2015 Memorandum and Order.

Case 1:14-cv-13228-ADB   Document 72   Filed 10/25/18   Page 18 of 26

46.     Declaratory relief is both appropriate and necessary to establish that the '349 patent is invalid, and thus QIAGEN Manchester is entitled to restitution of royalties paid and does not owe future royalties under the License Agreement for U.S. sales, and to prevent the assertion of the '349 patent against QIAGEN or its customers in the future.

## COUNT III
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '769 PATENT
### (QIAGEN Manchester against EGL)

47.     QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

48.     An actual, substantial and continuing controversy exists between QIAGEN Manchester and EGL as to whether the '769 patent is invalid.

49.     The '769 patent is invalid for failing to comply with one or more of the provisions of the United States Patent Action, 35 U.S.C. § 1 et seq., including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

50.     The issues determinative of whether the '769 patent is invalid under 35 U.S.C. § 101 as claiming an unpatentable natural law were actually litigated in this action and were effectively decided by this Court's September 25, 2015 Memorandum and Order.

51.     Declaratory relief is both appropriate and necessary to establish that the '769 patent is invalid, and thus QIAGEN Manchester is entitled to restitution of royalties paid and does not owe future royalties under the License Agreement for U.S. sales, and to prevent the assertion of the '769 patent against QIAGEN or its customers in the future.

## COUNT IV
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '916 PATENT
### (QIAGEN Manchester against EGL)

52.    QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

53.    An actual, substantial and continuing controversy exists between QIAGEN Manchester and EGL as to whether the '916 patent is invalid.

54.    The '916 patent is invalid for failing to comply with one or more of the provisions of the United States Patent Action, 35 U.S.C. § 1 et seq., including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

55.    The issues determinative of whether the '916 patent is invalid under 35 U.S.C. § 101 as claiming an unpatentable natural law were actually litigated in this action and were decided by this Court's September 25, 2015 Memorandum and Order.

56.    Declaratory relief is both appropriate and necessary to establish that the '916 patent is invalid, and thus QIAGEN Manchester is entitled to restitution of royalties paid and does not owe future royalties under the License Agreement for U.S. sales, and to prevent the assertion of the '916 patent against QIAGEN or its customers in the future.

## COUNT V
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '036 PATENT
### (QIAGEN Manchester against EGL)

57.    QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

58.    An actual, substantial and continuing controversy exists between QIAGEN Manchester and EGL as to whether the '036 patent is invalid.

59.     The '036 patent is invalid for failing to comply with one or more of the provisions of the United States Patent Action, 35 U.S.C. § 1 et seq., including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

60.     Declaratory relief is both appropriate and necessary to establish that the '036 patent is invalid and thus QIAGEN Manchester is entitled to restitution of royalties paid and does not owe future royalties under the License Agreement for U.S. sales, and to prevent the assertion of the '036 patent against QIAGEN or its customers in the future.

**COUNT VI**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE LICENSED PATENTS**
**(QIAGEN against EGL)**

61.     QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

62.     An actual, substantial and continuing controversy exists between QIAGEN and EGL concerning whether QIAGEN's EGFR test kits infringe any valid claim of the licensed patents.

63.     Even absent QIAGEN's rights under the License Agreement, QIAGEN's EGFR test kits do not infringe, in whole or in part, either directly, indirectly, contributorily, or by inducement, the claims of the remaining U.S. licensed patents (the '349, '769, '916, and '036 patents) either literally or under the doctrine of equivalents.

64.     Declaratory relief is both appropriate and necessary to establish that QIAGEN's EGFR kits do not infringe the licensed patents and thus QIAGEN is entitled to restitution of royalties paid and does not owe future royalties under the License Agreement for U.S. sales, and to prevent the assertion of the licensed patent against QIAGEN or its customers in the future.

## COUNT VII
## RESTITUTION OF ROYALTIES PAID
### (QIAGEN Manchester against EGL)

65.     QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

66.     No later than October 31, 2014, via the filing of its motion to dismiss EGL's claim of infringement of the '468 patent in this action, QIAGEN Manchester gave notice to EGL that it believed the '468 patent was invalid under section 101 of the U.S. Patent Act. This notice also provided constructive notice of QIAGEN Manchester's position as to the invalidity under U.S. law of the '349, '769, and '916 patents as well, as the claims of those patents are functionally identical to those of the '468 patent.

67.     In subsequent communications, QIAGEN Manchester reiterated that it believes that the '468, '349, '769, '916, as well as the '036 patent, are invalid and unenforceable under U.S. law, and that it was making payment of its U.S. royalties under protest and objection.

68.     In a September 25, 2015 Memorandum and Order, this Court held that the '468 patent is invalid as claiming an unpatentable natural law.

69.     The issues of invalidity are identical as between the '468 patent and the '349, '769, and '916 patents.

70.     The issues determinative of the invalidity of the '349, '769, and '916 patents were actually litigated in this action and were decided by this Court's September 25, 2015 Memorandum and Order.

71.     All such issues were necessary to the Court's decision in this matter.

72.     Because the issues of invalidity are identical, the Court's September 25, 2015 Memorandum and Order, effectively invalidated not only the '468 patent, but also the '349, '769, and '916 patents.

73.     QIAGEN Manchester has also sought a declaratory judgment that the'036 patent is invalid and that the remaining U.S. licensed patents (the '349, '769, '916, and'036 patents) are not infringed by QIAGEN's EGFR test kits.

74.     QIAGEN Manchester is entitled to recover its royalties paid for U.S. sales of EGFR test kits from at least October 31, 2014.

**COUNT VIII**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**
**(QIAGEN against LabCorp and EGL)**

75.     QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

76.     During the term of the License Agreement, customers had contracts and ongoing business relationships with QIAGEN to purchase EGFR test kits.

77.     Upon information and belief the Counterclaim Defendants knew of the existence of such business relationships between QIAGEN and third parties to purchase EGFR test kits.  The Counterclaim Defendants further knew that QIAGEN reasonably expected to continue to sell EGFR test kits to these same customers in the future.

78.     The Counterclaim Defendants sent, or caused to be sent, the Interference Letters to third parties to disrupt QIAGEN's contractual relationships with its customers, and intentionally induce those customers not to perform their obligations under the contracts.

79.     The Counterclaim Defendants' methods in contacting third parties were improper in means or motive in light of its failure to note QIAGEN's rights under the License

Agreement, and the Counterclaim Defendants' implication that customers were violating the Patent Rights by using EGFR test kits from QIAGEN.

80.     The Counterclaim Defendants' failure to explain in the Interference Letters that QIAGEN was licensed to sell the EGFR test kits at the time the Interference Letters were sent constitutes improper means or motive as well as malicious behavior on the part of the Counterclaim Defendants.

81.     The Counterclaim Defendants wanton and malicious interference was improper in means or motive as it was done to harm its competition and its licensee, QIAGEN, and not for any legitimate business purpose.

82.     QIAGEN has suffered damages as result of EGL's action.

**COUNT IX**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS**
**(QIAGEN against LabCorp and EGL)**

83.     QIAGEN repeats and incorporates the averments of the foregoing paragraphs as if fully set forth herein.

84.     During the term of the License Agreement, customers had purchased EGFR test kits from QIAGEN.

85.     The Counterclaim Defendants knew of the existence of QIAGEN's sales to third parties of EGFR test kits.  The Counterclaim Defendants further knew that QIAGEN reasonably expected to continue to sell EGFR test kits to these same customers in the future.

86.     The Interference Letters were sent to third parties to disrupt QIAGEN's contractual relationships with its customers, and induce those customers to not engage in future business with QIAGEN concerning the EGFR test kits.

87.     The Counterclaim Defendants' methods in contacting third parties were improper in means or motive in light of its failure to note QIAGEN's rights under the License

22

Agreement, and the Counterclaim Defendants' implication that customers would violate the Patent Rights by using EGFR test kits from QIAGEN.

88.     The Counterclaim Defendants' failure to explain in the Interference Letters that QIAGEN was licensed to sell the EGFR test kits at the time the Interference Letters were sent constitutes improper means or motive as well as malicious behavior on the part of the Counterclaim Defendants.

89.     The Counterclaim Defendants wanton and malicious interference was improper in means or motive as it was done to harm its competition and its licensee, QIAGEN, not for any legitimate business purpose.

90.     QIAGEN has suffered damages as result of EGL's action.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant QIAGEN prays for the following relief:

(a)     A judgment declaring the '349, '769, '916, and '036 patents invalid.

(b)     A judgment declaring that QIAGEN's EGFR test kits do not infringe the remaining U.S. licensed patents.

(c)     A judgment that EGL must make restitution to QIAGEN of all royalties paid under the License Agreement since at least October 31, 2014.

(d)     A judgment awarding other damages to QIAGEN.

(e)     A judgment awarding QIAGEN's costs and attorney's fees because this case is "exceptional" under 35 U.S.C. § 285 or to the extent allowed under applicable law.

(f)     A judgment awarding punitive damages to the extent allowed under applicable law.

(g)     An award to QIAGEN of such further relief as the Court deems

just and proper.

## JURY TRIAL DEMAND

QIAGEN hereby demands a jury trial on all issues so triable both in EGL's

Amended Complaint and in QIAGEN's counterclaims.


Dated:  October 23, 2015                     QIAGEN Inc. and QIAGEN Manchester, Ltd.,

                                             By their attorneys,

                                             SALLY & FITCH LLP

                                             */s/* Peter E. Ball
                                             Peter E. Ball (BBO #546031)
                                             Ryan M. Cunningham (BBO #661440)
                                             SALLY & FITCH LLP
                                             Tel. (617) 542-5542
                                             Fax. (617) 542-1542
                                             peb@sally-fitch.com
                                             rmc@sally-fitch.com

                                             Robert R. Baron (Admitted pro hac vice)
                                             Marc S. Segal (Admitted pro hac vice)
                                             BALLARD SPAHR LLP
                                             Tel. (215) 665-8500
                                             Fax (215) 864-8999
                                             baron@ballardspahr.com
                                             segalm@ballardspahr.com

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be filed through the Court's ECF system and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on October 23, 2015.


*/s/* Peter E. Ball
Peter E. Ball