UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE GENERAL HOSPITAL CORPORATION and DANA-FARBER CANCER INSTITUTE, INC., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:18-cv-11360-IT |
| v. | ) ) ) | |
| ESOTERIX GENETIC LABORATORIES, LLC and LABORATORY CORPORATION OF AMERICA HOLDINGS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

In accordance with Federal Rule of Civil Procedure 56 and Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, the plaintiffs The General Hospital Corporation ("MGH") and Dana-Farber Cancer Institute, Inc. ("DFCI") (together, the "plaintiffs") submit the following statement of undisputed facts in support of their Motion for Partial Summary Judgment as to the breach of contract claim in Count I in the Second Amended Complaint.

*The License Agreement*

1.     The plaintiffs own a number of patents directed to detecting the presence of the epidermal growth factor receptor ("EGFR") mutation which, when present, is predictive of the efficacy of certain chemotherapeutic treatments for lung cancer. (*See* Affidavit of Carolyn A. Marcotte in

Support of the Plaintiffs' Motion for Partial Summary Judgment submitted herewith ("Marcotte Aff."), Ex. A, License Agreement.)

2. In 2005, as reflected in the License Agreement, the plaintiffs licensed these patents and this technology to Genzyme Corporation. (Marcotte Aff., Ex. A at p. 1.) Years later, in 2010, defendant Laboratory Corporation of America Holdings (a/k/a Laboratory Corporation of America ("LabCorp") purchased most of Genzyme's genetic testing business, including its rights under the License Agreement. (Marcotte Aff., Ex. A.) LabCorp created defendant Esoterix Genetic Laboratories, LLC ("Esoterix") to manage those assets for the benefit of LabCorp and thus had the License Agreement assigned to Esoterix who, at least nominally, would be the licensee going forward. (*Id.*) (LabCorp and Esoterix are referred to herein together as the "defendants.")

*Royalty Payments Under the License Agreement*

3. Pursuant to Section 4.5(e) of the License Agreement:

> All royalty payments due to [the plaintiffs] under this Section 4.5 shall be due and payable by [the defendants] within forty-five (45) days after the end of each REPORTING PERIOD; provided, that the first royalty payment under this Section 4.5 shall not be due until forty-five (45) days after the end of the first full REPORTING PERIOD following the first COMMERCIAL SALE of a PROCESS. Each royalty payment made under this Section 4.5 shall be accompanied by a report as described in Section 5.3.

(Marcotte Aff., Ex. A, License Agreement § 4.5(e).)

4. Pursuant to Section 4.6(d) of the License Agreement:

> Any payments required to be paid by COMPANY under this Section 4.6 shall be due and payable within forty-five (45) days after the end of the REPORTING PERIOD during which the related amounts were received by COMPANY. Each payment made under this Section 4.6 shall be accompanied by a report as described in Section 5.3.

(Marcotte Aff., Ex. A, License Agreement § 4.6(d).)

2

5. The License Agreement defines REPORTING PERIOD as "each six month period ending June 30 and December 31 of each calendar year" during the term of the agreement. (*Id.*, License Agreement at § 1.28.)

*The Sublicense and the Underlying Litigation*

6. Under the terms of the License Agreement, the licensee is entitled to sublicense the right to use the plaintiffs' patents and technology to third-parties. (*See* Marcotte Aff., Ex. A, License Agreement.)

7. One such sub-license was granted in two different agreements to a company called DxS, Ltd., whose rights under the sub-license were later assumed by another company called QIAGEN Manchester Ltd. ("QIAGEN"). (*See* Marcotte Aff., Ex. B, June 27, 2017 Settlement Agreement and Releases between the plaintiffs and the defendants without exhibits thereto (the "Settlement Agreement"), at p. 1.)

8. In 2014, Esoterix sued QIAGEN for infringement of certain of the plaintiffs' patents, breach of the sublicense, and related claims in the United States District Court for the District of Massachusetts, Case No. 14-cv-13228 (the "QIAGEN Litigation").) (*Id.*)

9. The defendants ultimately settled all claims in the QIAGEN Litigation. (*Id.* at pp. 1-2.)

10. QIAGEN agreed to pay the defendants an amount of money ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1] (*See* Marcotte Aff., Ex. B.)

11. Under the QIAGEN Settlement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Marcotte Aff., Ex. B at p. 2.)

---

[1] Information has been redacted from this Statement pursuant to the Court's November 16, 2018 Order [Dkt. No. 91] granting the defendants' motion to impound [Dkt. No. 82]. The plaintiffs will submit an unredacted version under seal to the Court.

3

12. As part of the QIAGEN Settlement, the defendants agreed to file, and QIAGEN agreed to not oppose, a joint motion requesting that the District Court of Massachusetts vacate the Invalidity Orders ("Motion to Vacate"). (*Id.*)

13. Pursuant to Paragraph 7.4 of the License Agreement, the plaintiffs provided written consent to the QIAGEN Settlement. (*Id.*)

14. In connection with the QIAGEN Settlement, the plaintiffs and the defendants agreed that, if the Court granted the Motion to Vacate, the plaintiffs would receive $ ▬▬▬▬ of the amount to be paid by QIAGEN. (*Id.* at pp. 2-3.) The defendants were to receive the remainder of the settlement proceeds to be paid by QIAGEN (an amount substantially greater than the portion paid to the plaintiffs). (*Id.*)

*The Settlement Agreement*

15. Effective June 27, 2017, MGH, DFCI, Esoterix and LabCorp entered into the Settlement Agreement.

16. The Settlement Agreement provides:

> As of the Court's granting of the Motion to Vacate, each of [the plaintiffs] … do hereby release, waive, forever discharge, and hold harmless [the defendants] … of, from, and with respect to, any and all liabilities, losses, damages, charges, complaints, claims, counterclaims, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, demands, costs, debts and expenses (including attorneys' fees and court costs) of any nature whatsoever, known or unknown, suspected or unsuspected **that may have arisen before the Effective Date**, which the [plaintiffs] may have, own or hold, or claim to have, own or hold against the [defendants], relating to or arising from (i) the acts or omissions that were stated in, arose out of, or which may have arisen out of, the Litigation, (ii) the Patent Rights, (iii) the Master License Agreement, including but not limited to the provision of any notice(s) required under the Master License Agreement or the payment of any past royalties or other fees pursuant to the Master License Agreement; (iv) the 2008 Agreement; and/or (v) the manufacturing, marketing, sale and/or use of Licensed Products and ▬▬▬▬▬▬▬, as those terms are defined in the 2008 Agreement.

4

(Marcotte Aff., Ex. B at p. 2 (emphasis added).)

17. The release only applies to claims that "may have arisen before the Effective Date" of the Settlement Agreement, which was June 27, 2017. (*Id.*)

18. The first royalty payment due to the plaintiffs after the Effective Date of the Settlement Agreement was due and owing on August 15, 2017 for the six month reporting period ending on June 30, 2017, pursuant to Sections 4.5(e) and 4.6(d) of the License Agreement. (Marcotte Aff. Ex. A, License Agreement § 4.5(e).)

19. The defendants did not pay the more than ██████ royalty due on August 15, 2017, pursuant to Sections 4.5(e) and 4.6(d). (Marcotte Aff., Ex. C, LabCorp report for Reporting Period January 1 – June 30, 2017 received by the plaintiffs in September 2017, and Ex. D.)

20. The plaintiffs were ready, willing, and able to perform under the License Agreement. (*See* Marcotte Aff., Ex. E.)

                                        Respectfully submitted,

                                        THE GENERAL HOSPITAL
CORPORATION AND DANA-FARBER
CANCER INSTITUTE, INC.
By their attorneys,

*/s/ Carolyn A. Marcotte*
Douglas J. Nash (BBO# 633050)
Carolyn A. Marcotte (BBO# 663616)
Barclay Damon LLP
One Financial Center, Suite 1701
Boston, MA 02111
(617) 274-2900
dnash@barclaydamon.com
cmarcotte@barclaydamon.com

Dated: November 16, 2018

5

## **CERTIFICATE OF SERVICE**

      I, Carolyn A. Marcotte, counsel for the plaintiffs in the above-captioned matter, certify that on November 16, 2018, the plaintiffs' Statement of Undisputed Facts filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to the non-registered participants.

                                              */s/ Carolyn A. Marcotte*
                                              Carolyn A. Marcotte