# EXHIBIT B

## SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered into effective June 27, 2017 ( "Effective Date") by and between Esoterix Genetic Laboratories, LLC ("EGL"), Laboratory Corporation of America Holdings ("LabCorp"), The General Hospital Corporation ("Hospital"), and Dana-Farber Cancer Center Institute ("DFCI") (collectively, the "Parties");

WHEREAS, Hospital and DFCI are the owners of certain patent rights, including U.S. Patent Nos. 7,294,468; 7,964,349; 8,105,769; 8,465,916; and 9,035,036, and have granted to EGL, as successor-in-interest to Genzyme Corporation, an exclusive license under the patent rights ("Master License Agreement");

WHEREAS, EGL has granted a sublicense to QIAGEN Manchester, Ltd., as successor-in-interest to DxS Ltd., under the Master License Agreement, which resulted in a license agreement dated October 25, 2007 ("2007 Agreement") and a license agreement dated November 26, 2008 ("2008 Agreement");

WHEREAS, EGL filed a lawsuit against QIAGEN N.V., QIAGEN GmbH, QIAGEN North American Holdings, Inc., QIAGEN, Inc. and QIAGEN Manchester, Ltd. in the District of Massachusetts captioned Esoterix Genetic Laboratories LLC v. QIAGEN Inc. et al., Case No. 1:14-cv-13228-ADB (the "Litigation") alleging that QIAGEN made sales of EGFR test kits outside the scope of the Sublicense and asserting claims for (i) patent infringement of U.S. Patent No. 7,294,468, (ii) violation of Massachusetts General Laws Chapter 93A, (iii) breach of the 2008 Agreement, and (iv) breach of the duty of good faith and fair dealing;

WHEREAS, in the Litigation, QIAGEN filed counterclaims against EGL for (i) a declaratory judgment that QIAGEN owes no royalties under the 2008 Agreement, (ii) a declaratory judgment that U.S. Patent Nos. 7,964,349; 8,105,769; 8,465,916; and 9,035,036 are invalid and not infringed, and (iii) restitution of royalties paid to EGL, and counterclaims against EGL and LabCorp for (i) tortious interference with contractual relationships, and (ii) tortious interference with prospective business relationships;

WHEREAS, in the Litigation, the Court issued orders (i) on September 25, 2015, dismissing EGL's patent infringement claim holding that U.S. Patent No. 7,294,468 is drawn to ineligible subject matter under 35 U.S.C. § 101 (Dkt. #69), and (ii) on August 31, 2016, granting QIAGEN's motion for judgment on the pleadings for its invalidity declaratory judgment counterclaims holding that U.S. Patent Nos. 7,964,349; 8,105,769; 8,465,916; and 9,035,036 are drawn to ineligible subject matter under 35 U.S.C. § 101 (Dkt. #119) (collectively "Invalidity Orders");

WHEREAS Hospital and DFCI believe the Court's orders of September 25, 2015 and August 31, 2016 are legally incorrect;

WHEREAS, EGL, LabCorp and QIAGEN have reached a settlement of the QIAGEN Litigation (the "QIAGEN Settlement");

WHEREAS, as part of the QIAGEN Settlement, EGL and LabCorp agreed to file, and QIAGEN agreed not to oppose, a joint motion requesting that the District Court of Massachusetts vacate the Invalidity Orders ("Motion to Vacate");

## IMPOUNDED PER COURT ORDER (DKT. NO. 91)

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties agree as follows:

**Section 1.**  **Definitions**

**Section 2.**  **Consent to the QIAGEN Settlement**

2.1     Pursuant to Paragraph 7.4 of the Master License Agreement, Hospital and DFCI hereby provide written consent to the QIAGEN Settlement, a copy of which is attached hereto as Exhibit B.

**Section 3.**  **Release**

3.1     As of the Court's granting of the Motion to Vacate, each of Hospital and DFCI, on behalf of itself and its present and former Affiliates, subsidiaries, parent corporations, agents, directors, officers, employees, attorneys, and the predecessors, successors and assignees of each (collectively the "Hospital Releasors") do hereby release, waive, forever discharge, and hold harmless EGL, LabCorp, and each of their present and former Affiliates, subsidiaries, parent corporations, agents, directors, officers, employees, consultants, attorneys, distributors, manufacturers, customers, and the predecessors, successors and assignees of each (collectively "the EGL Releasees"), of, from, and with respect to, any and all liabilities, losses, damages, charges, complaints, claims, counterclaims, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, demands, costs, debts and expenses (including attorneys' fees and court costs) of any nature whatsoever, known or unknown, suspected or unsuspected that may have arisen before the Effective Date, which the Hospital Releasors may have, own or hold, or claim to have, own or hold against the EGL Releasees, relating to or arising from (i) the acts or omissions that were stated in, arose out of, or which may have arisen out of, the Litigation, (ii) the Patent Rights, (iii) the Master License Agreement, including but not limited to the provision of any notice(s) required under the Master License Agreement or the payment of any past royalties or other fees pursuant to the Master License Agreement; (iv) the 2008 Agreement; and/or (v) the manufacturing, marketing, sale and/or use of Licensed Products and IMPOUNDED PER COURT ORDER , as those terms are defined in the 2008 Agreement.

2

3.2

# IMPOUNDED PER COURT ORDER (DKT. NO. 91)

**Section 4.**     **Motion to Vacate**

4.1     EGL and LabCorp agree to notify Hospital and DFCI within one (1) business day of the Court's ruling on the Motion to Vacate.

4.2     If the Court denies the Motion to Vacate, then this Settlement Agreement and Releases contained herein are null and void five (5) business days after such denial.

**Section 5.**     **Settlement Payment**

5.2     If the Court grants the Motion to Vacate or Hospital and DFCI provides written notice pursuant to Section 4.2 that they will accept the Agreement,, within thirty (30) business days of EGL's receipt of payment under the QIAGEN Settlement, EGL shall deliver ▮ **IMPOUNDED PER COURT ORDER (DKT. NO. 91)** (the "Settlement Payment") to Hospital/DFCI's counsel, Ronald Eisenstein of Nixon Peabody LLP, pursuant to the below wiring instructions:

3



**Section 7.**      **Miscellaneous**

7.1      Governing Law/Jurisdiction. The Parties hereto consent to the jurisdiction of the United States District Court for the District of Massachusetts to resolve any dispute regarding the rights, duties, obligations, and any other matters arising from this Settlement Agreement, which shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts without reference to conflicts of laws principles.



7.4      Confidentiality. The Parties agree to keep the terms of this Settlement Agreement, the terms of the QIAGEN Settlement, and any documents or other information delivered pursuant to the terms of this Settlement Agreement (collectively, "Information") confidential, except as otherwise may be required by law (including compliance with the requirements of United States and foreign governmental authorities) or the rules of any United States or foreign stock exchanges. If a Party is required by judicial or administrative process to disclose any Information, it shall, to the extent possible, promptly notify the other Party and allow the other Party a reasonable time to oppose such process or seek a protective order from a court of competent jurisdiction.

7.5 <u>Binding Effect.</u>  This Settlement Agreement shall insure to the benefit of and is binding upon EGL, LabCorp, Hospital and DFCI and any of their respective directors, officers, employees, agents, representatives, Affiliates, successors, and assigns.

7.6 <u>Entire Agreement.</u>  This Settlement Agreement, including the Exhibits attached hereto, constitutes the entire agreement between the Parties regarding the subject matter of this Settlement Agreement, and supersedes in its entirety any and all written or oral agreements previously existing between the Parties with respect to the subject matter of this Settlement Agreement.

7.7 <u>Amendments.</u>  No modifications or amendments of any of the terms of this Settlement Agreement shall be valid or binding unless made in writing and signed by the Parties.

7.8 <u>Waiver.</u>  Failure to enforce any provision of this Settlement Agreement shall not constitute any waiver of it or any Exhibit hereto, and no waiver shall be effective unless made in writing.

7.9 <u>Severability.</u>  If any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other provision of this Settlement Agreement.  Upon such determination that any such provision, or any portion thereof, is invalid or unenforceable, the Parties shall negotiate in good faith to modify this Settlement Agreement so as to carry out the original intent of the parties as closely as possible in an acceptable manner to the end that the transactions contemplated herein are consummated to the fullest extent possible.

7.10 <u>Consultation with Counsel.</u>  The Parties each acknowledge that they have had the opportunity to consult with legal counsel of their choice prior to execution of this Settlement Agreement, have in fact done so, and have been specifically advised by counsel of the consequences of this Settlement Agreement and their respective rights and obligations hereunder.

7.11 <u>Construction.</u>  The Parties each acknowledge that the terms of this Settlement Agreement are the result of negotiations between them, and that this Settlement Agreement shall not be construed in favor of, or against, any Party by reason of the extent to which a Party or its counsel participated in its drafting, or by reason of the extent to which this Settlement Agreement may be inconsistent with prior drafts thereof.

7.12 <u>Headings and Captions.</u>  Headings and captions used in this Agreement are for ease of reference only, and do not constitute part of this Settlement Agreement, nor shall they be used as an aid in interpreting its terms.

7.13 <u>Authority.</u>  Each person signing this Settlement Agreement in a representative capacity expressly represents that the signatory has the subject Party's authority to so sign and that the subject Party will be bound by the signatory's execution of this Settlement Agreement. Each Party expressly represents that such Party does not require any third party's consent to

enter into this Settlement Agreement, including, without limitation, the consent of any insurer, assignee, licensee, licensor, secured lender, or regulatory agency.

      7.14   <u>Counterparts.</u>  This Settlement Agreement and Exhibit A hereto may be signed in any number of counterparts and the signatures may be delivered by e-mail or facsimile, each of which shall be an original, with the same effect as if the signatures were on the one document.

      7.15   <u>Notices.</u>  Any notices to be given hereunder by any Party shall be effected by overnight mail by a nationally recognized courier service and addressed to the Parties as follows:

> To:      <u>EGL and LabCorp</u>
>
> Director of Litigation
> Laboratory Corporation of America Holdings
> 531 South Spring Street
> Burlington, NC 27215
>
> <u>With required copies to:</u>
>
> Robert I. Steiner, Esq.
> Kelley Drye & Warren LLP
> 101 Park Avenue
> New York, New York 10178

> To:      <u>Hospital</u>
>
> Chief Innovation Officer
> Massachusetts General Hospital
> 215 First St, Suite 500
> Cambridge, MA 02142
> Fax: 857-307-2412
>
> <u>With required copies to:</u>
>
> Ronald I. Eisenstein
> Nixon Peabody LLP
> 100 Summer Street
> Boston, MA 02110

To:     <u>DFCI</u>

Richard S. Boskey
Senior Vice President and General Counsel
Office of General Counsel, DA-1618A
Dana-Farber Cancer Institute
450 Brookline Avenue
Boston, MA 02215
<u>With required copies to</u>:

Ronald I. Eisenstein
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

IN WITNESS WHEREOF, the Parties have hereunder set their hands as of the date first written above.

**ESOTERIX GENETIC LABORATORIES, LLC**

By: _____

Print: _F. Samuel Eberts III_   Date: _June 27, 2017_

Title: _President and Secretary_

**LABORATORY CORPORATION OF AMERICA HOLDINGS**

By: _____   Date: _June 27, 2017_

Print: _F. Samuel Eberts III_

Title: _President and Secretary_

**THE GENERAL HOSPITAL CORPORATION**

By: _____   Date: _____

Print: _____

**DANA-FARBER CANCER INSTITUTE, INC.**

By: _____   Date: _____

Print: _____

Title: _____

Appv'd As To Form
LAW DEPT.
By: ____

8

**IN WITNESS WHEREOF**, the Parties have hereunder set their hands as of the date first written above.

**ESOTERIX GENETIC LABORATORIES, LLC**

By: _____     Date: _____

Print: _____

Title: _____

**LABORATORY CORPORATION OF AMERICA HOLDINGS**

Date: _____

By: _____

Print: _____

Title: _____

**THE GENERAL HOSPITAL CORPORATION**

By: _____     Date: _6/27/17_____

Print: _Roger K. Herman,   VP Venture_

**DANA-FARBER CANCER INSTITUTE, INC.**

By: _____     Date: _____

Print: _____

Title: _____

**IN WITNESS WHEREOF**, the Parties have hereunder set their hands as of the date first written above.

**ESOTERIX GENETIC LABORATORIES, LLC**

By: _____     Date: _____

Print: _____

Title: _____


**LABORATORY CORPORATION OF**
**AMERICA HOLDINGS**                        Date: _____

By: _____

Print: _____

Title: _____

**THE GENERAL HOSPITAL CORPORATION**

By: _____     Date: _____

Print: _____

**DANA-FARBER CANCER INSTITUTE, INC.**

By: _Richard S Boskey_____     Date: _6/27/17_____

Print: _Richard S Boskey_____

Title: _SVP + GC_____

8