UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE GENERAL HOSPITAL CORPORATION and DANA-FARBER CANCER INSTITUTE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ESOTERIX GENETIC LABORATORIES, LLC and LABORATORY CORPORATION OF AMERICA HOLDINGS, <br><br> Defendants. | C.A. NO. 1:18-cv-11360-IT |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Esoterix Genetic Laboratories, LLC ("EGL") and Laboratory Corporation of America Holdings ("LabCorp") (collectively "Defendants"), by their undersigned counsel, respectfully submit this memorandum of law in opposition to Plaintiffs The General Hospital Corporation and Dana-Farber Cancer Institute, Inc.'s (collectively "Plaintiffs") cross-motion for partial summary judgment as to the breach of contract claim in Count I of Plaintiffs' Amended Complaint.

## PRELIMINARY STATEMENT

The Parties agree on two things: (1) the Settlement Agreement is unambiguous, and (2) its interpretation is a question of law appropriate for resolution on either Defendants' motion to dismiss or Plaintiffs' cross-motion for partial summary judgment. (Pl. Br. 9.)[1]  What the parties disagree on is how the release in the Settlement Agreement should be interpreted. Despite the broad language of the release in the Settlement Agreement, Plaintiffs argue that royalties based

---

[1] "Pl. Br." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss and in Support of Their Cross-Motion for Partial Summary Judgment, filed on November 16, 2018. (ECF No. 94.)

on tests conducted prior to its Effective Date were *not* released.  In support, Plaintiffs rely on caselaw that does not apply and parol evidence that is not admissible.  Neither approach has merit.

Plaintiffs advocate for an interpretation of the release that borrows from statute of limitations law; essentially, they argue that their "claim" for breach of contract could not have been released because it had not fully "accrued" as of the Effective Date of the Settlement Agreement for statute of limitations purposes.  But this ignores the plain language of the release, which applies not only to fully matured legal "claims," but also to liabilities, losses, damages, charges, complaints, obligations, promises, agreements, controversies, rights, demands, costs, debts, expenses, and the payment of any past royalties.

Plaintiffs' position also ignores the termination and other provisions of the Master License Agreement, which confirm that EGL's obligation to pay royalties "arises" as EGFR tests are performed, and not when those royalties become payable after the end of an administrative "reporting period."  Thus, royalties based on EGFR tests performed prior to the June 27 Effective Date were released as part of the Settlement Agreement.

Plaintiffs' reliance on parol evidence is similarly unavailing.  Plaintiffs concede, as they must, that parol evidence is not admissible for the purposes of interpreting a fully integrated and unambiguous agreement.  They also admit that the Settlement Agreement lacks any ambiguity and should be interpreted as a matter of law.  And while Plaintiffs argue that the parol evidence that they seek to offer is only relevant to their *alternative* claim for reformation of the Settlement Agreement—a claim for which they are *not* moving for summary judgment—they nevertheless rely on and mischaracterize that same evidence in support of their summary judgment motion on their breach of contract claim.  This evidence should be disregarded and the Court should not

only deny Plaintiffs' motion for summary judgment, but also either grant Defendants' motion to dismiss or grant summary judgment in Defendants' favor.

## STATEMENT OF FACTS

The facts relevant to Plaintiffs' motion are largely undisputed and have been fully explained by Defendants in their memorandum in support of their motion to dismiss. (ECF No. 89 at 3-8.) Thus, Defendants hereby incorporate that statement of facts in its entirety.

## ARGUMENT

### I. THE BROAD RELEASE IN THE SETTLEMENT AGREEMENT BARS PLAINTIFFS' BREACH OF CONTRACT CLAIM AND DEFEATS THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A. The General Release Applies to All Rights, Obligations, and Promises that Arose Prior to June 27, 2017 and is Not Limited to Matured Legal Claims

Plaintiffs do not challenge the enforceability of the broad general release they executed in favor of Defendants. Instead, Plaintiffs argue that the release does not bar their breach of contract claim because this "claim" did not "accrue" until August 15, 2017, when Defendants purportedly failed to "pay the entire royalty that became due on that date under the License Agreement." (Pl. Br. 1.)

Plaintiffs' argument, however, incorrectly presumes that the release applies only to fully matured legal claims. Indeed, Plaintiffs focus on just one word in the release provision of the Settlement Agreement and ignore the rest. Under Section 3.1 of the Settlement Agreement, however, Plaintiffs plainly released Defendants not only from any "claims" or "causes of action" that arose prior to the Settlement Agreement's Effective Date, but also from "any and all *liabilities, losses, damages, charges, complaints, claims, counterclaims, obligations, promises, agreements, controversies, . . . rights, demands, costs, debts and expenses . . . of any nature*

*whatsoever* . . . that may have arisen before the Effective Date . . . ***including the payment of any past royalties*** . . . ." (Marcotte Aff. Ex. B, § 3.1 (emphasis added).)[2]

If the parties had intended to limit the release to legal "claims" or "causes of action," they could have done so. Instead, they agreed upon the expansive language set forth above—language that would be rendered meaningless under Plaintiffs' strained interpretation of the Settlement Agreement. *See Clark Sch. For Creative Learning, Inc. v. Philadelphia Indem. Ins. Co.*, No. CIV.A. 12-10475-DJC, 2012 WL 6771835, at *8 (D. Mass. Dec. 26, 2012), *aff'd*, 734 F.3d 51 (1st Cir. 2013) ("It is well settled that '[a]n interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable'"); *Babcock Borsig Power GmbH v. Babcock Power, Inc.*, No. CIV.A. 04-10825-RWZ, 2006 WL 1581742, at *3 (D. Mass. Mar. 23, 2006) ("Under Massachusetts law, courts avoid interpreting contracts in a manner that would render express terms superfluous.")

Thus, whether or not Plaintiffs' cause of action for breach of contract accrued before the Effective Date is immaterial, and Plaintiffs' reliance on statute of limitations cases like *Berkshire v. Burbank*, 422 Mass. 659, 661 (1996), for the proposition that "[a] contract action accrues at the time the contract is breached" (Pl. Br. 1, 10) is inapposite. The relevant inquiry is not whether there was a "justiciable controversy" between the parties as of June 27, 2017, as Plaintiffs' argue (Pl. Br. 10), but whether their current causes of action are based on any obligations, promises, agreements, liabilities or rights that arose prior to the Effective Date. In this regard, it is not disputed that Plaintiffs' purported *right* to the royalties at issue arose at the time the underlying tests which gave rise to those royalties were performed (*i.e., prior* to June

---

[2] "Marcotte Aff." refers to the Affidavit of Carolyn A. Marcotte in Support of Plaintiffs' Motion for Partial Summary Judgment. (ECF No. 97.)

27, 2017). Accordingly, Plaintiffs released their right to those royalties under Section 3.1 of the Settlement Agreement.

If Plaintiffs intended to release only "claims" and "causes of action," they should not have agreed to release liabilities, losses, damages, charges, complaints, counterclaims, obligations, promises, agreements, controversies, rights, demands, costs, debts and expenses, and past royalties in the Settlement Agreement. But they did, and Plaintiffs' attempt to now ignore those additional terms should be rejected.

### B. The Reference to "Any Past Royalties" in the Settlement Agreement Includes Royalties Based on Defendants' EGFR Testing

Plaintiffs' argument that the "any past royalties" language refers only to royalties that "the plaintiffs would have been entitled to as a result of the QIAGEN sublicenses but for the Settlement Agreement" (Pl. Br. 11) is similarly unavailing. There are a number of problems with this argument, the most important being that this is not at all what the Settlement Agreement says. If the parties intended that only royalties based on the QIAGEN sublicense would be released, they could have used the precise language used in Plaintiffs' brief—Plaintiffs could have released "any royalty payment Plaintiffs would have been entitled to as a result of the QIAGEN sublicenses." (*Id.*) But they did not. Instead, they agreed to a much broader release of "*any* past royalties," without qualification or limitation. (Marcotte Aff. Ex. B § 3.1.) Plaintiffs' strained interpretation of the release glosses over the word "any" and reads it right out of the Settlement Agreement. *See Clark Sch. For Creative Learning, Inc.*, 2012 WL 6771835, at *8; *Babcock Borsig Power GmbH*, 2006 WL 1581742, at *3.

### C. Plaintiffs' Right to Royalties Under the License Agreement Arises When a Test is Performed, Not When the Royalties Become Payable

Plaintiffs further contend that because royalties are to be paid only twice per year pursuant to Sections 4.5(e) and 4.6(d) of the Master License Agreement, the royalties themselves

5

likewise "arise" only twice per year, and not on a "per sale basis" as Defendants contend. (Pl. Br. 11-12.) This argument, however, conflates the issue of when a royalty obligation *arises* with the issue of when that royalty obligation becomes *payable* and, in doing so, ignores the plain text of the Master License Agreement.

A common sense reading of the Master License Agreement demonstrates that Plaintiffs' right to receive royalty payments and EGL's "obligation" or "liability" to make payment arises when an EGFR test is performed. Specifically, Section 4.5(a) of the Master License Agreement—which Plaintiffs ignore in their motion papers—states that EGL's obligation to pay royalties to Plaintiffs "begin[s] with the first COMMERCIAL SALE of a PROCESS," where "PROCESS" is defined as any test utilizing the licensed patent." (Marcotte Aff. Ex. A, §§ 1.25, 1.27, 4.5(a), 4.5(b).) Thus, EGL's royalty obligation begins with its first test performed, and continues with each additional test performed. Accordingly, absent the performance of an EGFR test by Defendants, Plaintiffs have no right to royalties at all. In other words, Plaintiffs' right to royalties, and EGL's obligation to pay those royalties, arises at the time an EGFR test is performed by EGL and is calculated on a "per test" or "per sale" basis.

Section 10.7 of the Master License Agreement—which Plaintiffs also fail to address in their motion papers—is consistent with this reading and further confirms that Plaintiffs' royalty rights arise when an EGFR test is performed. That Section provides that "[u]pon termination of this AGREEMENT . . . all royalties . . . accrued or due to [Plaintiffs] as of the termination date shall become immediately payable." (Marcotte Aff. Ex. A, § 10.7.) Thus, if Plaintiffs were to terminate the Master License Agreement in the middle of a reporting period, EGL would nevertheless be obligated to make royalty payments for EGFR tests conducted prior to the date

of termination because Plaintiffs' entitlement to royalties "arises" when an EGFR test is performed, *not* when the royalty payments become due.

Finally, Plaintiffs ignore that, in the phrase "the payment of any past royalties," the word "past" modifies royalties, not payments. Thus, the phrase does not refer to past royalty payments, *i.e.* "reporting periods before the Settlement Agreement" for which payment had already become due, but rather to the past royalty-bearing events leading up to the Effective Date of the Settlement Agreement. Because these royalty-bearing events (the performance of EGFR tests) occurred prior to June 27, 2017, EGL's payment of corresponding royalties was released in the Settlement Agreement.

For these reasons, Plaintiffs' contention that royalties are not "paid" on a "per sale" basis (Pl. Br. 11) is misplaced. Plaintiffs' right to royalties, and EGL's underlying promise to pay those royalties, does not depend on when EGL was required to make royalty payments. Indeed, Plaintiffs concede this point when they note that the royalty payments at issue were "*attributable to the first half of 2017*," although they were not due and payable until August 15, 2017. (Pl. Br. 12 (emphasis added).) Thus, Plaintiffs' right to royalties based on EGFR testing that occurred prior to June 27, 2017 "arose" when those test were conducted and therefore was plainly released in the Settlement Agreement.

### D. Defendants' Credit Against the Annual License Fee Is Consistent With Their Interpretation of the Release

Plaintiffs' contention that Defendants' "own actions" in crediting royalties against the annual license fee confirm that the royalties at issue are "outside the scope of the release" (Pl. Br. 12) is belied by the plain language of the Master License Agreement. In fact, Defendants' credit is entirely consistent with their position that the royalties at issue arose before June 27, 2017 despite becoming "due" 45 days after the end of the reporting period.

Section 4.3 of the Master License Agreement permits Defendants to credit the annual license fee against royalty payments that are subsequently "*due*" in the same calendar year, and not any other calendar year. (Marcotte Ex. A, § 4.3 (emphasis added).) Plaintiffs argue that, by crediting royalties that arose between June 28 and June 30 against the annual license fee, Defendants "affirm" that "their obligation to make the royalty payment . . . arose after the point in time the annual fee was paid." (Pl. Br. 12.) But, once again, this construction of the Master License Agreement is contrary to its plain language, and presumes that royalties "arise" and are "due" at the same time.

The annual license fee is to be paid on or before August 15 of each year the Master License Agreement is in effect. (Marcotte Ex. A § 4.3.) Royalty payments are "due" two times per year—August 15 (for EGFR tests conducted between January 1 and June 30 of the same year) and February 15 (for EGFR tests conducted between July 1 and December 31 of the preceding year). (Marcotte Ex. A §§ 1.28, 4.5(e).) If royalty payments "due" on August 15 were not subject to credit against the August 15 annual license fee, then no credit would ever be permitted because the next royalty payments are not "due" until February 15 of the following year and the credit would no longer be available. (Marcotte Ex. A § 4.3.) Plaintiffs' position renders the credit allowed by Section 4.3 entirely superfluous and should be rejected. *See Clark Sch. For Creative Learning, Inc.*, 2012 WL 6771835, at *8; *Babcock Borsig Power GmbH*, 2006 WL 1581742, at *3.

### E. Plaintiffs' Allegations Regarding the Parties' Intent are Inadmissible on Their Motion for Summary Judgment

In the same brief that Plaintiffs argue that the Settlement Agreement is unambiguous (Pl. Br. 9-13), they also ask the Court to consider parol evidence in the form of a single email exchange dated from the early stages of the negotiations that led up to the execution of the

8

Settlement Agreement. (Pl. Br. 10-11, 20-22.) And while Plaintiffs structure their brief to suggest that this parol evidence is applicable only to their alternative claim for reformation of the contract (Pl. Br. 20-22), their summary judgment motion also refers to paragraphs in their Amended Complaint that quote and purport to interpret that same parol evidence. (Pl. Br. 10-11, citing paragraphs 22 and 29 of their Amended Complaint which, in turn, cite to the parol email exchange at issue.)

As explained at length in Defendants' memorandum of law in support of its Motion to Dismiss (ECF No. 89 at 14-15), evidence of intent is inadmissible to interpret an unambiguous agreement, particularly where, as here, the agreement contains an enforceable merger clause. *See, e.g.*, *Hermes Automation Tech., Inc. v. Hyundai Elecs. Indus*. Co., 915 F.2d 739, 747 (1st Cir. 1990) ("[W]here the language of an integrated release agreement is unambiguous as applied to the question at hand and the intent of the parties is clear solely on the basis of that language, the parol evidence rule bars the use of extrinsic evidence to contradict that plain language."); *Warner Co. v. Liberty Mut. Ins. Co*., 80 Mass. App. Ct. 1104, 2011 WL 3611396, at *4 (2011) (refusing to consider a term sheet that preceded an integrated settlement agreement, holding that "no injustice would result from literal enforcement of the chosen language"); *NJR Const. Co. v. Saunders*, No. CA936407F, 1994 WL 879942, at *1 (Mass. Super. May 18, 1994) (refusing to consider an attorney affidavit "for the purpose of altering the unambiguous terms of the [integrated] Settlement Agreement and the release").

Plaintiffs ignore all of this caselaw and, instead, cite cases discussing the admissibility of parol evidence *on a reformation claim*, not on a claim for breach of an unambiguous contract. (Pl. Br. 21-22.) These cases lend no support for the Court's consideration of parol evidence on Plaintiffs' motion for summary judgment on its *breach of contract claim*, especially since

9

Plaintiffs admit and argue that the Settlement Agreement is unambiguous and should be interpreted as a matter of law. (Pl. Br. 9.) The parol evidence they offer should be disregarded in ruling on Plaintiffs' motion.[3]

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

Although Defendants did not separately move for summary judgment, the circumstances of this case are ripe for the entry of summary judgment in their favor.

As a general matter, a court may enter summary judgment *sua sponte* when two conditions are satisfied: "1) there has been a reasonable opportunity to glean material facts through the discovery process, and 2) the targeted party received appropriate notice and opportunity to present evidence on the essential elements of the claim or defense." *Tucard, LLC v. Fid. Nat. Prop. & Cas. Ins. Co.*, 567 F. Supp. 2d 215, 222 (D. Mass. 2008); *see also Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 7 (1st Cir. 2007) ("A district court can enter summary judgment even though none of the parties asks for it"). Courts "[do] not demand the completion of discovery before the entry of sua sponte summary judgment," and summary judgment may even be entered *sua sponte* "before *any* discovery ha[s] taken place," where the decision is "based on legal conclusions independent of any potentially available evidence." *Sanchez*, 492 F.3d at 9.

*Bank v. Int'l Bus. Machines Corp.*, 145 F.3d 420, 431 (1st Cir. 1998), is directly on point. In *Bank*, the defendant (IBM) moved for summary judgment before any discovery had taken place, arguing that the terms of an integrated contract were unambiguous. *See id.* at 423. The

---

[3] It should also be noted that, contrary to Plaintiffs' repeated allegations (Second Amended Complaint ¶¶ 22, 23, 24, 25, 29, 66) and argument (Pl. Br. 6, 7-8, 11, 14, 22, 24), Defendants never agreed to continue making "all" royalty payments due under the Master License Agreement. Indeed, that language appears nowhere in the email exchange attached to the Complaint, let alone in the fully integrated Settlement Agreement, which expressly releases claims to "any past royalties." (Marcotte Aff. Ex. B § 3.1.)

10

district court construed the contract language as unambiguously supporting the plaintiff's position, and granted summary judgment in the plaintiff's favor despite the fact that the plaintiff had not moved for summary judgment (and, in fact, had opposed summary judgment on the ground that the contract was ambiguous.). *See id.* at 423-24. The First Circuit affirmed, finding that IBM's own summary judgment motion on the unambiguous nature of the agreement demonstrated that it had "ample opportunity to explain its understanding of the contract terms and set forth its interpretation of the contract's text." *Id.* at 431. *See also Tucard*, 567 F. Supp. 2d at 222 (granting summary judgment *sua sponte* in favor of nonmoving party where "no further discovery would alter the outcome"); *Sanchez*, 492 F.3d at 9 (holding that the "the sua sponte nature of the summary judgment order was not error" where the plaintiffs had "'a reasonable opportunity to glean the material facts' before the district court ordered summary judgment on its own initiative" and "the plaintiffs had 'appropriate notice and a chance to present [their] evidence on the essential elements of the claim[s]' that the district court found insufficient in entering summary judgment.")

This case is even more appropriate for *sua sponte* summary judgment since Plaintiffs and Defendants *agree* that the Settlement Agreement is unambiguous and can be interpreted as a matter of law. Plaintiffs themselves have moved for summary judgment on this exact premise. Thus, it cannot be disputed that Plaintiffs have "received appropriate notice and [the] opportunity to present evidence on the essential elements of the claim or defense" as required under Massachusetts law.

As established above and in Defendants' motion to dismiss, the release in the Settlement Agreement is clear and unambiguous and should be construed without reference to parol evidence. Thus, like in *Bank* and *Tucard*, no further discovery is needed to reach the necessary

legal determinations, and the Court is within its right to grant summary judgment to Defendants. It follows that if Defendants are entitled to summary judgment on Plaintiff's breach of contract claim, their related claims for breach of the implied covenant of good faith and fair dealing, violation of Chapter 93A, accounting, and reformation of contract also fail as a matter of law and summary judgment should be entered in Defendants' favor on those claims as well.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court: (1) deny Plaintiffs' motion for partial summary judgment in its entirety; (2) grant summary judgment in favor of Defendants; and (3) grant such other and further relief as the Court deems just and proper.

Dated: November 16, 2018
       Boston, MA

Respectfully submitted,

ESOTERIX GENETIC LABORATORIES, LLC and LABORATORY CORPORATION OF AMERICA HOLDINGS

By their attorneys,

CAMPBELL EDWARDS & CONROY, P.C.

*/s/ Christopher R. Howe*
James M. Campbell (BBO # 541882)
jmcampbell@campbell-trial-lawyers.com
Christopher R. Howe (BBO #652445)
chowe@campbell-trial-lawyers.com
One Constitution Center
Boston, MA  02129
Tel: (617) 241-3041
Fax: (617) 241-5115

KELLEY DRYE & WARREN LLP
Robert I. Steiner (admitted *pro hac vice*)
rsteiner@kelleydrye.com
Jaclyn M. Metzinger (admitted *pro hac vice*)
jmetzinger@kelleydrye.com
101 Park Avenue
New York, NY 10178

Tel: (212) 808-7800
Fax: (212) 808-7897

**CERTIFICATE OF SERVICE**

  I, Christopher R. Howe, counsel for defendants Esoterix Genetic Laboratories, LLC and Laboratory Corporation of America Holdings, hereby certify that on November 16, 2018, I electronically filed the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record. I also served a true copy of the above Memorandum by first class mail, postage pre-paid, on all parties of record.

                */s/ Christopher R. Howe*
                Christopher R. Howe