UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                              )
THE GENERAL HOSPITAL                        )
CORPORATION and                                    )
DANA-FARBER CANCER                          )
INSTITUTE, INC.,                                         )
                                                              )
      Plaintiffs,                                      )    C.A. No. 1:18-cv-11360-IT
                                                              )
      v.                                                     )
                                                              )
ESOTERIX GENETIC                                 )
LABORATORIES, LLC and                         )
LABORATORY CORPORATION              )
OF AMERICA HOLDINGS,                        )
                                                              )
      Defendants.                                    )
_____)

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiffs, The General Hospital Corporation and Dana-Farber Cancer Institute, Inc., submit this Reply in further support of their Cross-Motion for Partial Summary Judgment as to the Breach of Contract Claim in Count I of the Second Amended Complaint [Dkt. No. 81], and to address certain arguments made by the defendants Esoterix Genetic Laboratories, LLC and Laboratory Corporation of America Holdings in their Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment [Dkt. No. 98].

## ARGUMENT

**I.  THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO THEIR BREACH OF CONTRACT CLAIM (COUNT I)**

The defendants either admitted the facts set forth in the plaintiffs' Statement of Undisputed Facts [Dkt. No. 99], or failed to support their denials with supporting evidence as

required by Local Rule 56.1.[1]  Thus, the defendants have failed to identify a disputed issue of material fact, and for all of the reasons set forth in the plaintiffs' opening brief [Dkt. No. 94], the plaintiffs are entitled to entry of summary judgment on their breach of contract claim.

The defendants nonetheless argue that summary judgment should be denied because the release in the Settlement Agreement is not limited to "claims" or "causes of action," which, in the case of the plaintiffs' breach of contract claim the defendants seem to concede are outside the scope of the release because they arose *after* the Effective Date, but also applies to "liabilities, losses, damages, charges, complaints, [], counterclaims, obligations, promises, agreements, controversies, actions, [], suits, rights, demands, costs, debts, and expenses . . . ." (Def. Opp. pp. 3-4.)  Yet, the defendants still would need to prove that, whether it is called a "claim," a "cause of action," an "obligation," a "liability," a "promise," an "agreement," or any of the other words used in the release, it arose "*before* the Effective Date" of the Settlement Agreement, which was June 27, 2017.  (*See* Plaintiffs' Statement of Undisputed Facts §§ 15-16.)

The undisputed facts are that the defendants did *not* have an "obligation" to pay the royalty *before* the Effective Date, they did *not* "promise" they would pay the royalty *before* the Effective Date, they were *not* "liable" for the royalty *before* the Effective Date, they did *not* "agree" to pay the royalty *before* the Effective Date, and the plaintiffs did *not* have the "right" to demand payment of the royalty *before* the Effective Date.  (*See* Plaintiffs' Statement of Undisputed Facts §§ 15-19.)  In fact, the plaintiffs had no way of knowing if any royalty would be due until weeks *after* the Effective Date when the defendants submitted the royalty report required under the License Agreement.  And, in any event, the plaintiffs would have been in

---

[1] The Court has interpreted Local Rule 56.1 to mean that "[t]o the extent that [the non-moving party] has failed to present supported facts that controvert the factual assertions contained in [the moving party's] Rule 56.1 Statement, the court will deem the [moving party's] facts admitted." *Rodio v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 2d 224, 227 (D. Mass. 2006).

breach of the License Agreement had they demanded payment *before* the Effective Date.  (*See* Affidavit of Carolyn A. Marcotte in Support of Plaintiffs' Motion for Partial Summary Judgment ("Marcotte Aff."), Ex. A, License Agreement §§ 4.5(e) and 4.6(d).)  There were no "past royalties" from the defendants at issue *before* the Effective Date.  Thus, there simply were no royalties from the defendants that could properly be subject to the release, no matter what self-serving word the defendants use to describe them.  The plaintiffs are entitled to summary judgment on their breach of contract claim.

## II. THE COURT MAY PROPERLY CONSIDER THE CIRCUMSTANCES SURROUNDING THE MAKING OF THE SETTLEMENT AGREEMENT

The defendants contend that evidence concerning the parties' intent is inadmissible and should be disregarded.  (*See* Def. Opp. pp. 8-10.)  Yet, as stated on page 10 of the plaintiffs' opening brief, "[i]t is basic contract law . . . that the circumstances surrounding the making of an agreement must be examined to determine the objective intent of the parties."  *See Louis Stoico, Inc. v. Colonial Dev.*, 369 Mass. 898, 902 (1976); *see also Shea v. Bay State Gas Co.*, 383 Mass. 218, 222-23 (1981) ("Contract interpretation is largely an individualized process with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention . . . [Thus, a contract is interpreted] with reference to the situation of the parties when they made it and to the objects sought to be accomplished."); *Lewis v. Chase*, 23 Mass. App. Ct. 673, 677 (1987) ("A contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.").

This comes into play here because, among other things, the defendants assert that the phrase "any past royalties" in the release refers to their royalty payments, not just QIAGEN royalty payments.  (*See* Def. Opp. p. 5.)  Yet, the objective context of the Settlement Agreement was to resolve the parties' dispute over past QIAGEN royalties.  (*See* Marcotte Aff. Ex. B,

Settlement Agreement, pp. 1-2; SOF §§ 9-14; Second Amended Complaint ("SAC") §§ 16-26.) The agreement had nothing to do with the defendants' royalty payments because at that time there was no dispute between the parties over "past royalties" due from the defendants. (*See* SOF §§ 3-5 & 15-18.)

Thus, the defendants want the Court to ignore evidence concerning the circumstances surrounding the making of the agreement because they want to be able to argue in a vacuum that the release is broader than what the evidence clearly shows was objectively intended by the parties. But, the purpose of contract interpretation is for the Court to ascertain the objective intent of the parties, and ignoring this evidence serves to undermine that purpose. *See Louis Stoico*, 369 Mass. at 902 ("the circumstances surrounding the making of an agreement must be examined to determine the objective intent of the parties"); *Shea*, 383 Mass. at 222-23 (a contract is interpreted "with reference to the situation of the parties when they made it and to the objects sought to be accomplished").

### III. WHEN A TEST OCCURS IS IRRELEVANT TO WHEN THE PLAINTIFFS HAVE A RIGHT TO BE PAID A ROYALTY

The defendants' argument that royalties were to be paid to the plaintiffs on a "per sale" basis and thus, by extension, royalty payments, obligations, liabilities or rights are fixed when "EGFR tests are performed," contradicts the terms of the License Agreement, and should be rejected. (Def. Opp. p. 2.)

As an initial matter, the defendants admit they do "not maintain [the] EGFR testing records on a daily basis," let alone on a per-sale basis. (SAC Ex. B, p. 3 fn. 3.) It thus is disingenuous to argue, as the defendants do, that the plaintiffs' **right** to the royalties at issue arose at the time the underlying tests were performed, when the defendants themselves do not keep a record of when the tests are performed.

4

In any event, the defendants assert that a "common sense reading of the Master License Agreement demonstrates that" their "obligation" or "liability" to make royalty "payment[s] arises when an EGFR test is performed" based on Section 4.5(a) of the License Agreement. (Def. Opp. p. 6.) That argument, however, is not supported by the language of Section 4.5(a) of the License Agreement. Section 4.5(a) provides, in pertinent part:

> Beginning with the first COMMERCIAL SALE of a PROCESS in any country in the LICENSE TERRITORY, and continuing during the term of the AGREEMENT, COMPANY shall pay HOSPITAL a royalty equal to the product of (i) the royalty rate determined in accordance with the following sentence, and (ii) the CONTRACT NET SALES of PROCESSES sold by COMPANY or its AFFILIATES during for [*sic*] the REPORTING PERIOD, where "CONTRACT NET SALES" is the product of (x) the AVERAGE REIMBURSEMENT from the prior REPORTING PERIOD, and (y) the number of PROCESSES invoiced to THIRD PARTIES during the current REPORTING PERIOD.
>
> The royalty rate shall be established for each REPORTING PERIOD … and shall equal [X] percent [X] of the AVERAGE REIMBURSEMENT for the prior REPORTING PERIOD … .

(SAC Ex. H § 4.5(a).) Section 4.5(a) sets forth the formula to be used to determine the royalty rate during reporting periods for "PROCESSES." It says nothing about royalties being paid on a "per sale" basis. Section 4.5(b), which the defendants also rely on, merely states the rate to be used for "PRODUCTS" (*i.e.*, "[] percent [] of the NET SALES of all PRODUCTS sold"), and likewise offers no support for the defendants' argument. The royalties were never to be paid on a per sale basis, and never have been paid on that basis, and the plaintiffs' right to royalty payments arises only twice a year on the two payment dates set by the License Agreement.[2] (*See* SAC Ex. H §§ 4.5(e) and 4.6(d).)

---

[2] In addition, the defendants' argument that the plaintiffs "ignore" Section 4.5(a) of the License Agreement in their motion papers (Def. Opp. p. 6) is incorrect. In their opening brief at page 12, the plaintiffs clearly stated that Section 4.5(a) "says nothing about royalties being paid on a 'per sale' basis."

5

The defendants further argue that the royalty payment obligation "begins with its first test performed, and continues with each additional test performed." (Def. Opp. p. 6.) Yet, that language similarly is not found in Section 4.5(a) concerning "PROCESSES," nor is it found in Section 4.5(b) concerning "PRODUCTS," or anywhere else in the License Agreement for that matter. The defendants' argument also ignores the fact that it is different sections, specifically Sections 4.5(e) and 4.6(d), that govern the defendants' obligation or liability to make royalty payments to the plaintiffs, and none of those sections say anything about royalties being paid to the plaintiffs on a "per sale" basis.

As for the termination clause in the License Agreement (Section 10.7), that does not support the defendants' assertion that the "[p]laintiffs' royalty rights arise when an EGFR test is performed." (Def. Opp. p. 6.) For one, the argument is a red herring because termination never happened so as to give rise to an obligation to pay a royalty under the termination clause *before* the Effective Date of the Settlement Agreement. Moreover, the language of Section 10.7 – "accrued or due . . . shall become immediately payable" – actually supports the plaintiffs' argument because it is clear that unless termination occurs, the royalties are *not* accrued or due until the next payment date, which in this case was August 15, 2017, well *after* the Effective Date in the Settlement Agreement.[3]

---

[3] Indeed, if the defendants were correct that royalties were to be paid to the plaintiffs on a "per sale" basis, then the language in the termination provision would be unnecessary, and thus superfluous. *See S.D. Shaw & Sons, Inc. v. Joseph Rugo, Inc.*, 343 Mass. 635, 640 (1962) ("an interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one that leaves a part useless or inexplicable . . .").

## IV. THE DEFENDANTS HAVE NOT MOVED FOR SUMMARY JUDGMENT ON THE PLAINTIFFS' OTHER CLAIMS, AND A *SUA SPONTE* GRANT OF SUMMARY JUDGMENT WOULD NOT BE APPROPRIATE

The plaintiffs' other claims are not ripe for summary judgment, the defendants tellingly have not cross-moved for summary judgment on those claims, and their half-hearted suggestion that the Court take up those claims now *sua sponte* should be rejected.

The existence of disputed issues of material fact precludes summary judgment, whether on motion or *sua sponte* consideration by the Court. *See* Fed. R. Civ. P. 56. Here, unlike with the plaintiffs' breach of contract claim, there are disputed issues of material fact concerning their other claims, which presumably is why none of the parties have sought summary judgment on those claims at this stage of the case.

For example, with respect to their alternative claim for reformation, the plaintiffs asserted that, during negotiation of the Settlement Agreement, the defendants agreed to continue making "all" royalty payments due under the License Agreement, and that this fact, among others, confirms that the parties did not intend to include the royalty payment due from the defendants on August 15, 2017 within the scope of the release in the Settlement Agreement. *See OneBeacon Am. Ins. Co. v. Travelers Indem. Co. of Illinois*, 465 F.3d 38, 41 (1st Cir. 2006) ("When a party asks for reformation of a contract, it is not asking the court to interpret the contract but rather to change it to conform to the parties' intent.") Yet, in their motion to dismiss, the defendants dispute this allegation, and further ask the Court to accept their contrary view that the Settlement Agreement was intended to provide the defendants with a "fresh start," for which they claim to have paid handsomely. (*See* Defendants' opening brief [Dkt. No. 89], pp. 3, 7.) These competing assertions of fact also are relevant to the plaintiffs' allegations that the defendants either knew that the plaintiffs had made a mistake or similarly were mistaken

7

about the scope of the release, which bears on the outcome of the plaintiffs' alternative claim for reformation.  (SAC ¶¶ 66, 72, 73.)  These are obvious factual disputes that preclude summary judgment on the plaintiffs' reformation claim at this time.

With respect to the plaintiffs' claim under Chapter 93A, the plaintiffs asserted that the defendants' misconduct, founded in what is believed to be their general dissatisfaction with the terms of the License Agreement and their inability to use the settlement with QIAGEN to force the plaintiffs to agree to different terms, has been unscrupulous and motivated by a desire to extort an extra-contractual benefit to the detriment of the plaintiffs.  (SAC ¶ 55.)  The defendants have disputed this assertion, which precludes summary judgment at this time.  (*See* Defendants' opening brief, p. 20.)

Similarly, there are disputed issues of material fact concerning the plaintiffs' unjust enrichment claim.  For instance, the defendants dispute that their misconduct occurred at the direction and control of LabCorp and for LabCorp's benefit.  (*See* Defendants' opening brief, pp. 3-4, fn. 1 (LabCorp "created EGL to manage the purchased assets," under the License Agreement.))  This disputed issue of material fact also is relevant to the plaintiffs' piercing the corporate veil claim.  In their opening brief, the defendants acknowledge the connection between the defendants, but dispute the plaintiffs' allegations that LabCorp directed and controlled Esoterix and used it for an improper purpose.  (*Id.* at p. 23 (The Defendants' contend that "[t]here is nothing improper about these actions and, in fact, they are common among members of a large corporate family.")  That is yet another obvious factual dispute that precludes summary judgment on these claims at this time.

As for the defendants reliance on *Bank v. International Bus. Machines Corp.*, 145 F.3d 420 (1st Cir. 1998), that case is not "directly on point," and is easily distinguishable.  For one

thing, *Bank* explicitly stated that "[s]ua sponte summary judgment is also appropriate ***only if*** the litigation is sufficiently advanced that both parties have had a reasonable opportunity to present any material evidence in their favor." *Id.* (emphasis added); *see also Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir. 1996) (same). Here, this case is at the pleading stage, and certainly is not "sufficiently advanced" to warrant *sua sponte* consideration of summary judgment on the plaintiffs' other claims, none of which have been the subject of briefing by the parties in connection with summary judgment.

Moreover, *Bank* was a declaratory judgment action brought by agreement to establish which partner's interpretation of the agreement was correct, and did not involve, for example, fact intensive reformation, Chapter 93A, veil piercing, and/or unjust enrichment claims such as are at issue in this case. *See Bank*, 145 F.3d at 431. In *Bank*, the defendant moved for summary judgment. *Id.* While the Court determined that there were no issues of disputed fact, it also determined that the unambiguous meaning of the contract entitled the plaintiff to summary judgment even though the plaintiff had not sought that relief. *Id.* Under those circumstances, the Court determine it was proper to grant the plaintiff summary judgment *sua sponte* because there were no facts in dispute regarding the agreement's unambiguous imposition of the capital contribution obligation on the defendant, and because the defendant had "a fair opportunity to present its arguments" in the context of its summary judgment motion on the exact same claim.

Here, in this case, none of the plaintiffs' other claims are the subject of the parties' summary judgment briefing, the defendants did not feel strongly enough about those other claims to actually move for summary judgment, and the defendants have not explained why, in the face of obvious disputed facts, they think they are entitled to a *sua sponte* grant of summary judgment on those other claims. As a result, the issues have not been properly framed for the Court, and

thus, even if there were not disputed issues of material fact (which there are), the plaintiffs have

not been afforded "a fair opportunity to present [their] arguments."[4]

## **CONCLUSION**

For the foregoing reasons and for the reasons set forth in the Plaintiffs' Memorandum of

Law in Opposition to Defendants' Motion to Dismiss and in Support of Their Cross-Motion for

Partial Summary Judgment [Dkt. No. 94], the plaintiffs The General Hospital Corporation and

Dana-Farber Cancer Institute, Inc. respectfully request that this Court:

1. deny the defendants' Motion to Dismiss;

2. grant the plaintiffs' Cross-Motion for Partial Summary Judgment as to the breach
   of contract claim in Count I of the Second Amended Complaint;

3. deny the defendants' request for entry of summary judgment *sua sponte* in their
   favor on all of the plaintiffs' claims; and

4. order further relief as it deems just and proper.

---

[4] The other two cases cited by the defendants are also easily distinguishable.  In *Tucard, LLC v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 567 F.Supp.2d 215, 221-22 (D. Mass. 2008), which involved a federal flood insurance policy, the court found that "as a matter of law there [we]re no grounds to reform Tucard's [flood insurance policy] in light of the very narrow basis for reformation under the government regulations," and Tucard's counsel "conceded the issue had been fully developed."  In *Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 16-17 (1st Cir. 2007), the district court considered *sua sponte* summary judgment against the plaintiffs based on what the plaintiffs said at their own depositions, and found, after reviewing that testimony on two different occasions, that the defendants' interactions with the plaintiffs did not amount to violations of the mail or wire fraud statutes or the Hobbs Act.  The appeals court affirmed dismissal because, under the circumstances, the class representatives had appropriate notice and a chance to present their evidence on the essential elements of the claims that the district court found insufficient in entering summary judgment. *Id.*

Respectfully submitted,

THE GENERAL HOSPITAL
CORPORATION AND DANA-FARBER
CANCER INSTITUTE, INC.
By their attorneys,

*/s/ Carolyn A. Marcotte*
Douglas J. Nash (BBO# 633050)
Carolyn A. Marcotte (BBO# 663616)
Barclay Damon LLP
One Financial Center, Suite 1701
Boston, MA 02111
(617) 274-2900
dnash@barclaydamon.com
cmarcotte@barclaydamon.com

Dated: November 16, 2018

**CERTIFICATE OF SERVICE**

    I, Carolyn A. Marcotte, certify that on November 16, 2018, this Reply Brief filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to the non-registered participants.

    */s/ Carolyn A. Marcotte*
    Carolyn A. Marcotte