UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GENERAL HOSPITAL CORPORATION and DANA-FARBER CANCER INSTITUTE, INC., | * * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 18-cv-11360-IT * |
| ESOTERIX GENETIC LABORATORIES, LLC, and LABORATORY CORPORATION OF AMERICA HOLDINGS, | * * * * * |
| Defendants. | * |

MEMORANDUM AND ORDER

September 4, 2019

TALWANI, D.J.

Plaintiffs, The General Hospital Corporation and Dana-Farber Cancer Institute, Inc., sued Defendants, Esoterix Genetic Laboratories, LLC ("Esoterix"), and Laboratory Corporation of America Holdings ("LabCorp"), for breach of contract (Count I) and related claims (Counts II through VII). Amended Complaint [#81]. Defendants moved to dismiss all claims, and Plaintiffs moved for partial summary judgment on the breach of contract claim. Turning first to the motion for partial summary judgment, the court ALLOWS Plaintiffs' Motion for Partial Summary Judgment [#95] as to Esoterix and DENIES WITHOUT PREJUDICE the motion as to LabCorp. Turning next to the motion to dismiss, the court ALLOWS the motion as to reformation of contract (Count V), and otherwise DENIES Defendants' Motion to Dismiss [#88].

I. Plaintiffs' Motion for Partial Judgment - Breach of Contract Claim (Count I)

   a. *Standard of Review*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

   b. *Facts*

      i. License Agreement

Plaintiffs own patents for a method of testing for a mutation relevant to cancer treatment. Statement of Facts ¶ 1 [#96]; Counterstatement of Facts ¶ 1 [#99]. Plaintiffs and Esoterix are parties to a License Agreement which grants Esoterix the right to use Plaintiffs' testing "processes" and technological "products" in exchange for financial compensation.[1] Joint Submission of the Parties ("License Agreement ") [#119-1]. The License Agreement also permits Esoterix to license the use of Plaintiffs' processes to third-party sublicensees for a further cost. Id.

The License Agreement establishes two "reporting periods" each year, one six-month period ending June 30 and the other ending December 31. License Agreement [#119-1] at 7. Forty-five days after the end of each reporting period, Esoterix owes Plaintiffs royalty payments for Esoterix and its affiliates' sale of processes. Id. § 4.5(e) at 20. Under the License Agreement,

---

[1] Plaintiffs and Genzyme Corporation executed an agreement to license Plaintiffs patents to Genzyme. License Agreement [#119-1]. In 2010, LabCorp purchased assets from Genzyme, including its rights under the License Agreement, and created Esoterix to manage those assets. Statement of Facts ¶ 2 [#96]; Counterstatement of Facts ¶ 2 [#99]. In doing so, LabCorp assigned its rights under the License Agreement to Esoterix. Statement of Facts ¶ 2 [#96]; Counterstatement of Facts ¶ 2 [#99]. Though Plaintiffs bring their breach of contract claim against both Defendants, there is an insufficient record to determine on summary judgment if LabCorp is a party to the License Agreement or otherwise liable for the breach.

royalty payments are calculated by multiplying the "royalty rate" and the "contract net sales" sold by Esoterix and its affiliates' during the reporting period. Id. §4.5(a) at 51. The "royalty rate" is a percentage of the average reimbursement for the prior reporting period. Id. The "contract net sales" are calculated by multiplying "the average reimbursement from the prior reporting period" and "the number of processes invoiced to third parties during the current reporting period." Id. The "average reimbursement" equals "(i) the total net sales for processes conducted during such reporting period, divided by (ii) the total number of processes conducted during the same reporting period." Id. § 1.34 at 8. "Net sales" occur when Esoterix receives the amount payable by a purchaser of a process or product. Id. § 1.22(c) at 6. "Net sales" are the actual amount received by Esoterix and its affiliates, minus amounts incurred effecting the sale, such as credits for return or rejection, rebates, discounts, amounts for transportation, insurance, shipping, and taxes. Id. § 1.22(a) at 5-6.

Under the License Agreement, Esoterix also owes Plaintiffs a percentage of any and all fees Esoterix receives in exchange for sublicensing patent rights, processes, or products. Id. § 4.6(b) at 53.

Esoterix also owes Plaintiffs an annual license fee on or before August 15 every year. "The annual license fee is nonrefundable; provided, however, the annual license fee shall be credited against royalties subsequently due under Section 4.5 and 4.6(b), if any, from [Esoterix] during the same calendar year, but shall not be credited against royalties due from [Esoterix] under Section 4.5 in any other year." License Agreement § 4.3 at 16 [#119-1].

All payments due under the License Agreement must be paid in United States currency and any payments involving the conversion of foreign currency to U.S. dollars must use The Wall Street Journal's conversion rate "on the last working day of the applicable reporting

3

period." Id. § 4.7 at 21. Section 5.3(d) of the License Agreement requires Esoterix to submit semi-annual reports within 45 days of the end of each reporting period including the total number of products sold by Esoterix and sublicensees, the net sales for the reporting period, the total royalties payable on those net sales in U.S. dollars, including any exchange rates used in those calculations, and all fees and royalty payments received by Esoterix. License Agreement § 5.3(d) at 23 [#119-1].

          ii. Settlement Agreement

A conflict arose between Esoterix and a sublicensee, QIAGEN, and litigation ensued. Statement of Facts [#96] ¶ 8; Counterstatement of Facts [#99] ¶ 8. Defendants[2] settled all claims in that case and the sublicensee agreed to pay Defendants as a term of the settlement. Statement of Facts [#96] ¶ 9; Counterstatement of Facts [#99] ¶ 9. In connection with that settlement, Plaintiffs and Defendants agreed that Plaintiffs would receive a portion of the amount paid by the sublicensee. Statement of Facts [#96] ¶ 14; Counterstatement of Facts [#99] ¶ 14. Plaintiffs and Defendants subsequently entered into a Settlement Agreement, effective June 27, 2017, which provides:

> [Plaintiffs] do hereby release, waive, forever discharge, and hold harmless [Defendants] … of, from, and with respect to, any and all liabilities, losses, damages, charges, complaints, claims, counterclaims, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, demands, costs, debts and expenses (including attorneys' fees and court costs) of any nature whatsoever, known or unknown, suspected or unsuspected that may have arisen before the Effective Date, which the [Plaintiffs] may have, own or hold, or claim to have, own or hold against the [Defendants], relating to or arising from… (iii) the Master License Agreement, including but not limited to the provision of any notice(s) required under the Master License Agreement or the payment of any past royalties or other fees pursuant to the Master License Agreement….

Marcotte Aff., Ex. B ("Settlement Agreement") at 2.

---

[2] Though the summary judgment record is not clear as to LabCorp's relationship to the License Agreement, Defendants' Counterstatement of Facts [#99] does not dispute that LabCorp was a party to the Settlement Agreement.

iii. The Payment at Issue

Pursuant to the License Agreement, a reporting period concluded on June 30, 2017, and any royalty payments for that reporting period were due 45 days later on August 15, 2017. Esoterix did not make a royalty payment at that time. Statement of Facts ¶ 19 [#96].

c. *Analysis*

Plaintiffs allege that Esoterix's nonpayment of the royalty payment on August 15, 2017, was a breach of the License Agreement. Defendants argue that no royalty payment was due because the Settlement Agreement released Defendants from any payments owed prior to the June 27, 2017, effective date of the Settlement Agreement. Defendants further argue that any royalties generated by processes sold after June 27, 2017, and before the June 30, 2017, conclusion of the reporting period can be deducted from the annual fee, per § 4.3 of the License Agreement.

"[A] release may be prompted by the settlement of a specific dispute or resolution of a specific issue, but broad wording in the release operates to settle all other, unrelated matters, even if they were not specifically in the parties' minds at the time the release was executed." <u>Eck v. Godbout</u>, 444 Mass. 724, 728 (2005). The Settlement Agreement releases Defendants from liabilities to Plaintiffs that "may have arisen" prior to the execution. Settlement Agreement at 2. At issue is when Esoterix's liabilities for payments from January 1, 2017, to June 27, 2017, arose. If, under the terms of the License Agreement, Esoterix's obligation to pay royalties to Plaintiffs arises at the time a process is sold, those claims are covered by the Settlement Agreement and Esoterix did not violate the terms of the License Agreement by not paying royalty payments on August 15, 2017. However, if Esoterix's obligation to pay arises on August

5

15, 2017, 45 days after the conclusion of the January 1-June 30, reporting period, the Settlement Agreement does not encompass those claims and Esoterix did breach the License Agreement.

"A cause of action for breach of contract accrues at the time of the breach." Campanella & Cardi Const. Co. v. Com., 351 Mass. 184, 185 (1966); see also Eck v. Godbout, 444 Mass. 724, 730 (2005) ("A claim arises at the time of the underlying incident giving rise to the claim.") (internal quotations and citations omitted). In a breach of contract claim regarding payment, the cause of action usually accrues when the required payment is not made. See Locator Servs. Grp., Ltd. v. Treasurer & Receiver Gen., 443 Mass. 837, 861 (2005)("[t]he cause of action for insufficient interest accrued, not when claimants' land was taken…,but rather when claimants received their allegedly insufficient interest payments."). On June 27, 2017, when the Settlement Agreement was executed, Esoterix did not yet owe any of the August 15, 2017, payments and were therefore not yet in breach of the License Agreement. Plaintiffs, accordingly, did not yet have a claim against Esoterix for breach of the License Agreement.

Esoterix contends that though the payments for the reporting period at issue were scheduled to be made by a single deadline, August 15, 2017, its obligation to pay actually arose on a "per sale" basis, so any amount owed to Plaintiffs was resolved by the Settlement Agreement. The structure of the License Agreement does not permit such a reading.

First, the payments were only due twice annually. Under the terms of the License Agreement, Plaintiffs have no avenue to demand payment from an individual sale.

Beyond that, the calculations of the total amount due involve a complex combination of rates from the current and prior reporting period. In the License Agreement, at the conclusion of a reporting period, the parties need the following information to calculate the payment that Esoterix owes Plaintiffs: the average percentage of reimbursement for the prior reporting period,

6

the number of processes invoiced to third parties during the current reporting period, the number of processes invoiced to third parties during the prior reporting period, the payments received by Esoterix during the prior reporting period, and the amount paid for credits, rebates, insurance, shipping, and other similar costs of making a sale during the prior reporting period. License Agreement §§ 1.22, 1.34, 4.5 at 5-6, 8, 51 [#119-1]. Such intricacy presents multiple problems for Esoterix's contentions. Broadly, the royalty mechanisms within the contract for payments for sales by Esoterix and sales by sublicensees requires average calculations, evincing a focus on the entirety of a reporting period, not individual sales. See Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 46 (1991)("[t]o ascertain intent, a court considers…the agreement taken as a whole…."). By its text, the License Agreement does not address the transactions on an individual basis, but rather aggregates the analysis, looking for "average[s]" and "total net sales." Crucially, the parties cannot calculate the royalty payment without knowing "the number of processes invoiced to third parties during the current reporting period." License Agreement §4.5(a) at 51 (royalty payment requires "contract net sales," which is calculated by using current reporting period's invoices). Therefore, even if Esoterix wanted to pay Plaintiffs for a single sale before the conclusion of a reporting period, Esoterix could not calculate the amount due until the reporting period ended because Esoterix would need to know the current reporting period's net sales. See id.

Finally, Defendants' argument regarding the offset of amounts for June 27 through June 30 supports Plaintiffs' construction of the contract. Under the License Agreement, "the annual license fee shall be credited against royalties *subsequently due* under Section 4.5 and 4.6(b), if any, from [Esoterix] during the same calendar year, but shall not be credited against royalties due from [Esoterix] under Section 4.5 in any other year." License Agreement § 4.3 at 16 [#119-1]

7

(emphasis added). Defendants correctly note that the amounts for June 27 through June 30 were not "due" until August 15; this same argument applies to the amounts for January 1 though June 27.

Considering all of these factors, the court concludes that under the terms of the License Agreement, Esoterix's obligations to make royalty payments arose on August 15, 2017, and, accordingly, the Settlement Agreement did not release Esoterix from their royalty payment obligations for the January 1, 2017, to June 30, 2017, reporting period. As such, Esoterix breached the terms of the License Agreement and Plaintiffs' Motion for Partial Summary Judgment [#95] is ALLOWED as to Esoterix and DENIED WITHOUT PREJUDICE as to LabCorp.

II. Defendants' Motion to Dismiss

a. *Standard of Review*

Defendants moved to dismiss all claims, pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs did not state a claim upon which relief could be granted. To survive a motion to dismiss, the well-pleaded facts in a plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

b. *Analysis*

As set forth above, Plaintiffs are entitled to partial judgment as to Count I against Esoterix. Although the court did not find the summary judgment record sufficient as to LabCorp, the allegations are sufficient to withstand a motion to dismiss. Accordingly, Defendants' Motion to Dismiss [#88] is DENIED as to Count I.

Counts II (Breach of Implied Covenant of Good Faith and Fair Dealing) and III (violation of M.G.L. c. 93A) are based on Defendants' breach of the License Agreement, combined with

allegations that Defendants acted in bad faith. See Weiler v. PortfolioScope, Inc., 12 N.E.3d 354, 362 (Mass. 2014) (implied breach of covenant of good faith and fair dealing requires plaintiff to prove lack of good faith); NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 34 (1st Cir. 1994) (breach of contract violates c. 93A where it is knowing, intended to secure "unbargained-for benefits to the detriment of [the other party]," and "has an extortionate quality"). The Amended Complaint alleges that Defendants represented that the Settlement Agreement did not apply to the payments due under the License Agreement and that Defendants would continue to make all royalty payments. Amended Complaint [#81] ¶¶ 25, 29, 55. Plaintiffs further alleged that Defendants knew of Plaintiffs' understanding of the Settlement Agreement and used Plaintiffs' understanding to induce Plaintiffs to agree, all while intending to breach the terms of the License Agreement for Defendants' financial gain. Id. ¶ 72. The Amended Complaint alleges further that in e-mail communications, Defendants represented that the "only" remaining issue was dividing settlement proceeds. Id. ¶ 22. Plaintiffs allege further that the parties met in Boston and discussed only the QIAGEN settlement and did not address royalty payment terms under the License Agreement. Id. ¶ 23. These allegations are sufficient to state a claim upon which relief can be granted. Accordingly, Defendants' Motion to Dismiss [#88] is DENIED as to Counts II and III of the Amended Complaint [#81].

Count IV is a request for injunctive relief granting Plaintiffs "a full audit and accounting of the relevant records for the reporting period ending June 30, 2017. Am. Compl. [#81] ¶ 61. The License Agreement includes a procedure for Plaintiffs to audit Defendants' "complete and accurate records relating to rights and obligations under [the License Agreement] and any amount payable to [Plaintiffs] in relation to [the License Agreement]." License Agreement § 5.4

at 23 [#119-1]. Accordingly, Defendants' Motion to Dismiss [#88] is DENIED as to Count IV of the Amended Complaint [#81].

Count V is a claim for reformation of the contract based on mistake. Plaintiffs argue that the terms of the Settlement Agreement are clear, but, in the alternative, seek to reform the contract. Am. Compl. [#81] ¶¶ 65-74. Plaintiffs ask the court to "reform the release and/or the Settlement Agreement to exclude such royalty payment from the scope of the release." Id. at ¶ 74. Given the court's resolution of Plaintiffs' Motion for Partial Summary Judgment [#95] and determination that the Settlement Agreement did not waive the payment of the disputed royalties, the relief Plaintiffs seek is moot. Accordingly, Defendants' Motion to Dismiss [#88] is ALLOWED as to Count V of the Amended Complaint [#81].

Count VI is a claim for piercing the corporate veil and Count VII is a claim for unjust enrichment against LabCorp. Each of these claims is a mechanism for securing damages for Plaintiffs from LabCorp for Esoterix's breach of contract. "A veil may be pierced where the parent exercises some form of pervasive control of the activities of the subsidiary and there is some fraudulent or injurious consequence of the intercorporate relationship." Scott v. NG U.S. 1, Inc., 450 Mass. 760, 767 (2008) (internal quotations and citations omitted). Plaintiffs allege that LabCorp and Esoterix have common owners and employees, that LabCorp controls Esoterix's operations, and that LabCorp directed Esoterix to enter into the Settlement Agreement and breach the License Agreement. Plaintiffs cite to communications from a LabCorp officer who declared that she is responsible for both companies' business records and another LabCorp officer who contacted Plaintiffs about the breach of the License Agreement. Am. Compl. [#81] ¶ 77. The court finds that Plaintiffs have stated a plausible claim for piercing the corporate veil.

Plaintiffs claim, in the alternative, that LabCorp is unjustly enriched by its role in Esoterix's conduct. "Unjust enrichment provides an equitable stopgap for occasional inadequacies in contractual remedies at law by mandating that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 234 (1st Cir. 2005) (quoting Fox v. F & J Gattozzi Corp., 672 N.E.2d 547, 552 (Mass. App. Ct. 1996)). The facts alleging LabCorp's control over Esoterix and involvement in Esoterix's agreement to the Settlement Agreement and subsequent breach also support a claim for unjust enrichment. The court finds that Plaintiffs have stated a claim for unjust enrichment against LabCorp. Accordingly, Defendants' Motion to Dismiss [#88] is DENIED as to Counts VI and VII of the Amended Complaint [#81].

III. Conclusion

For the forgoing reasons, Plaintiffs' Motion for Partial Summary Judgment [#95] is ALLOWED as to Esoterix and DENIED WITHOUT PREJUDICE as to LabCorp and Defendants' Motion to Dismiss [#88] is ALLOWED as to Count V of the Amended Complaint [#81] and DENIED as to all other counts. Plaintiffs shall submit to the court a proposed order for the requested injunctive relief related to Count IV.

IT IS SO ORDERED.

Date: September 4, 2019  /s/ Indira Talwani
United States District Judge