# **EXHIBIT B**

Esoterix Genetic Laboratories, LLC
3400 Computer Drive
Westborough, MA 01581

November 28, 2017

**VIA OVERNIGHT FEDERAL EXPRESS**

Daniel Castro
Managing Director, Licensing
215 First Street, Suite 500
Cambridge, MA 02142

      Re:    Exclusive License Agreement, dated May 2, 2005, as amended on August 31, 2007, August 31, 2008 and October 26, 2010 ("License Agreement"); MGH Agreement No: 2004A18200 (MGH Case No: 2568)

Dear Mr. Castro:

    We are in receipt of your letter dated November 3, 2017. The General Hospital Corporation and Dana-Farber Cancer Institute, Inc.'s (collectively, "MGH") interpretation of both the Settlement Agreement and the License Agreement is incorrect. The Settlement Agreement includes a general release of any and all claims under the License Agreement which accrued prior to the Effective Date and unquestionably includes any claims to royalties that accrued as a result of EGFR testing conducted on or before June 27, 2017. MGH's strained interpretation that a royalty does not accrue until it is "due and payable" at the end of the applicable reporting period is contrary to the plain language of the License Agreement, the terms of the Settlement Agreement, and the parties' intent in entering into the Settlement Agreement.

### EGL Properly Calculated Royalties Due For The January 1 – June 30 Reporting Period

    MGH entered into the Settlement Agreement with EGL as part of EGL's settlement of its underlying litigation with QIAGEN. In connection with that settlement, MGH executed a general release of all claims to royalties prior to the Effective Date of the June 27, 2017 Agreement:

> As of the Court's granting of the Motion to Vacate, *each of [MGH] and DFCI*, on behalf of itself and its present and former Affiliates . . . (collectively the "Hospital Releasors") *do hereby release, waive, forever discharge, and hold harmless EGL,* LabCorp, and each of their present and former Affiliates . . . (collectively, "the EGL Releasees"), *of, from and with respect to any and all liabilities,* losses, damages, charges, complaints, claims, counterclaims, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, demands, costs, debts and expenses (including attorneys' fees and court costs) *of any nature whatsoever, known or unknown, suspected or unsuspected that may have arisen before the Effective Date,* which the Hospital Releasors may have, own or hold, or claim to have, own or hold against the EGL Releasees, *relating to or arising from* . . . (iii) *the Master License Agreement, including*

Esoterix Genetic Laboratories, LLC, is a wholly-owned subsidiary of Laboratory Corporation of American Holdings.

***but not limited to . . . the payment of any past royalties or other fees pursuant to the Master License Agreement.***

(Settlement Agreement, § 3.1 (emphasis added).) Any claim to royalties based upon EGFR testing conducted between January 1, 2017 and June 27, 2017 "ar[ose] before the Effective Date" of the Settlement Agreement. The only logical date that such a royalty claim could "arise" is when a test under the License Agreement is actually conducted. Indeed, it is performance of the test itself that triggers MGH's right to receive the royalty, not the end of the reporting period when the royalty is required to be paid. Thus, because MGH's alleged claim to royalties based on EGFR testing conducted between January 1 and June 27 "ar[ose] before the Effective Date" of the Settlement Agreement, MGH has released any claim to those royalties in their entirety.[1]

This interpretation is consistent with the framework of the License Agreement as a whole. If MGH or EGL were to terminate the License Agreement for any reason in the middle of a reporting period, surely MGH would require EGL to pay any royalties based on EGFR testing conducted prior to such termination. Indeed, Section 10.7 of the License Agreement provides for exactly that scenario: "Upon termination of this AGREEMENT or any of the licenses hereunder for any reason, final reports in accordance with Article 5 shall be submitted to [MGH] ***and all royalties and other payments***, including without limitation any unreimbursed PATENT COSTS, ***accrued or due to [MGH] as of the termination date shall become immediately payable.***" (License Agreement, § 10.7.) This confirms that MGH's right to receive royalties "arises" or "accrues" at the time the EGFR test is conducted despite the fact that the royalty does not need to be paid until after the end of the applicable reporting period.

EGL agreed to pay REDACTED to MGH for the release of any and all claims that MGH had or may have had against EGL, known or unknown. The purpose of that broad release was to provide the parties with a fresh start as of the Effective Date of the Settlement Agreement. MGH's repudiation of that general release constitutes a material breach of the Settlement Agreement and threatens EGL's anticipated benefits thereunder.

In short, EGL appropriately calculated and accounted for the royalties that were based upon EGFR testing conducted between June 28 and June 30, 2017, and properly excluded all royalties based upon EGFR testing conducted prior to the Effective Date of the Settlement Agreement.[2]

**MGH Is Not Entitled To The Broad Audit Requested**

MGH's request for an audit of the entire January 1 – June 30 reporting period is likewise unsupported by the terms of the License Agreement. Section 5.4 grants MGH the right to audit EGL's records relating to the License Agreement "solely . . . to verify any reports and payments

---

[1] While you point out that the parties to the Settlement Agreement "contemplated that there would be an ongoing royalty stream under the License Agreement," that royalty stream was intended to continue *after* the Effective Date of the Settlement Agreement. Such new payment obligations have nothing to do with past obligations which were released.

[2] Your comment that EGL's royalty report was "belated and non-compliant" is without merit. No money was owed in connection with this royalty report and so MGH has not suffered any harm by receiving the report 26 business days late. As to the substance of the report, the format was the same as prior reports and this is the first time in twelve years that MGH has complained of non-compliance.

2

made under, and/or to determine compliance in other respects with, this AGREEMENT." (License Agreement, § 5.4.) Since no payments were due from the beginning of the reporting period through the Effective Date of the Settlement Agreement (January 1 – June 27, 2017), MGH has no audit rights during that time period. If MGH has some other reason for requesting this audit, please let us know what it is and we will reconsider MGH's request. EGL will grant MGH's auditor access to its records concerning royalty payments for the remainder of the reporting period at issue (*i.e.*, June 28, 2017 through June 30, 2017).[3]

### EGL Hereby Requests that MGH Fulfill Their Obligations Under the License Agreement

Finally, EGL would like to address MGH's record-keeping and reporting failures. As you know, MGH's Laboratory for Molecular Medicine ("LMM") is required to maintain complete and accurate records concerning LMM's retained rights under Section 2.3(b) of the License Agreement to make, use, offer to sell, and sell EGFR testing for the benefit of patients of specified hospitals and entities. (License Agreement, § 2.3(b), as amended effective August 31, 2007, and § 5.5.) Moreover, within forty-five (45) days after the end of each reporting period, MGH is required to report to EGL in writing on LMM's sales activities as set forth in Section 2.3(b). (License Agreement, § 5.8, as amended effective August 31, 2007.) MGH has failed to provide these required reports and EGL is requesting that MGH provide all of the testing records.

--------------------------------

Sincerely,

Kellie Watson, Ph.D.
kellie.watson@labcorp.com

cc:  Executive Director, Innovation
     Massachusetts General Hospital
     101 Huntington Avenue, 4th Floor
     Boston, MA  02199

---

[3] Note that EGL does not maintain its EGFR testing records on a daily basis. Its records are maintained on a monthly basis, and therefore EGL's royalty calculation in its most recent royalty report is based upon the number of EGFR tests performed during June 2017 divided by thirty days. EGL is therefore willing to permit MGH's auditor to review the relevant records from the entire month of June 2017.