UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE GENERAL HOSPITAL CORPORATION and DANA-FARBER CANCER INSTITUTE, INC., | ) ) ) ) | C.A. No. 1:18-cv-11360-IT |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ESOTERIX GENETIC LABORATORIES, LLC and LABORATORY CORPORATION OF AMERICA HOLDINGS, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendants Esoterix Genetic Laboratories, LLC ("Esoterix") and Laboratory Corporation of America Holdings ("Labcorp") (collectively "Defendants"), by their undersigned counsel, respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Third Amended Complaint (the "TAC") filed by The General Hospital Corporation and Dana-Farber Cancer Institute, Inc. (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

The First Circuit Court of Appeals held that Plaintiffs and Defendants "unambiguous[ly]" and "manifestly intended to enter into a release . . . that broadly discharges liability for all claims and demands, whether known or unknown," thereby releasing Plaintiffs' rights to the royalty payments at issue in this lawsuit. *Gen. Hosp. Corp. v. Esoterix Genetic Lab'ys, LLC*, 16 F.4th 304, 309 (1st Cir. 2021). It rejected the notion that Plaintiffs could rely on supposed extrinsic evidence of the "circumstances surrounding the settlement," including "settlement discussions [which] the Hospital insist[s] show that the parties never intended" to release Esoterix's royalty obligations, concluding that "[e]xamination of extrinsic evidence [would be] improper where, as here, the terms of the contract are neither vague nor ambiguous." *Id.* at 313. Relying on well-settled Massachusetts law, the First Circuit reasoned that Plaintiffs cannot use extrinsic evidence to write certain phrases out of the release at issue:

> The breadth of the release was by choice of the contracting parties. Courts should not attempt to "accomplish by judicial fiat what [a party] neglected to achieve contractually." *FDIC v. Singh*, 977 F.2d 18, 23 (1st Cir. 1992) (alteration in original) (quotations omitted). That admonition has special force where, as here, the parties are sophisticated entities that negotiated a release with the benefit of counsel. In signing the agreement, the parties acknowledge that they have been "specifically advised" of the consequences . . . and their respective rights and obligations." We are not at liberty to rewrite this bargained-for arrangement.

*Id.* at 313-14.

Notwithstanding the First Circuit's holding, Plaintiffs' Third Amended Complaint is entirely premised on the theory that: (i) the parties *did not intend* to enter into a release that did exactly what the First Circuit found it did; and (ii) their settlement discussions *should be relied upon* to rewrite the clear terms of the release for which the parties, with the benefit of counsel, negotiated—all so as to *impose unbargained-for obligations* on Defendants that are *in direct conflict with the contract*. But there is nothing in Massachusetts law that would allow such a result—one that would not only *create* contractual obligations that the parties specifically negotiated away, but that would also allow Plaintiffs to avail themselves of statutory remedies that can only be predicted on the notion that it was "unfair," "immoral," "unethical," "oppressive," or "unscrupulous" for Defendants to invoke their bargained-for contractual rights. Specifically, through their Third Amended Complaint, Plaintiffs seek to rehash their failed breach of contract claim and evade the Settlement Agreement's unambiguous terms by asserting claims for: (i) breach of the implied covenant of good faith and fair dealing; (ii) violation of M.G.L. Chapter 93A §§ 2 and 11; (iii) reformation of contract based on mistake; and (iv) unjust enrichment. None of these claims can survive in the face of the First Circuit's decision.

First, Plaintiffs have no claim for breach of the implied covenant of good faith and fair dealing. The covenant does not create rights or duties not otherwise provided for in the relevant contracts. As the First Circuit held, the Settlement Agreement "unambiguous[ly]" released Esoterix's obligation to pay the royalties that Plaintiffs seek. Thus, Esoterix's compliance with the terms of the Settlement Agreement, which allowed it to reject Plaintiffs' demand for released royalty payments, could not have breached the implied covenant.

Second, notwithstanding Plaintiffs' entirely conclusory allegations regarding Defendants' deceptive conduct, it would be absurd if Plaintiffs could state a claim for violation of Chapter

93A based on Defendants' refusal to remit payment under a contract when that conduct, as the First Circuit has held, was completely consistent with the unambiguous Settlement Agreement.

Third, Plaintiffs' reformation of contract claim cannot be used to evade the clear and unambiguous terms of a bargained-for release for which the First Circuit already held no extrinsic evidence is necessary.  In addition, Plaintiffs have not alleged, and cannot allege, sufficient facts to raise a plausible inference that the Settlement Agreement's release resulted from either mutual or unilateral mistake.  Indeed, Plaintiffs concede that the parties "never discussed" the royalties at issue, so there could be no "mutual mistake."  Plaintiffs' allegations of unilateral mistake are similarly meritless, as Plaintiffs have failed to identify any facts suggesting that Defendants were aware of Plaintiffs' alleged mistake.  Indeed, the *only* fact that Plaintiffs cite in support of their reformation claim is a single email that Defendants' counsel sent in the process of negotiating the Settlement Agreement, which does not even remotely suggest any understanding on the part of either party that Defendants would pay the royalties at issue.  As the Massachusetts Supreme Judicial Court has held, the fact that a party may be "surprised" to learn that a broadly-worded release "extends to matters that [they] did not specifically have in mind at the time of execution" does not make the execution of that release a "mistake."  *Eck v. Godbout*, 444 Mass. 724, 732 (2005).  Accordingly, Plaintiffs' conclusory allegations of "mistake" are insufficient to survive a motion to dismiss.

Finally, Plaintiffs fail to state a claim for unjust enrichment against Labcorp.  Where a binding contract governs the parties' relationship and the issues in dispute, the terms of that contract are controlling and cannot be overridden through unjust enrichment.  Accordingly, because the Settlement Agreement expressly released the royalties at issue, Labcorp could not have been enriched—unjustly or otherwise—for Esoterix's non-payment.

## STATEMENT OF FACTS

### A.  The License Agreement

Plaintiffs own or control the rights to certain patents (the "Patents") for a method of detecting the presence of epidermal growth factor receptor ("EGFR") gene mutations, which, when present, are predictive of the efficacy of certain chemotherapeutic treatments for lung cancer.  (TAC ¶ 13, Ex. H § 1.9.)   In 2005, Plaintiffs entered into an Exclusive License Agreement granting to Esoterix's predecessor-in-interest an exclusive, royalty-bearing license to sell products and services utilizing the Patents (the "License Agreement").  (TAC ¶ 14, Ex. H § 2.1.)[1] Esoterix's parent company, Labcorp, is not a party to the License Agreement.  (TAC Ex. H.)

Under the License Agreement, Esoterix was permitted to conduct its own EGFR testing and also sublicense to third parties the right to perform EGFR testing and sell EGFR testing kits.  (TAC ¶ 14, Ex. H § 2.1.)   In exchange for these rights, Esoterix agreed to pay, among other things: (i) a license issue fee, (ii) an annual license fee, (iii) royalties based on Esoterix's own EGFR testing, and (iv) royalties equal to a percentage of income received from Esoterix's sublicensees.  (TAC Ex. H §§ 4.1, 4.3, 4.5, 4.6.)   The annual license fee was to be credited against certain royalties due during the same calendar year.  (*Id.* § 4.3.)

The License Agreement includes a payment schedule with two annual six-month "Reporting Periods" ending on June 30 and December 31 of each calendar year, and requires Esoterix to pay royalties that accrue during each Reporting Period within forty-five days after the end of each Reporting Period.  (TAC ¶ 26, Ex. H §§ 1.28, 4.5(e).)   Thus, under the License Agreement, royalties "accrue" and become "due" at different times.

---

[1] References to the "Howe Decl." are to the Declaration of Christopher R. Howe filed in support of Defendants' Motion to Dismiss the Second Amended Complaint.  (ECF No. 90.)

**B.**   **The Prior Litigation and Settlement Agreement**

In 2008, Esoterix's predecessor-in-interest entered into a sublicense agreement with non-party DxS, Ltd. (the "Sublicense"), which subsequently assigned its rights to the Sublicense to QIAGEN Manchester, Ltd. ("QIAGEN").  (TAC ¶¶ 14, 16, Ex. J at 1; Howe Decl. Ex. A (ECF No. 90-1) ¶ 18.)  Labcorp is not a party to the Sublicense.

In 2014, Esoterix brought suit against QIAGEN for breach of the Sublicense, infringement of the Patents, and other related claims, and QIAGEN filed counterclaims against Esoterix and third-party claims against Labcorp (the "Prior Litigation").  (TAC ¶ 17, Ex. J at 1; Howe Decl. Exs. A, B (ECF Nos. 90-1, 90-2).)  During the Prior Litigation, the Plaintiffs here made numerous accusations that Esoterix's commencement and prosecution of its claims against QIAGEN violated the terms of the License Agreement.  (TAC ¶¶ 17-18.)

In June 2017, Esoterix, Labcorp, and QIAGEN settled the Prior Litigation, and Plaintiffs asserted a right to a portion of the settlement funds received by Defendants.  (TAC ¶¶ 19-24, Ex. J at 1.)[2]  After protracted negotiations, including numerous emails, letters, and an in-person meeting, Plaintiffs and Defendants entered into their own settlement agreement, with an Effective Date of June 27, 2017 (the "Settlement Agreement").  (TAC Ex. J.)  During these negotiations, Plaintiffs again raised issues concerning Esoterix's commencement and prosecution of its claims against QIAGEN.  (TAC ¶¶ 17-19.)

Defendants ultimately paid Plaintiffs $██████████[3] under the Settlement Agreement— well more than what they were entitled to under the License Agreement.  (TAC ¶ 24, Ex. J §

---

[2] Plaintiffs' assertion that "[u]nder the License Agreement, the defendants required the plaintiffs' approval before any such settlement could be executed" (TAC ¶ 19) is incorrect.  While the License Agreement required Esoterix to obtain Plaintiffs' consent before settling an "infringement action" (TAC Ex. H § 7.4), the Prior Litigation was no longer an "infringement action" because the Court dismissed the patent infringement claim before the parties settled the action.  (Howe Decl. Ex. C (ECF No. 90-3).)  In any event, this distinction is irrelevant because Plaintiffs ultimately consented to the settlement agreement with QIAGEN.

[3] Redactions herein are made pursuant to the Court's December 15, 2021 impoundment Order (ECF No. 173).

5.2.)  Because of Plaintiffs' numerous accusations concerning Esoterix's conduct and the exorbitant amount paid to Plaintiffs, Defendants demanded, and Plaintiffs agreed to provide, a broad and general release in favor of Defendants.  (TAC ¶¶ 17-18, Ex. J § 3.)  Specifically, Plaintiffs released Defendants:

> of, from, and with respect to, any and all liabilities, losses, damages, charges, complaints, claims, counterclaims, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, demands, costs, debts and expenses (including attorneys' fees and court costs) *of any nature whatsoever*, known or unknown, suspected or unsuspected *that may have arisen before the Effective Date, which [MGH and DFCI] may have, own or hold,* or claim to have, own or hold against [Esoterix and LabCorp] relating to or arising from (i) the acts or omissions that were stated in, arose out of, or which may have arisen out of, the [Prior Litigation], (ii) the Patent Rights; (iii) the Master License Agreement, including but not limited to the provision of any notice(s) required under the [] License Agreement *or the payment of any past royalties or other fees pursuant to the Master License Agreement* . . . .

(TAC Ex. J § 3.1 (emphasis added).)

Contrary to Plaintiffs' repeated allegations (TAC ¶¶ 22, 23, 24, 25, 29, 66), Defendants never agreed to continue making "all" royalty payments due under the License Agreement. Indeed, while that allegation appears six times in the Third Amended Complaint, the purported agreement appears nowhere in the settlement communications attached to the Third Amended Complaint, let alone in the fully integrated Settlement Agreement which, as the First Circuit held, expressly released "known and unknown" claims to "any past royalties."  (TAC Ex. J § 3.1.)  *See Gen. Hosp. Corp.*, 16 F.4th at 309-14.

In addition, the Settlement Agreement contains an integration clause that "supersede[d] in its entirety any and all written or oral agreements previously existing between the Parties with respect to the subject matter of this Settlement Agreement" (TAC Ex. J § 7.6), precluding any supposed "understanding" not embodied in the Settlement Agreement.

Plaintiffs were represented by sophisticated counsel from two law firms in negotiating the Settlement Agreement—Nixon Peabody LLP and Haug Partners—and expressly warranted that they "had the opportunity to consult with legal counsel of their choice prior to execution of this Settlement Agreement, have in fact done so, and have been specifically advised by counsel of the consequences of this Settlement Agreement and their respective rights and obligations hereunder."  (TAC Ex. J § 7.10.)

### C.    The Instant Dispute

The Settlement Agreement's Effective Date was June 27, 2017.  (TAC Ex. J at 1.)  Three days later, June 30, 2017, marked the end of a Reporting Period under the License Agreement. (TAC Ex. H § 1.28.)  Because Plaintiffs released all "known and unknown" "rights" relating to the License Agreement that arose or may have arisen before June 27, including rights to "any past royalties," Esoterix's semi-annual royalty report provided revenue and royalty information for June 28 through June 30.  (TAC Ex. A, Ex. J § 3.1.)  In addition, because Esoterix had already paid the annual license fee, which was to be credited against royalties due within the same year, no further payments were due for this three-day period.  (TAC Ex. A, Ex. H § 4.3.)

Notwithstanding the plain language of the Settlement Agreement, Plaintiffs demanded that Esoterix pay royalties for the entire Reporting Period (the "Disputed Royalties").  (TAC ¶¶ 36-39, Ex. K.)  When Defendants refused on the ground that the Disputed Royalties had been released by the Settlement Agreement (TAC ¶ 36), Plaintiffs filed this action in the Superior Court for the Commonwealth of Massachusetts, asserting claims for breach of contract, reformation of contract, breach of the implied covenant of good faith and fair dealing, violation of M.G.L. Chapter 93A §§ 2 and 11, and other claims, all predicted on the notion that the Settlement Agreement did not release any of Esoterix's royalty obligations under the License Agreement.  (ECF No. 1.)  Defendants removed the case to this Court on June 28, 2018.  (*Id.*)

Amendments to the pleadings and motion practice ensued, including a motion by Defendants to dismiss the entire complaint and a cross motion by Plaintiffs for partial summary judgment as to their breach of contract claim.  (ECF Nos. 94-97.)

In a Memorandum and Order dated September 4, 2019, this Court: (i) granted Plaintiffs' motion for summary judgment on their breach of contract claim against Esoterix, holding that because Esoterix "did not yet owe" the Disputed Royalties as of the Effective Date, the Settlement Agreement did not release Esoterix from the obligation to pay them (ECF No. 133 at 6); (ii) denied Plaintiffs' motion for summary judgment on their breach of contract claim against Labcorp (*id.* at 4 n.2); (iii) ordered Plaintiffs to submit a proposed order for their requested injunctive relief (*id.* at 11); (iv) granted Defendants' motion to dismiss Plaintiffs' reformation of contract claim as moot given the Court's resolution of Plaintiffs' summary judgment motion (*id.* at 10); and (v) denied the remainder of Defendants' motion to dismiss (*id.* at 8, 11).

On October 26, 2020, in accordance with the parties' joint motion, and so as to allow an appeal to the First Circuit, the Court: (i) entered judgment against Esoterix on Plaintiffs' breach of contract and accounting/injunctive relief claims; (ii) entered judgment dismissing Plaintiffs' reformation of contract claim; and (iii) dismissed the remainder of the complaint without prejudice (the "Judgment").  (ECF Nos. 151, 154.)

### D.     The First Circuit's Decision

On October 21, 2021, the First Circuit vacated the Judgment and directed this Court to enter judgment granting Esoterix's motion to dismiss Plaintiffs' breach of contract claim, holding that Esoterix's obligation to pay the Disputed Royalties arose before the Effective Date and was therefore released by the Settlement Agreement's "unambiguous" terms.  *See Gen. Hosp. Corp.*, 16 F.4th at 309.  The First Circuit reasoned that "the actual accrual of a cause of action [for the Disputed Royalties] lacks any talismanic significance" because the Settlement

Agreement's release "applies to considerably more than causes of action, liability, rights or demands"; "[i]t also encompasses, among other things, 'any and all' 'obligations,' 'promises,' and 'debts.'" *Id.* at 310. The First Circuit further held that the License Agreement's royalty and sublicensing fee provisions "make plain that Esoterix's obligations arise upon its sales of processes and products, on the one hand, and its receipt of sublicensing income, on the other hand." *Id.* Finally, the First Circuit held that "[a] searching examination of the License [Agreement] leaves no doubt that it is devoid of any terms that suggest that the obligations must be due or payable before they are deemed to originate," and that "[w]ithout any plausible support in the License [Agreement], [Plaintiffs'] asservations defy common sense" because while "[a] payment deadline may be informative as to when a breach for failure to pay occurs," it does not, standing alone, "shed light on when a royalty obligation is incurred." *Id.* at 312.

In light of its holding with respect to Plaintiffs' breach of contract claim, the First Circuit vacated the Judgment as to Plaintiffs' accounting/injunctive relief claim without prejudice, and vacated this Court's dismissal of Plaintiffs' reformation of contract claim, holding that that claim is "no longer moot" given the collapse of Plaintiffs' breach of contract claim. *Id.* at 314-15. On November 9, 2021, in accordance with the First Circuit's decision, this Court granted Esoterix's motion to dismiss Plaintiffs' breach of contract claim. (ECF No. 166.)

### E.   The Third Amended Complaint

On November 24, 2021, Plaintiffs filed a Third Amended Complaint in which they purport to revive their claims for: (i) breach of the implied covenant of good faith and fair dealing; (ii) unjust enrichment (against Labcorp only); (iii) violation of M.G.L. Chapter 93A §§ 2 and 11; and (iv) reformation of contract based on mistake. (ECF No. 169.) All of Plaintiffs' claims are based on the same facts that formed the basis for their Second Amended Complaint—namely, Defendants' alleged failure to pay the Disputed Royalties. (*Id.*)

**ARGUMENT**

Rule 12(b)(6) requires the dismissal of a complaint if it fails to allege "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "plausible" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).  "[T]hreadbare" allegations that "omit any meaningful factual content" are insufficient.  *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013).

**I.      PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because: (i) that claim seeks to improperly impose on Defendants obligations that conflict with the Settlement Agreement's express and unambiguous terms; and (ii) Plaintiffs fail to adequately allege that Defendants acted without "good faith."

Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract," but "[t]he scope of the covenant is only as broad as the contract that governs the particular relationship." *Karter v. Pleasant View Gardens, Inc.*, 248 F. Supp. 3d 299, 308 (D. Mass. 2017).  "The purpose of the covenant of good faith and fair dealing is not to supply contractual terms that the parties are free to negotiate." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).  Thus, the covenant "may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship," *Shealey v. Fed. Ins. Co.*, 946 F. Supp. 2d 193, 199 (D. Mass. 2012), or to "undermine the express terms of the [parties'] contract." *Ford v. Lehman Capital*, No. 10-40092-FDS, 2012 WL

1343977, at *5 (D. Mass. Apr. 17, 2012).

Here, Plaintiffs' claim for breach of the implied covenant is based on the same conduct that formed the basis of their failed breach of contract claim—the alleged failure to pay the Disputed Royalties to which Plaintiffs claim they are "clearly entitled."  (TAC ¶ 49.)  As the First Circuit held, however, Plaintiffs are *not* entitled to the Disputed Royalties because the Settlement Agreement expressly and unambiguously released Esoterix's obligation to pay them. *See Gen. Hosp. Corp.*, 16 F.4th at 309.  If Esoterix had no obligation to pay the Disputed Royalties, Defendants could not have breached the implied covenant as a result of such non-payment.

These facts are exactly like those at issue in *Pimental v. Wachovia Mortg. Corp*., 411 F. Supp. 2d 32, 39 (D. Mass. 2006), where this Court dismissed an implied covenant claim challenging "behavior that was in accordance with the express terms of" an unambiguous contract.  Like the plaintiff in *Pimental*, Plaintiffs here "freely contracted to these terms with" Esoterix, and the implied covenant claim "is essentially a complaint that, in retrospect, [Plaintiffs] [do] not like certain terms of" the Settlement Agreement.  *Id.*

The First Circuit has also rejected attempts to use an implied covenant claim to create contractual provisions absent from the applicable agreement.  In *Edlow v. RBW, LLC*, 688 F.3d 26, 35 (1st Cir. 2012), for example, the First Circuit held that "[b]ecause [the defendant] was not obligated under the contract" to do certain things, "it could not have breached the covenant as to them, and the [breach of implied covenant] claims regarding them necessarily fail."  Likewise, in *Karter*, 248 F. Supp. 3d at 308 and *Shealey,* 946 F. Supp. 2d at 199, this Court dismissed implied covenant claims that would have read into the parties' contracts new duties that otherwise did not exist.  *See also Ford*, 2012 WL 1343977, at *5 (dismissing implied covenant claim that

challenged the defendant's attempt to enforce the contract between the parties).  For the same reasons here, Plaintiffs' breach of implied covenant claim must be dismissed.

In addition, a claim for breach of the implied covenant "requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage."  *Christensen v. Kingston School Committee*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005); *see also Brand Grp. Int'l, LLC v. Established Brands Int'l, Inc.*, No. CIV.A. 10-11783-JLT, 2011 WL 3236078, at *3 (D. Mass. July 26, 2011).  Such claims "generally involve deceit or 'unfair subterfuge' and usually are 'compounded by deceptive or unfair behavior that prevented—or at a minimum diverted—the injured parties from seeking immediate redress.'"  *Christensen*, 360 F. Supp. 2d at 226.

Plaintiffs' conclusory allegations that Defendants' conduct—which the First Circuit held was consistent with the unambiguous Settlement Agreement—constituted "an unfair, knowing, deceptive, malicious and bad faith scheme" (TAC ¶ 49) that "prevent[ed] the objectives of the License Agreement from being realized" (TAC ¶ 50) are insufficient to transform their unsuccessful breach of contract claim into a valid claim for breach of the implied covenant.  *See Rosa v. PNC Mortg.*, No. 16-10739-GAO, 2017 WL 4176971, at *2 (D. Mass. Sept. 21, 2017) (dismissing implied covenant claim because "the plaintiff's assertion of bad faith [was] not supported by any particular factual allegation"); *Burbank v. Town of Hubbardston*, 146 F. Supp. 3d 402, 406 (D. Mass. 2015) (same).  Indeed, Plaintiffs do not allege a single fact that gives rise to a plausible inference that Defendants acted with bad faith, nor could they given the First Circuit's ruling.  *See Gen. Hosp. Corp.*, 16 F.4th at 309.

Plaintiffs' claim for breach of the implied covenant should therefore be dismissed.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER M.G.L. CHAPTER 93A

Plaintiffs' claim for violation of M.G.L. Chapter 93A similarly fails because, as the First

Circuit held, Defendants' conduct was consistent with the Settlement Agreement and thus cannot be deemed unfair, immoral, unethical, oppressive, or unscrupulous, as required by the statute.

"A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury." *Gallagher v. Amedisys, Inc*., No. 17-CV-11390-ADB, 2018 WL 2223673, at *7 (D. Mass. May 15, 2018). What qualifies as a 93A violation is a question of law. *Id*.

"In the context of disputes among businesses, where both parties are sophisticated commercial players, the 'objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce.'" *Zurich Am. Ins. Co. v. Watts Regulator Co*., 796 F. Supp. 2d 240, 244 (D. Mass. 2011). Thus, Plaintiffs must show that Defendants' conduct "fell within the penumbra of some established concept of unfairness or was immoral, unethical, oppressive or unscrupulous." *Id*. (internal citations and quotations omitted). Under Massachusetts law, neither a good faith (yet ultimately incorrect) interpretation of a contract, or even an intentional breach of contract, without more, constitutes a 93A violation. *See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 15 (1989); *Zurich*, 796 F. Supp. 2d at 245; *Whitman v. Longview*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *9 (D. Mass. July 20, 2015).

In *Whitman v. Longview*, for example, the plaintiff alleged that the defendants improperly withheld payment under an agreement. 2015 WL 4467064, at *9. In an effort to state a 93A claim, the plaintiff alleged that the defendants "acted in concert with one another in an unfair and deceptive effort to coerce [plaintiff] into unfairly compromising or otherwise abandoning its rights to receive the amounts due to it under the Agreement"; "ignored [plaintiff's] efforts to

collect the amounts owed to it"; and "engaged in conduct in disregard of known contractual arrangements with the intention of securing an unbargained-for-benefit for themselves." *Id.* at *9.  The court dismissed the plaintiff's claim, holding that the alleged facts "suggest[ed] nothing more than a mere breach of contract, even if it [wa]s a knowing or intentional breach." *Id.*; *see also Formulatrix, Inc. v. Rigaku Automation, Inc.*, No. CV 15-12725-MLW, 2016 WL 8710448, at *3 (D. Mass. Apr. 1, 2016) (dismissing 93A claim where plaintiff failed to allege that the breach "was motivated by a desire to extort some extra-contractual benefit," or that "it suffered any damages beyond those resulting from the breach.").

If conduct that is *inconsistent* with a contract is insufficient to constitute a 93A violation, certainly conduct that is *decisively consistent* with the contract cannot rise to the level of unfairness or immorality required to state a 93A claim.  In *Pimental*, for example, the court dismissed both a breach of contract claim and a 93A claim that "hinge[d] upon" the alleged breach of contract because the challenged conduct was "exactly in accordance with the terms of" an unambiguous contract.  411 F. Supp. 2d at 37, 40.  *See also FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 108 (1st Cir. 2009); *Murphy v. Nat'l Grange Mut. Ins. Co.*, No. CIV. 13-11363-FDS, 2014 WL 5307671, at *6 (D. Mass. Oct. 16, 2014); *Branch Ave Cap., LLC v. U.S. Bank Nat. Ass'n*, No. CIV.A. 12-40140-TSH, 2013 WL 5242121, at *8 (D. Mass. Sept. 16, 2013).

Similarly, here, Plaintiffs' 93A claim is based on allegations that "[D]efendants' failure and refusal to pay the plaintiffs [the] amount owed under the License Agreement was done knowingly and willfully."  (TAC ¶ 54.)  But the First Circuit conclusively held that Defendants did *not* owe any amounts to Plaintiffs under the License Agreement because the Settlement Agreement unambiguously released such obligation.  *See Gen. Hosp. Corp.*, 16 F.4th at 309.

Thus, as a matter of law, Esoterix's non-payment cannot constitute a statutory violation, and sustaining the 93A claim would be counter to the First Circuit's prohibition against "rewrit[ing] [the parties'] bargained-for arrangement." *Id.* at 314.

Nor does Plaintiffs' conclusory characterization of Defendants' non-payment as "knowing[]," "willful[]," "unfair," "deceptive," and "unscrupulous" (TAC ¶¶ 54-58) or a "mistake" (TAC ¶¶ 64-74)—without any factual support—give rise to a plausible inference that Defendants acted with anything other than good faith in complying with the unambiguous terms of the Settlement Agreement exactly as written and negotiated. *See Colella v. Children's Hosp.*, No. CV 14-11687-LTS, 2014 WL 12581775, at *9 (D. Mass. Nov. 4, 2014) ("[a] mere mistake or oversight is not the type of conduct contemplated by Chapter 93A."); *Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317, 323 (D. Mass. 2012).

Finally, to make out a 93A claim involving a contract dispute, courts often require allegations of "additional damages" or "additional unfair benefits" not permitted by the contract. *Formulatrix*, 2016 WL 8710448, at *3. Plaintiffs fail to allege that they suffered any damages beyond those that they claimed to have suffered as a result of their failed breach of contract claim. Accordingly, their 93A claim should be dismissed.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR REFORMATION OF CONTRACT

Plaintiffs' attempt to reform the Settlement Agreement should also be rejected. The First Circuit explicitly held that Plaintiffs are sophisticated parties that "manifestly intended to enter into a release with many attributes of a general release—a release that broadly discharge[d] liability for all claims and demands, whether known or unknown." *Gen. Hosp. Corp.*, 16 F.4th at 309 (citing *Eck*, 444 Mass. 724). As the Massachusetts Supreme Judicial Court held in *Eck*:

> [T]he mere fact that a release as worded extends to matters that the
> parties did not specifically have in mind at the time of execution

15

> does not operate to exclude those matters from the scope of the
> release . . . . That they do not have those matters in mind at the
> time, and are thus in some sense surprised when the release is later
> applied to exclude such claims, does not make the execution of the
> broadly-worded release a "mistake."

444 Mass. at 731-32.  Moreover, the breadth of the release in the Settlement Agreement "was by choice of the contracting parties," *Gen. Hosp. Corp.*, 16 F.4th at 314 (quotation omitted), and this Court cannot use extrinsic evidence to "contradict explicit contract language." *Id.* (quoting *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 180 (1st Cir. 1995)).   No reformation claim—and certainly not one based on "mistake," as Plaintiffs have alleged—can survive under the holdings in *Eck* and in this case.

### A.      Plaintiffs Fail to Allege Mutual Mistake

Under Massachusetts law, reformation of a contract may, in some circumstances, be warranted by mutual mistake "to effectuate the agreement intended by the parties to a contract where the contract language fails to capture that agreement." *First Am. Title Ins. Co. v. Lane Powell PC*, 764 F.3d 114, 119 (1st Cir. 2014).  "Central to [the mutual mistake] doctrine is the fundamental underpinning that the parties had reached an agreement on a point which they intended to enshrine in the written contract but which, for some reason, was mistakenly omitted from that written contract." *Id.*  Thus, "[a] court will not grant reformation unless the movant has shown 'that the parties expressed agreement and an intention to be bound in accordance with the terms that [it is] asked to establish and enforce." *Id.*  In other words, Plaintiffs must allege that *both* parties made the *same* mistake about the *same* subject matter, and that the mistake relates to an essential element of the agreement.  *See Finamore v. Garcia*, No. CV 06-11855-RBC, 2011 WL 13244945, at *7 (D. Mass. Dec. 8, 2011).

For example, in *Shea v. Eisenberg*, 18 Mass. L. Rptr. 366, *1 (Mass. Super. 2004), a non-party to a release argued that he was an "agent" to whom the release extended.   The court

granted reformation because both parties to the contract acknowledged they made a mistake, and that the non-party was not intended to be within the scope of the release. *Id.* at *4-5.

In contrast, here, Plaintiffs' sole allegation of mutual mistake is entirely conclusory: "Alternatively, the defendants did not know of the mistake, such that at the time the Settlement Agreement was signed the defendants also mistakenly understood that the release did not cover the more than $████ royalty payment, and only discovered the parties' mutual mistake later when the royalty payment came due." (TAC ¶ 73.)  Not only have Plaintiffs failed to allege any factual support for this assertion, they expressly concede that the parties "never discussed" the Disputed Royalties (TAC ¶ 72), precluding any finding that they "had reached an agreement" as required for mutual mistake. *First Am. Title Ins. Co.*, 764 F.3d at 119; *see also Caron v. Horace Mann Ins. Co.*, 466 Mass. 218, 226 (2013) (finding that mistake was "in no way mutual" where the issue was "never discussed").

In addition, a mutual mistake must "involve a fact capable of ascertainment at the time the contract was entered into, and not a mere expectation or opinion about future events." *Finamore*, 2011 WL 13244945, at *7; *see also Eck*, 444 Mass. at 731.  Yet this is exactly what Plaintiffs claim—that the parties "mistakenly understood that the release did not cover" the royalties that would otherwise have been payable two months later. (TAC ¶ 73.)  Even assuming this to be true, either party's (or both parties') "surprise" that the release *does* cover the Disputed Royalties does not render the broadly-worded release a "mistake." *Eck*, 444 Mass. at 731-32.

### B.     Plaintiffs' Alleged "Unilateral" Mistake Does Not Warrant Reformation

Nor can unilateral mistake support Plaintiffs' reformation claim.  The doctrine of unilateral mistake is available only in "limited circumstances"—namely, where "the mistake formed a basis on which [the plaintiff] entered into the contract, and . . .  the defendant knew or had reason to know of the mistake." *Poley-Abrams Corp. v. Chaney & James Const. Co.*, 220 F.

17

Supp. 401, 404 (D. Mass. 1963).  As the Massachusetts Supreme Judicial Court held in *Eck*, a release may not be rescinded or modified based on "one party's unilateral 'mistake' about how future contingencies might make the release inadvisable."  444 Mass. at 732.

Plaintiffs allege that: (i) they "made a basic assumption and understanding that the general release did not cover the royalty due on August 15, 2017 attributable to the reporting period ending June 30, 2017"; (ii) this assumption was based on communications with Defendants' counsel, which purportedly suggested that Defendants "would continue to make **all** ongoing royalty payments under the License Agreement"; and (iii) Defendants either "knew that the plaintiffs had made a mistake" or were similarly mistaken about the scope of the release. (TAC ¶¶ 66, 72, 73.)  These conclusory allegations are insufficient to state a claim for unilateral mistake and, in any event, misrepresent the parties' communications.

First, the pre-contractual settlement communications attached to the Third Amended Complaint, which Plaintiffs rely on to support these allegations, do *not* suggest that Defendants understood that they would be required to pay the Disputed Royalties.  In fact, while Plaintiffs repeatedly allege that Defendants agreed to "continue making **all** of their royalty payments" due under the License Agreement (TAC ¶¶ 22, 23, 24, 25, 29, 66), that language appears *nowhere* in the parties' settlement communications, let alone in the fully integrated Settlement Agreement signed after additional negotiations ensued.  The only language that Plaintiffs point to is a statement made by Defendants' counsel on May 27, 2017 that "the **only** issue now is how to divide the settlement proceeds."  (TAC ¶ 22; *see also* Ex. I.)  That statement does not suggest that Defendants understood that they would be obligated to pay royalties that arose between January 1 and June 27, 2017.

Second, even if Plaintiffs could demonstrate that *they* thought Defendants would pay the

Disputed Royalties and mistakenly agreed to contract terms that unambiguously released that obligation, their reformation claim still fails because they do not allege facts to demonstrate that Defendants knew or had reason to know of the purported mistake.  Notably, Plaintiffs do not allege that they informed Defendants of their interpretation of the Settlement Agreement; rather they concede "the parties never discussed" it.  (TAC ¶ 72.)  The fact that Plaintiffs may have "silently harbored an assumption" regarding the scope of the release "is not a basis for reformation" where, as here, the contract "plainly contradicts such an assumption."  *Caron*, 466 Mass. at 225; *see also Eck*, 444 Mass. at 732.

Third, Plaintiffs were represented in these settlement negotiations by two sophisticated law firms—Nixon Peabody LLP and Haug Partners—as well as their in-house counsel, and warranted that they "had the opportunity to consult with legal counsel of their choice prior to execution of this Settlement Agreement, ha[d] in fact done so, and ha[d] been specifically advised by counsel of the consequences of this Settlement Agreement and their respective rights and obligations hereunder."  (TAC Ex. J § 7.10.)  Plaintiffs do not have a claim for reformation against Defendants if their own counsel failed to explain the consequences of the general release they were executing.  As the First Circuit held:

> The breadth of the release was by choice of the contracting parties.
> Courts should not attempt to 'accomplish by judicial fiat what [a
> party] neglected to achieve contractually.' . . .  That admonition
> has special force where, as here, the parties are sophisticated
> entities that negotiated a release with the benefit of counsel . . . .
> We are not at liberty to rewrite this bargained-for arrangement.

*Gen. Hosp. Corp.*, 16 F.4th at 314-15.

Accordingly, to the extent that there was any mistake, it was a unilateral mistake made by Plaintiffs, unknown to Defendants, "based upon [Plaintiffs'] own negligence" in negotiating and drafting the contract terms.  *Finamore*, 2011 WL 13244945, at *9; *see also Rohm & Haas Elec.*

*Materials, LLC v. Elec Circuits Supplies, Inc.*, 759 F. Supp. 2d 110, 123 (D. Mass. 2010) (rejecting reformation of contract between two sophisticated parties where the alleged mistake "was apparent on a cursory examination" of the contract). Such circumstances do not support Plaintiffs' claim for reformation, and it should be dismissed with prejudice.

## IV.   **PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT**

Plaintiffs' attempt to evade the Settlement Agreement's unambiguous terms through an unjust enrichment claim against Labcorp should also be rejected. The purpose of unjust enrichment is to provide "an equitable stopgap for occasional inadequacies in contractual remedies at law." *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 179 (D. Mass. 2010). But "where a binding contract governs the parties' relationship, the contract provides the measure of the [aggrieved party's] right and no action for unjust enrichment lies." *Flores v. OneWest Bank, F.S.B.*, 172 F. Supp. 3d 391, 396 (D. Mass. 2016); *see Mitchell v. U.S. Airways, Inc.*, 858 F. Supp. 2d 137, 158-59 (D. Mass. 2012). In other words, "a court can infer an implied contract where none would otherwise exist" on a claim for unjust enrichment, but "[w]here there is an express contract, . . . the terms therein are controlling." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 115 (D. Mass. 2010); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 n.7 (1st Cir. 2017).

Here, there is no dispute that any obligation to pay the Disputed Royalties is governed by the terms of the License Agreement and the Settlement Agreement, and the First Circuit has already held that Settlement Agreement unambiguously released any such obligation. *See Gen. Hosp. Corp.*, 16 F.4th at 309. Because Plaintiffs may not use unjust enrichment to override the Settlement Agreement's express terms, their unjust enrichment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Third Amended Complaint should be dismissed with prejudice, along with such other and further relief as the Court deems just and proper.

20

Dated: December 15, 2021
      Boston, Massachusetts

Respectfully submitted,

Esoterix GENETIC LABORATORIES, LLC
and LABORATORY CORPORATION OF
AMERICA HOLDINGS

By their attorneys,

CAMPBELL EDWARDS & CONROY, P.C.

*/s/ Christopher R. Howe*
James M. Campbell (BBO # 541882)
jmcampbell@campbell-trial-lawyers.com
Christopher R. Howe (BBO #652445)
chowe@campbell-trial-lawyers.com
One Constitution Center
Boston, MA  02129
Tel: (617) 241-3041
Fax: (617) 241-5115

KELLEY DRYE & WARREN LLP
Robert I. Steiner (admitted *pro hac vice*)
rsteiner@kelleydrye.com
Jaclyn M. Metzinger (admitted *pro hac vice*)
jmetzinger@kelleydrye.com
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897

## CERTIFICATE OF SERVICE

      I, Christopher R. Howe, counsel for Defendants, hereby certify that on December 15, 2021, I electronically filed the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.  I also served a true copy of the above Memorandum by email on all parties of record.

                           */s/ Christopher R. Howe*
                           Christopher R. Howe