# **EXHIBIT A**

```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

                                              Civil Action
                                              No. 09-10364-WGY


     * * * * * * * * * * * * * * * * *
                                      *
     THE GENERAL HOSPITAL             *
     CORPORATION, doing business as   *
     Massachusetts General Hospital,  *
                                      *
              Plaintiff,              *
                                      *
     v.                               *    MOTION HEARING
                                      *
     QLT PHOTOTHERAPEUTICS            *
     (CANADA), INC.                   *
                                      *
              Defendant.              *
                                      *
     * * * * * * * * * * * * * * * * *

              BEFORE:  The Honorable William G. Young,
                               District Judge

     APPEARANCES:

              GRIESINGER, TIGHE & MAFFEI, LLP (By Thomas
         F. Maffei, Esq., Daniel P. Tighe, Esq. and Scott
         McConchie, Esq.), 176 Federal Street, Boston,
         Massachusetts 02110, on behalf of the Plaintiff

              HERMES, NETBURN, O'CONNOR & SPEARING (By
         Peter G. Hermes, Esq. and Jeffrey P. Hermes,
         Esq.), 265 Franklin Street, 7th Floor, Boston,
         Massachusetts 02110
              - and -
              LATHAM & WATKINS LLP (By Mark A. Flagel,
         Esq.), 355 South Grand Avenue, Los Angeles,
         California 90071-1560, on behalf of the Defendant


                                              1 Courthouse Way
                                              Boston, Massachusetts

                                              May 21, 2009
```

| | |
|---|---|
| 1 | **THE CLERK:** Calling Civil Action 09-10364, General |
| 2 | Hospital Corp. v. QLT. |
| 3 | **MR. MAFFEI:** Your Honor, may I use the podium? |
| 4 | **THE COURT:** You may. And would counsel introduce |
| 5 | themselves. |
| 6 | **MR. MAFFEI:** Thomas Maffei for the General Hospital |
| 7 | Corporation, your Honor. |
| 8 | **MR. TIGHE:** Daniel Tighe, T I G H E, for the |
| 9 | General Hospital Corporation, your Honor. |
| 10 | **MR. McCONCHIE:** And Scott McConchie for the General |
| 11 | Hospital Corporation. |
| 12 | **MR. FLAGEL:** Good afternoon, your Honor. Mark |
| 13 | Flagel of Latham and Watkins for QLT. |
| 14 | **MR. JEFFREY HERMES:** Jeffrey Hermes of Hermes |
| 15 | Netburn for QLT. |
| 16 | **MR. PETER HERMES:** Good afternoon, your Honor. |
| 17 | Peter Hermes of Hermes Netburn for defendant QLT. |
| 18 | **THE COURT:** All right. Mr. Maffei, I'll hear you |
| 19 | first on the motion to remand, and in response to QLT's |
| 20 | motion to dismiss, briefly. |
| 21 | **MR. MAFFEI:** Your Honor, may I defer to my partner |
| 22 | on the motion to remand. |
| 23 | **THE COURT:** Sure, I don't care who argues. |
| 24 | **MR. TIGHE:** Good afternoon, your Honor, thank you. |
| 25 | Your Honor, on the motion to remand as you know, |

|     |     |
| --- | --- |
| 1   | the subject of that is a clause in the license agreement |
| 2   | which provides essentially two -- |
| 3   | **THE COURT:**  Right.  I'm familiar with the papers. |
| 4   | Isn't that simply -- for one thing, it's not expressly clear |
| 5   | that your choice as to, in Massachusetts as between state |
| 6   | and federal courts must be respected.  Isn't it open to them |
| 7   | to remove? |
| 8   | **MR. TIGHE:**  Well, your Honor, the case law that |
| 9   | looks at cases in which one party gets to choose a venue, |
| 10  | which, which this would fall under, says that if the other |
| 11  | party reserves its right to remove that that will negate the |
| 12  | choice.  So, there are jurisdictions in which a waiver must |
| 13  | be clear and unequivocal.  The First Circuit has not adopted |
| 14  | that stated -- |
| 15  | **THE COURT:**  True.  Nor does the First Circuit adopt |
| 16  | a contrary position, do they? |
| 17  | **MR. TIGHE:**  That's correct, your Honor. |
| 18  | **THE COURT:**  Yes.  And what do you say about this, |
| 19  | they give me this recent case, again, it's only persuasive, |
| 20  | out of the Southern District of New York here. |
| 21  | **MR. TIGHE:**  Your Honor, that, the J.P. Morgan case |
| 22  | was decided, I believe just last month, perhaps even earlier |
| 23  | this month.  But in the Second Circuit, again, the rule is |
| 24  | that a waiver of removal rights must be clear and |
| 25  | unequivocal.  That's not the law in this circuit, your |

```
1    Honor.
2              THE COURT:  Well, let's jump to the second issue
3    now.  And if you are here you say that the case has to be
4    dismissed.
5              MR. TIGHE:  Remanded, your Honor.
6              THE COURT:  Well, assume you've lost that.  Just
7    assume it.
8              MR. TIGHE:  Yes.
9              THE COURT:  Just assume it.  So, why should it be
10   dismissed?
11             MR. TIGHE:  Your Honor, we're opposing the motion
12   to dismiss.
13             THE COURT:  I understand that.  Why shouldn't it be
14   dismissed?
15             MR. TIGHE:  I'm sorry, then we're moving on to the
16   next motion, your Honor?
17             THE COURT:  Well, I -- yes.  Thank you.
18             MR. TIGHE:  I apologize.  We were splitting --
19             THE COURT:  Mr. Maffei, why should it be dismissed?
20   On the theory -- here's their strongest argument as I see
21   it.  Their strongest argument for dismissal is that what
22   happened in my case doesn't constitute a license.  Their
23   weaker argument is, based upon what you have alleged, they
24   may still have to stand up to a 93A action.
25             Why don't you address, since you're opposing, why
```

|     |                                                                          |
| --- | ------------------------------------------------------------------------ |
| 1   | don't you address this license thing.                                    |
| 2   | **MR. MAFFEI:** Your Honor, there's two ways to look                     |
| 3   | at this most favored nation clause, a narrow way and a broad             |
| 4   | way.  And actually based on what we found out happened in                |
| 5   | March of '07, whether you look at it broadly or narrowly,                |
| 6   | what happened in this courtroom in connection with what                  |
| 7   | happened in March of '07 was without question a grant of                 |
| 8   | patent rights in return for the royalty that the jury                    |
| 9   | awarded Mass. Eye & Ear.                                                 |
| 10  | **THE COURT:** But we thought in that case the only                      |
| 11  | way to evaluate the damages was, was by a royalty.  That was             |
| 12  | the only way to place a value on the unjust enrichment.                  |
| 13  | That doesn't seem to me to be a license.                                 |
| 14  | **MR. MAFFEI:** Well, your Honor, if you, and you know                   |
| 15  | this case so much better than I do, certainly, the entire                |
| 16  | gist of the action before you, while characterized as an                 |
| 17  | unjust enrichment case, was in fact, and I've read the                   |
| 18  | transcript closely and I've pulled out all of the excerpts,              |
| 19  | it is, it was in fact trying to value the license which                  |
| 20  | Mass. Eye & Ear said QLT had promised to give them.  Now,                |
| 21  | for whatever reason they couldn't make their peace so they               |
| 22  | ended up in litigation.  So, the situation we have is we                 |
| 23  | have a most favored nation clause, which by the way is                   |
| 24  | fairly broad.  It says royalty and other compensation, it                |
| 25  | doesn't say written, it doesn't say voluntary, and the                   |

|   |   |
|---|---|
| 1 | entire history of this was we're in this together.  Mass. |
| 2 | General actually initiated the idea of this blockbuster |
| 3 | treatment, everybody went forward, QLT ended up -- I'm |
| 4 | sorry, strike that, Mass. Eye & Ear ended up on the patent |
| 5 | all by itself.  When the other two institutions found out |
| 6 | about it they said that can't be, we all participated in |
| 7 | this.  And there was an agreement made.  And the agreement |
| 8 | was everyone will go on the patent.  QLT had the rights to |
| 9 | the drug.  And QLT promised both Mass. Eye & Ear and Mass. |
| 10 | General that they would pay them a fair royalty.  Now, the |
| 11 | fact that it was extended, the fact that it ended up in |
| 12 | litigation with one of those two parties shouldn't sort of |
| 13 | allow them to avoid the reality which is they always, from |
| 14 | day one, said they would treat us both the same.  They had |
| 15 | even made the same offers to us.  We, because Mass. General |
| 16 | didn't want to get embroiled in all kinds of litigation, |
| 17 | said we'll take .5 today, but if Mass. Eye & Ear ends up |
| 18 | getting more you have to pay us the same.  They said fine. |
| 19 | We signed off. |
| 20 | So, they go through this litigation and then lo and |
| 21 | behold in the middle of the litigation this issue about |
| 22 | judicial admissions came up, and Mr. Ware, and I can quote |
| 23 | him, he says, look, this is an unjust enrichment case, but |
| 24 | all of the things that were done in this case, we paid for |
| 25 | all of that.  So the only thing left now is a transfer of |

```
 1    patent rights.  And by the way, there was no transfer of
 2    patent rights, so Mass. Eye & Ear loses.  And, because of
 3    the way the case developed, during the case you correctly
 4    pointed out, well, now, wait a minute, they said that they
 5    would grant you a license, in fact, they, they have now
 6    said, in a judicial admission way, they'll give you a
 7    license.  And in fact they did give them a license.  Not
 8    only in the courtroom that day by reason of the judicial
 9    admission, but, and we didn't know this at the time this all
10    started and I got involved, in March of '07, and I think
11    this is the, this is, this is what puts the fine point on
12    it, in March of '07, QLT and Mass. Eye & Ear entered into a
13    series of agreements only one or two of which we were shown.
14    Now, they say, well, we filed a stipulation dismissing the
15    related case so you knew.  Our allegation in the complaint,
16    and we can prove it, is we had no knowledge about the
17    license agreement.
18         THE COURT:  I think I understand.  Let's move to
19    the defendant here.  Their motion to remand is denied.
20    We're dealing with your motion to dismiss.
21         It does seem to me, and this is where you ought to
22    focus your attack, it seems to me that given this pleading,
23    at minimum they're standing with a 93A action against you on
24    these allegations.
25         What do you say to that?
```

|    |    |
|----|----|
| 1  | **MR. FLAGEL:**  If you look at the most favored |
| 2  | nations clause, which the hospital wrote, it actually |
| 3  | doesn't say what Mr. Maffei just told the Court it said. |
| 4  | And it could have.  If they had written it to say if under |
| 5  | any circumstances the infirmary gets more than you give us, |
| 6  | we get the same.  We wouldn't be here today if the clause |
| 7  | said that.  What it says is if QLT concludes a license |
| 8  | agreement with the infirmary under terms in which it gives |
| 9  | them more, we get the same amount.  And the reason there's |
| 10 | no, there's no claim under 93A, your Honor, is because we |
| 11 | have an undisputed situation where we know that that trigger |
| 12 | never occurred.  They even acknowledge in footnote 13 of |
| 13 | their opposition that QLT was under no obligation to |
| 14 | actually enter into a contract with the infirmary.  That's |
| 15 | something you had observed to the jury as well.  And you're |
| 16 | both right about that.  Given that, we have a clause they |
| 17 | wrote that has a very clear and unambiguous trigger.  It's |
| 18 | conditional.  If a certain event happens then we have to do |
| 19 | something.  And if QLT had ever entered into an actual |
| 20 | agreed arm's length license with the infirmary to pay them |
| 21 | more, you would be right. |
| 22 | **THE COURT:**  Suppose you're right. |
| 23 | **MR. FLAGEL:**  Yes, sir. |
| 24 | **THE COURT:**  Given their allegations -- |
| 25 | **MR. FLAGEL:**  Yes. |

1      **THE COURT:** -- of what your side was saying,
2  though, haven't they stated a claim under 93A?
3      **MR. FLAGEL:** I don't think so. Because what they
4  say is that for ten years, QLT has been saying we will
5  comply with the most favored nations clause. And there's no
6  question about it, QLT will, always intended to comply with
7  the clause as written and provided by the hospital under its
8  unambiguous language, which is to say, if we agree to pay
9  the infirmary more, we will pay you more. But that, that
10 didn't happen. In fact, you'll remember, your Honor, the
11 First Circuit, you actually granted summary judgment on all
12 the contract claims which the First Circuit affirmed. They
13 sent the case back on, on unjust enrichment type claims that
14 really focused on as you acknowledge something different.
15 So, here there is no question about compliance with that
16 clause.
17     **THE COURT:** All right, I understand the argument.
18            The motion to dismiss is allowed as to the claim
19 under the license agreement, denied as to 93A.
20            Do you want to try this before a magistrate judge
21 or in this Court?
22     **MR. MAFFEI:** I would like to confer with my client
23 on that, your Honor, if I may.
24     **THE COURT:** That's fine. So, we'll assume we'll
25 stay here so I have to -- when do you want to go to trial in

```
1    this case?  The latest time available is June 2010, but we
2    could try it well before that.
3             MR. FLAGEL:  June 2010 is fine with me.  I've got
4    lot of things going on early next year.
5             THE COURT:  June 2010?
6             MR. MAFFEI:  June 2010.
7             THE COURT:  It's on the running trial list for June
8    2010.
9             When do you want to go to ADR?
10            MR. FLAGEL:  Whenever --
11            THE COURT:  The choice is really early or late,
12   after you've sunk your costs into discovery, or early, which
13   would be, say, September.
14            MR. MAFFEI:  Your Honor, we did go to ADR before
15   Judge Cowin, and if we do another, another try at it, which
16   I'm not opposed to, I think it would be worthwhile for us to
17   have some discovery before we do that because we are just
18   going to --
19            THE COURT:  Say January next year.
20            MR. MAFFEI:  That, that would be fine.
21            MR. FLAGEL:  Yes.
22            THE COURT:  January 2010.  File your joint proposed
23   case management schedule two weeks from today.  Should you
24   decide to go to a magistrate judge, let the Court know
25   should you both decide and of course the magistrate judge
```

```
 1    will pick up.  That's the order.
 2             MR. MAFFEI:  Thank you, your Honor.
 3             THE COURT:  Thank you.
 4             MR. FLAGEL:  So, your Honor, just for
 5    clarification, all the claims are dismissed except for 93A?
 6             THE COURT:  93A, that's correct.
 7             MR. FLAGEL:  Thank you, your Honor.
 8             MR. MAFFEI:  Thank you, your Honor.
 9             (Whereupon the matter concluded.)
10
11                      C E R T I F I C A T E
12
13             I, Donald E. Womack, Official Court Reporter for
14    the United States District Court for the District of
15    Massachusetts, do hereby certify that the foregoing pages
16    are a true and accurate transcription of my shorthand notes
17    taken in the aforementioned matter to the best of my skill
18    and ability.
19
20
21                 /S/ DONALD E. WOMACK
                   _____
22                     DONALD E. WOMACK
                      Official Court Reporter
23                       P.O. Box 51062
                   Boston, Massachusetts 02205-1062
24                    womack@megatran.com
25
```